# PHIBRO-TECH, INC.'S NOTICE OF REMOVAL

# EXHIBIT A

** FILED **  Env: 13804135
McHenry County, Illinois
21LA000167
Date: 6/24/2021 10:04 AM
Katherine M. Keefe
Clerk of the Circuit Court

## IN THE CIRCUIT COURT OF THE 22nd JUDICIAL CIRCUIT
### McHENRY DEPARTMENT, LAW DIVISION

LINDA PEREDNA

          Plaintiff,

    v.

TECHALLOY COMPANY, INC.; CENTRAL
WIRE, INC.; CENTRAL WIRE
INDUSTRIES LTD; CWI HOLDING INC.;
LINCOLN ELECTRIC HOLDINGS, INC.;
USI HOLDING, INC.; ARCELORMITTAL
INTERNATIONAL AMERICA, LLC;
ARCELORMITTAL USA FOUNDATION
INC.; CLEVELAND-CLIFFS STEEL, LLC;
GERRY ROUP; HENRY LOPES; RICHARD
PERLICK; RICHARD GUSTAFSON; MIKE
GRUNTHANER; DAVID PLECNER;
VICTOR POLARD; CARL REED; TERRY
TAMINAUSKSAS; TOM HANEWALD;
THIERY CREMAILH; GUNNAR K.
GILBERG; JEAN-CLAUDE COUASNON;
JACK ZUHARICH; VIKING CHEMICAL
COMPANY; WESTON SOLUTIONS, INC.;
MATRIX ENVIRONMENTAL,
INCORPORDATED; AUTMNWOOD ESH
CONSULTANTS, LLC; ANTEA USA, INC.;
JOHN W. THORSEN; PHIBRO-TECH, INC.;
C P CHEMICALS, INC. f/k/a Southern
California Chemical Company, Inc.; NORTEK
GLOBAL HVAC, LLC; BROAN-NUTONE,
LLC; RANGAIRE MANUFACTURING
COMPANY, LP; and MELROSE
INDUSTRIES PLC,

          Defendants.

21LA000167

Case No.:
**PLAINTIFF DEMANDS A JURY
TRIAL**

**NOTICE**
**THIS CASE IS HEREBY SET FOR A
SCHEDULING CONFERENCE IN
COURTROOM __TBD__ ON
__09/23/21__, AT __TBD__.
FAILURE TO APPEAR MAY
RESULT IN THE CASE BEING
DISMISSED OR AN ORDER OF
DEFAULT BEING ENTERED.**

## COMPLAINT AT LAW

NOW COMES the Plaintiff LINDA PEREDNA, by and through her attorneys, ROMANUCCI & BLANDIN, LLC, and complaining against the Defendants, TECHALLOY COMPANY, INC.; CENTRAL WIRE, INC.; CWI HOLDING INC.; CENTRAL WIRE INDUSTRIES LTD; LINCOLN ELECTRIC HOLDINGS, INC.; USI HOLDING, INC.; ARCELORMITTAL INTERNATIONAL AMERICA, LLC; ARCELORMITTAL USA FOUNDATION INC.; CLEVELAND-CLIFFS STEEL, LLC; GERRY ROUP; HENRY LOPES; RICHARD PERLICK; RICHARD GUSTAFSON; MIKE GRUNTHANER; DAVID PLECNER; VICTOR POLARD; CARL REED; TERRY TAMINAUSKSAS; TOM HANDWALD; THIERY CREMAILH; GUNNAR K. GILBERG; JEAN-CLAUDE COUASNON; VIKING CHEMICAL COMPANY; WESTON SOLUTIONS, INC.; MATRIX ENVIRONMENTAL, INCORPORDATED; AUTUMNWOOD ESH CONSULTANTS, LLC; ANTEA USA, INC.; JOHN W. THORSEN; PHIBRO-TECH, INC.; C P CHEMICALS, INC. f/k/a Southern California Chemical Company, Inc.; NORTEK GLOBAL HVAC, LLC; BROAN-NUTONE, LLC; RANGAIRE MANUFACTURING COMPANY, LP; Melrose Industries PLC;: pleading hypothetically and in the alternative, states as follows:

**A.  Plaintiff, Linda Peredna**

1.      Plaintiff, Linda Peredna is a citizen of the state of Illinois,

2.      Ms. Peredna resided at 6408 N. Wayne Street, Union, IL from 1949 through 1973, and returning to Union, IL consistently through the present time.

3.      Ms. Peredna currently resides at 715 Stevenson Street, Marengo, IL.

**B.  Defendant, Techalloy Company, Inc.**

4.      Defendant, Techalloy Company Inc. ("Techalloy"), was a Pennsylvania Corporation, whose principal place of business was 6509 Olson Road, Union, Illinois 60180.

5.      Techalloy was granted the property located at 6509 Olson Road, Union, Illinois 60180 on January 13, 1960, hereinafter referred to as "the plant."

6.      Techalloy opened a facility at 6509 Olson Road, Union, Illinois 60180 in 1960 which operated as a steel wire drawing facility.

7.       Techalloy processed steel and nickel alloy rod.

**C.   Defendant, Central Wire, Inc.**

8.      Defendant, Central Wire, Inc. ("Central Wire"), is a Pennsylvania Corporation, with its principal place of business at 1 North Street, Perth, Ontario K7H 2S2.

9.      Defendant, Central Wire presently operates a plant at 6509 Olson Road, Union, Illinois, 60180.

10.     On February 8, 2005, Defendant, Central Wire, Inc. acquired the title to the land located at 6509 Olson Road, Union, Illinois from Techalloy Company Inc.

11.     As the same entity, Techalloy and Central Wire have continuously occupied the property for approximately sixty one (61) years.

**D.  Defendant, Central Wire Industries LTD**

12.     Defendant, Central Wire Industries LTD ("Central Wire Industries") is a Canadian Corporation, with its principal place of business at 1 North Street, Perth, Ontario K7H 2S2.

13.     Defendant, Central Wire Industries presently operates a plant at 6509 Olson Road, Union, Illinois, 60180.

**E.  Defendant, CWI Holding Inc.**

14.     Defendant, CWI Holding Inc. ("CWI Holding"), is a Delaware Corporation, with its principal place of business at 1 North Street, Perth, Ontario K7H 2S2.

15.    Defendant, CWI Holding presently operates a plant at 6509 Olson Road, Union, Illinois, 60180.

**F.  Defendant, Lincoln Electric Holdings, Inc.**

16.    Defendant, Lincoln Electric Holdings, Inc., is a Ohio Corporation with its principal place of business at 4400 Easton Commons Way, Columbus, Ohio.

17.    Defendant, Lincoln Electric Holdings, Inc., presently operates a plant at 6509 Olson Road, Union, Illinois, 60180.

**G.    Defendant, USI Holding, Inc.**

18.    Defendant, USI Holding, Inc., is a Nevada Corporation with its principal place of business at 202 N. Carson St., Carson City, NV, 89701.

19.    Defendant, USI Holding, Inc., presently operates a plant at 6509 Olson Road, Union, Illinois, 60180.

**H.  Defendant, Arcelormittal International America, LLC**

20.    Defendant, Arcelormittal International America, LLC, is a Delaware Corporation, with its principal place of business at One South Dearborn, Chicago, Illinois.

21.    Defendant, Arcelormittal International America, LLC, presently operates a plant at 6509 Olson Road, Union, Illinois, 60180.

**I.    Defendant, Arcelormittal USA Foundation, Inc.**

22.    Defendant, Arcelormittal USA Foundation, Inc., is a Delaware Corporation, with its principal place of business at One South Dearborn, Chicago, Illinois.

23.    Defendant, Arcelormittal USA Foundation, Inc., presently operates a plant at 6509 Olson Road, Union, Illinois, 60180.

**J.    Defendant, Cleveland-Cliffs Steel, LLC**

24.     Defendant, Cleveland-Cliffs Steel, LLC, is a Delaware Corporation, with its principal place of business at One South Dearborn, Chicago, Illinois.

25.     Defendant, Cleveland-Cliffs Steel, LLC, presently operates a plant at 6509 Olson Road, Union, Illinois, 60180.

**K.     Defendant, Gerry Roup**

26.     Defendant, Gerry Roup was the General Manager of Techalloy and Central Wire at the Union plant from 2005 through 2020.

27.     Defendant, Gerry Roup, currently resides in McHenry County, Illinois.

28.     To plaintiff's best knowledge and belief, Defendant, Gerry Roup, currently resides at 811 S. Vista Drive, Algonquin, Illinois.

**L.     Defendant, Henry Lopes**

29.     Defendant, Henry Lopes was Vice President of U.S. Operations for Techalloy and Central Wire at the Union, IL, plant. From 1985 to 2014.

30.     Defendant, Henry Lopes currently resides in Collier County, Florida.

31.     To plaintiff's best knowledge and belief, Defendant, Henry Lopes, currently resides at 4005 Gulf Shore Blvd N, Unit 1402, Naples, FL 34103.

**M.     Defendant, Richard Perlick**

32.     Defendant, Richard Perlick was the General Manager of the Techalloy and Central Wire Plant in Union, IL, from 1990 to 1997.

33.     Defendant, Richard Perlick currently resides in McHenry County, Illinois.

34.     To plaintiff's best knowledge and belief, Defendant, Richard Perlick, currently resides at 1758 Woodhaven Drive, Crystal Lake, IL, 60014.

**N.     Defendant, Richard Gustafson**

35.     Defendant, Richard Gustafson was the production manager at the Techalloy and Central Wire Plant in Union, IL, from 2006 through 2020.

36.     Defendant, Richard Gustafson currently resides in Winnebago County.

37.     To plaintiff's best knowledge and belief, Defendant, Richard Gustafson, currently resides at 1188 Cerasus Drive, Rockford, IL 61108.

**O.     Defendant, Mike Grunthaner**

38.     Defendant, Mike Grunthaner was the production manager of Techalloy and Central Wire at the Union, IL, Plant from 1990 through 2006.

39.     Defendant, Mike Grunthaner currently resides in McHenry County, Illinois.

40.     To plaintiff's best knowledge and belief, Defendant, Mike Grunthaner, currently resides at 3972 Honeymoon Ridge, Lake in the Hills, IL 60156.

**P.     Defendant, David Plencner**

41.     Defendant, David Plencner was an employee of Techalloy and Central Wire at the Union Plant from 1962 through 2010.

42.     Defendant, David Plencner currently resides in McHenry County.

43.     To plaintiff's best knowledge and belief, Defendant, David Plencner, currently resides at 27704 Church Road, Marengo, IL, 60152.

**Q.     Defendant, Victor Polard**

44.     Defendant, Victor Polard was the Vice President of Arcelor from 2002 to 2006.

45.     Defendant, Victor Polard currently resides in France.

46.     To plaintiff's best knowledge and belief, Defendant, Victor Polard, currently resides at 36, route de Saint-Roch 13520, Le Paradou, France.

**R.     Defendant, Carl Reed**

47.     Defendant, Carl Reed was the VP of Human Resources and Corporate Safety Officer of Techalloy and Central Wire at the Union plant from 1986-2003.

48.     Defendant, Carl Reed currently resides in Harris County, Texas.

49.     To plaintiff's best knowledge and belief, Defendant, Carl Reed, currently resides at 11823 Silverwood Bend Lane, Cypress, TX, 77433.

**S.     Defendant, Terry Tamanauskas**

50.     Defendant, Terry Tamanauskas was employed at the Techalloy and Central Wire Plant in Union, IL, from 2000 until the present date.

51.     Defendant, Terry Tamanauskas, became General Manager (GM) of the Union, Illinois, Plant, in 2020.

52.     Defendant, Terry Tamanauskas currently resides in Winnebago County, IL.

53.     To plaintiff's best knowledge and belief, Defendant, Terry Tamanauskas, currently resides at 6018 Sweet Grass Drive, Roscoe, IL 61073.

**T.     Defendant, Tom Hanewald**

54.     Defendant, Tom Hanewald was the Vice President/Chief Administrative Officer for Techalloy and Central Wire at the Union Plant from 2015 through 2018.

55.     Defendant, Tom Hanewald currently resides in Allen County, IN

56.     To plaintiff's best knowledge and belief, Defendant, Tom Hanewald, currently resides at 6122 Aboit CV, Fort Wayne, IL 46814.

**U.     Defendant, Thiery Cremailh**

57.     Defendant, Thiery Cremailh was the President and CEO of Techalloy and Central Wire from 1990 to 2007.

58.     Defendant, Thiery Cremailh currently resides in Bergen County, NJ.

59.     To plaintiff's best knowledge and belief, Defendant, Thiery Cremailh, currently resides at 14 Seminary Drive, Mahwah, NJ 07430.

**V.      Defendant, Gunnar K. Gilberg**

60.     Defendant, Gunnar K. Gilberg was a principal of Techalloy's Operations from 1990 through 2008.

61.     Defendant, Gunnar K. Gilberg, currently resides in the United Kingdom.

62.     To plaintiff's best knowledge and belief, Defendant, Gunnar K. Gilberg, currently resides at 1 Eaton Square, London SW1W 9DA.

**W.      Defendant, Jean-Claude Couasnon**

63.     Defendant, Jean-Claude Couasnon was Vice President of ArcelorMittal International America, LLC from 2004 to 2006.

64.     Defendant, Jean-Claude Couasnon currently resides abroad, in France.

65.     To plaintiff's best knowledge and belief, Defendant, Jean-Claude Couasnon, currently resides at 6, square de Tocqueville 78150, Le Chesnay, France.

**X.      Defendant, Jack Zuharich**

66.     Defendant, Jack Zuharich, was President and CEO of Techalloy from 1987 to the late 1980s and or early 1990s.

67.     Defendant, Jack Zuharich currently resides in Fairfield County, CT.

68.     To plaintiff's best knowledge and belief, Defendant, Jack Zuharich, currently resides at 10 Abbotts Hill Road, Newtown, CT 06470.

**Y.      Defendant Viking Chemical Company**

69.     Defendant, Viking Chemical Company, is an Illinois Corporation with its principal place of business at 1827 18th Ave., Rockford, IL, 61110.

70.     Defendant, Viking Chemical Company, presently operates a chemical distribution warehouse.

**Z.     Defendant, Weston Solutions, Inc.**

71.     Defendant, Weston Solutions, Inc., is a Pennsylvania Corporation with its principal place of business at 1400 Weston Way, West Chester, PA 19380.

72.     Defendant, Weston Solutions, Inc. is an environmental remediation company.

**AA.     Defendant, Matrix Environmental, Inc.**

73.     Defendant, Matrix Environmental, Inc., is a California Corporation with its principal place of business at 2330 Cherry Industrial Cir., Long Beach, CA 90805.

74.     Defendant, Matrix Environmental, Incorporated., is an environmental remediation company.

**BB.     Defendant, Autumnwood ESH Consultants, LLC**

75.     Defendant, Autumnwood ESH Consultants, LLC, is a Wisconsin Corporation with its principal place of business at 6539 Autumnwood Ct., Mount Pleasant, WI 53403.

76.     Defendant, Autumnwood ESH Consultants, LLC, is an environmental remediation company.

**CC.     Defendant, Antea USA, Inc.**

77.     Defendant, Antea USA, Inc., is a Minnesota Corporation with its principal place of business at 2345 Rice Street, Suite 230, Roseville, MN 55113.

78.     Defendant, Antea USA, Inc., is an environmental remediation company.

**DD.     Defendant, John W. Thorsen**

79.     Defendant, John W. Thorsen was a Senior Vice President at Weston Solutions, Inc., from 1981 to 2003.

80.     Defendant, John W. Thorsen was an Engineering Manager at Matrix Environmental, Inc., from 2005 to 2011.

81.     Defendant, John W. Thorsen is a Principal at Autumnwood ESH Consultants, LLC, from 2011 to the Present.

82.     Defendant John W. Thorsen currently resides in Racine County, WI.

83.     To plaintiff's best knowledge and belief, Defendant, John W. Thorsen, currently resides at 6539 Autumnwood Ct, Mount Pleasant, WI 53403.

**EE.     Defendant, Phibro-Tech, Inc.**

84.     At all times relevant, Defendant, Phibro-Tech, Inc.'s, ("Phibro-Tech") principal place of business is located in New Jersey.

85.     At all times relevant, Defendant, Phibro-Tech was incorporated under the laws of Delaware.

86.     At all times relevant, one of Phibro-Tech's plants is located at 17415 Jefferson Street, Union, IL 60180.

87.     Phibro-Tech was granted this property on December 31, 1993, presently having occupied the property for approximately twenty-six (26) years.

88.     Phibro-Tech manufactures recycled copper and iron-based products, working alongside the electronic, semiconductor and water treatment industries.

**FF.     Defendant, C P Chemicals, Inc. f/k/a Southern California Chemical Company, Inc.**

89.     On and prior to July 21, 1987, Southern California Chemical Company, Inc. ("Southern California Chemical Company") owned and occupied a plant located at 17415 Jefferson Street, Union, Illinois 60180 during the time that Plaintiff resided in Union, Illinois.

90.     Southern California Chemical Company, Inc., was a corporation, whose principal place of business was located at 8851 Dice Road, Santa Fe Springs, California.

91.     On July 31, 1987, Southern California Chemical Company, Inc. merged with Defendant, C P Chemicals, Inc.

92.     On July 31, 1987, Defendant, C P Chemicals, Inc. purchased Southern California Chemical Company, Inc. assets.

93.     At all times relevant C P Chemicals, Inc. is incorporated under the laws of Delaware.

94.     At all times relevant, C P Chemicals, Inc.'s principal place of business is located in New Jersey.

95.     At all times relevant, C P Chemicals, Inc. was doing business in Illinois and owned and occupied a plant located at 17415 Jefferson Street, Union, Illinois

96.     The terms and conditions of the merger cease Southern California Chemical Company's existence and said corporation shall be merged into the surviving corporation - C P Chemicals, Inc.

97.     At the time of the merger on July 31, 1987, C P Chemicals agreed to possess Southern California Chemical Company's liabilities.

98.     At the time of the merger on July 31, 1987, C P Chemicals agreed to possess Southern California Chemical Company's interests.

99.     At the time of the merger on July 31, 1987, C P Chemicals agreed to possess Southern California Chemical Company's contracts.

100. At the time of the merger on July 31, 1987, C P Chemicals agreed debts, liabilities, and duties of Southern California Chemical Company which attach to CP Chemicals, Inc., including debts, liabilities, and duties incurred.

101. Prior to the merger on July 31, 1987, Southern California Chemical Company entered into an asset purchase agreement with Philipp Brothers Chemicals, Inc.

102. Southern California Chemical Company manufactured an array of chemicals. Their products included inorganic chemicals and proprietary and patented specialty products which were geared towards the aerospace and electronics industries.

**GG.**   **Defendant, Nortek Global HVAC, LLC**

103. Defendant, Nortek Global HVAC, LLC, is a Missouri Corporation with its principal place of business at 221 Bolivar St, Jefferson City, MI, 65101.

**HH.**   **Defendant, Broan-NuTone LLC**

104. Defendant, Broan-NuTone LLC, is a Delaware Corporation with its principal place of business at 926 W State St. Hartford, WI 53027.

**II.**   **Defendant, Rangaire Manufacturing Company, LP**

105. Defendant, Rangaire Manufacturing Company, LP, is a Texas Corporation with its principal place of business at 501 S Wilhite St., Cleburne, TX 76031.

**JJ.**   **Defendant, Melrose Industries PLC**

106. Defendant, Melrose Industries PLC, is a foreign Corporation with its principal place of business at 11th Floor, The Colmore Building, 20 Colmore Circus Queensway, Birmingham, West Midlands, B4 6AT, England.

**VENUE**

107. Venue is proper in this Court pursuant to 735 ILCS 5/2 – 101 and 5/2 – 102.

108.    The emissions of VOCs and allegations underlying the basis of this suit occurred in the Town of Union, IL, and in County of McHenry County.

## ALLEGATIONS COMMON TO ALL COUNTS

109.    In 1916 Trichloroethene ("TCE") was documented to have adverse health impacts on the US beef industry.

110.    In 1916 literature was published citing TCE as a carcinogen.

111.    In 1916, TCE was found to have adverse impacts on animals.

112.    In 1923, TCE was cited as a cause of human death.

113.    In 1923, it was known to various manufacturing companies, TCE had adverse health impacts on workers.

114.    In 1932, the Journal of American Medical Association published health risks of TCE.

115.    In 1932, the Journal of American Medical Association published this to manufacturing industries.

116.    In 1932, Chrysler Corp. advised its workers of a method in which TCE should not be used in the manufacturing process.

117.    In 1932, the American Medical Association advised manufacturing companies to stop using TCE or, "it would be the source of disaster for exposed workmen."

118.    In 1952, the farming industry stopped using TCE in cattle feeding products.

119.    In 1975, the National Cancer Institute published literature that TCE caused cancerous tumor growth in mice.

120.    In 1976, the United States Environmental Protection Agency added TCE to its, "Hazardous Substance List."

121.    In 1976, the U.S. EPA issued a press release warning of, "the contamination of groundwater by TCE, leading from disposal sites as a primary concern."

122.    In 1977, the Food & Drug Administration banned TCE

123.    In May 1998, the EPA ordered Techalloy to, "institute controls consisting of a facility deed restriction and a country restriction on water well drilling permits," as a corrective action.

124.    In May 1998, the EPA ordered Techalloy to institute a private well sampling program as a corrective action.

125.    In May 1998, the EPA ordered Techalloy to institute a soil stabilization program to address areas of metal contamination at the site as a corrective action.

126.    In May 1998, the EPA ordered Techalloy to institute to institute a continual operation of the off-site groundwater recovery system as a correctives action.

127.    In May 1998, the EPA ordered Techalloy to institute an implementation of an air sparge/soil vapor extraction system to treat on-site soils and groundwater contaminated in VOCs as a corrective action.

128.    In May 1998, the EPA ordered Techalloy to continue to institute groundwater monitoring as a corrective action

129.    In March 1999, Techalloy installed a second extraction well in order to increase the size of the capture zone of VOCs, including TCE.

130.    In 1960, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

131.    In 1960, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

132.    In 1960, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

133.    In 1960, Techalloy operated the property at 6509 Olson Rd, Union, IL.

134.    In 1960, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

135.    In 1960, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

136.    In 1960, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

137.    In 1960, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

138.    In 1960, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

139.    In 1960, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

140.    In 1960, Techalloy purchased TCE for use at the plant.

141.    In 1960, Techalloy purchased TCA for use at the plant.

142.    In 1960, Techalloy purchased PCE for use at the plant.

143.    In 1960, Techalloy purchased DCE for use at the plant.

144.    In 1960, Techalloy purchased DCA for use at the plant.

145.    In 1960, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

146.    In 1960, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

147.    In 1960, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

148.    In 1960, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

149.    In 1960, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

150.    In 1960, Techalloy disposed of TCE used at the plant.

151.    In 1960, Techalloy was in control of disposing TCA at the plant.

152.    In 1960, Techalloy was in control of disposing PCE at the plant.

153.    In 1960, Techalloy was in control of disposing DCE at the plant.

154.    In 1960, Techalloy was in control of disposing DCA at the plant.

155.    In 1960, Techalloy designed an outdoor, concrete evaporation pad for TCE

156.    In 1960, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

157.    In 1960, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

158.    In 1960, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

159.    In 1960, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

160.    In 1960, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

161.    That in 1960, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

162.    That in 1960, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

163.    That in 1960, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

164.    That in 1960, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

165.    That in 1960, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

166.    That in 1960, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

167.    That in 1960, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

168.    That in 1960, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

169.    That in 1960, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

170.    That in 1960, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

171.    That in 1960, TCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

172.    That in 1960, TCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

173.    That in 1960, PCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

174.    That in 1960, DCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

175.    That in 1960, DCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

176.    That in 1960, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

177.    That in 1960, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

178.    That in 1960, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

179.    That in 1960, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

180.    That in 1960, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

181.    That in 1960, TCE from the plant entered the air in Union, IL.

182.    That in 1960, TCA from the plant entered the air in Union, IL.

183.    That in 1960, DCE from the plant entered the air in Union, IL.

184.    That in 1960, DCA from the plant entered the air in Union, IL.

185.    That in 1960, PCE from the plant entered the air in Union, IL.

186.    That in 1960, TCE from the plant entered the Peredna residence basement.

187.    That in 1960, TCE from the plant entered the Peredna residence crawl spaces.

188.    That in 1960, TCE from the plant entered the Peredna residence home.

189.    That in 1960, TCA from the plant entered the Peredna residence basement.

190.    That in 1960, TCA from the plant entered the Peredna residence crawl spaces.

191.    That in 1960, TCA from the plant entered the Peredna residence home.

192.    That in 1960, DCE from the plant entered the Peredna residence basement.

193.    That in 1960, DCE from the plant entered the Peredna residence crawl spaces.

194.    That in 1960, DCE from the plant entered the Peredna residence home.

195.    That in 1960, DCA from the plant entered the Peredna residence basement.

196.    That in 1960, DCA from the plant entered the Peredna residence crawl spaces.

197.    That in 1960, DCA from the plant entered the Peredna residence home.

198.    That in 1960, PCE from the plant entered the Peredna residence basement.

199.    That in 1960, PCE from the plant entered the Peredna residence crawl spaces.

200.    That in 1960, PCE from the plant entered the Peredna residence home.

201.    In 1961, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

202.    In 1961, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

203.    In 1961, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

204.    In 1961, Techalloy operated the property at 6509 Olson Rd, Union, IL.

205.    In 1961, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

206.    In 1961, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

207.    In 1961, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

208.    In 1961, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

209.    In 1961, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

210.     In 1961, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

211.     In 1961, Techalloy purchased TCE for use at the plant.

212.     In 1961, Techalloy purchased TCA for use at the plant.

213.     In 1961, Techalloy purchased PCE for use at the plant.

214.     In 1961, Techalloy purchased DCE for use at the plant.

215.     In 1961, Techalloy purchased DCA for use at the plant.

216.     In 1961, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

217.     In 1961, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

218.     In 1961, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

219.     In 1961, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

220.     In 1961, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

221.     In 1961, Techalloy disposed of TCE used at the plant.

222.     In 1961, Techalloy was in control of disposing TCA at the plant.

223.     In 1961, Techalloy was in control of disposing PCE at the plant.

224.     In 1961, Techalloy was in control of disposing DCE at the plant.

225.     In 1961, Techalloy was in control of disposing DCA at the plant.

226.     In 1961, Techalloy designed an outdoor, concrete evaporation pad for TCE.

227.     In 1961, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

228.     In 1961, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

229.    In 1961, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

230.    In 1961, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

231.    In 1961, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

232.    That in 1961, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

233.    That in 1961, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

234.    That in 1961, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

235.    That in 1961, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

236.    That in 1961, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

237.    That in 1961, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

238.    That in 1961, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

239.    That in 1961, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

240.    That in 1961, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

241.    That in 1961, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

242.    That in 1961, TCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

243.    That in 1961, TCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

244.    That in 1961, PCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

245.    That in 1961, DCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

246.    That in 1961, DCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

247.    That in 1961, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

248.    That in 1961, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

249.    That in 1961, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

250.    That in 1961, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

251.     That in 1961, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

252.     That in 1961, TCE from the plant entered the air in Union, IL.

253.     That in 1961, TCA from the plant entered the air in Union, IL.

254.     That in 1961, DCE from the plant entered the air in Union, IL.

255.     That in 1961, DCA from the plant entered the air in Union, IL.

256.     That in 1961, PCE from the plant entered the air in Union, IL.

257.     That in 1961, TCE from the plant entered the Peredna residence basement.

258.     That in 1961, TCE from the plant entered the Peredna residence crawl spaces.

259.     That in 1961, TCE from the plant entered the Peredna residence home.

260.     That in 1961, TCA from the plant entered the Peredna residence basement.

261.     That in 1961, TCA from the plant entered the Peredna residence crawl spaces.

262.     That in 1961, TCA from the plant entered the Peredna residence home.

263.     That in 1961, DCE from the plant entered the Peredna residence basement.

264.     That in 1961, DCE from the plant entered the Peredna residence crawl spaces.

265.     That in 1961, DCE from the plant entered the Peredna residence home.

266.     That in 1961, DCA from the plant entered the Peredna residence basement.

267.     That in 1961, DCA from the plant entered the Peredna residence crawl spaces.

268.     That in 1961, DCA from the plant entered the Peredna residence home.

269.     That in 1961, PCE from the plant entered the Peredna residence basement.

270.     That in 1961, PCE from the plant entered the Peredna residence crawl spaces.

271.     That in 1961, PCE from the plant entered the Peredna residence home.

272. In 1962, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

273. In 1962, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

274. In 1962, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

275. In 1962, Techalloy operated the property at 6509 Olson Rd, Union, IL.

276. In 1962, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

277. In 1962, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

278. In 1962, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

279. In 1962, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

280. In 1962, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

281. In 1962, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

282. In 1962, Techalloy purchased TCE for use at the plant.

283. In 1962, Techalloy purchased TCA for use at the plant.

284. In 1962, Techalloy purchased PCE for use at the plant.

285. In 1962, Techalloy purchased DCE for use at the plant.

286. In 1962, Techalloy purchased DCA for use at the plant.

287. In 1962, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

288.   In 1962, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

289.   In 1962, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

290.   In 1962, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

291.   In 1962, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

292.   In 1962, Techalloy disposed of TCE used at the plant.

293.   In 1962, Techalloy was in control of disposing TCA at the plant.

294.   In 1962, Techalloy was in control of disposing PCE at the plant.

295.   In 1962, Techalloy was in control of disposing DCE at the plant.

296.   In 1962, Techalloy was in control of disposing DCA at the plant.

297.   In 1962, Techalloy designed an outdoor, concrete evaporation pad for TCE

298.   In 1962, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

299.   In 1962, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

300.   In 1962, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

301.   In 1962, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

302.   In 1962, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

303.   That in 1962, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

304.     That in 1962, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

305.     That in 1962, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

306.     That in 1962, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

307.     That in 1962, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

308.     That in 1962, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

309.     That in 1962, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

310.     That in 1962, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

311.     That in 1962, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

312.     That in 1962, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

313.     That in 1962, TCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

314.     That in 1962, TCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

315.    That in 1962, PCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

316.    That in 1962, DCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

317.    That in 1962, DCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

318.    That in 1962, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

319.    That in 1962, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

320.    That in 1962, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

321.    That in 1962, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

322.    That in 1962, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

323.    That in 1962, TCE from the plant entered the air in Union, IL.

324.    That in 1962, TCA from the plant entered the air in Union, IL.

325.    That in 1962, DCE from the plant entered the air in Union, IL.

326.    That in 1962, DCA from the plant entered the air in Union, IL.

327.    That in 1962, PCE from the plant entered the air in Union, IL.

328.    That in 1962, TCE from the plant entered the Peredna residence basement.

329.    That in 1962, TCE from the plant entered the Peredna residence crawl spaces.

330. That in 1962, TCE from the plant entered the Peredna residence home.

331. That in 1962, TCA from the plant entered the Peredna residence basement.

332. That in 1962, TCA from the plant entered the Peredna residence crawl spaces.

333. That in 1962, TCA from the plant entered the Peredna residence home.

334. That in 1962, DCE from the plant entered the Peredna residence basement.

335. That in 1962, DCE from the plant entered the Peredna residence crawl spaces.

336. That in 1962, DCE from the plant entered the Peredna residence home.

337. That in 1962, DCA from the plant entered the Peredna residence basement.

338. That in 1962, DCA from the plant entered the Peredna residence crawl spaces.

339. That in 1962, DCA from the plant entered the Peredna residence home.

340. That in 1962, PCE from the plant entered the Peredna residence basement.

341. That in 1962, PCE from the plant entered the Peredna residence crawl spaces.

342. That in 1962, PCE from the plant entered the Peredna residence home.

343. In 1963, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

344. In 1963, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

345. In 1963, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

346. In 1963, Techalloy operated the property at 6509 Olson Rd, Union, IL.

347. In 1963, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

348. In 1963, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

349. In 1963, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

350.	In 1963, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

351.	In 1963, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

352.	In 1963, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

353.	In 1963, Techalloy purchased TCE for use at the plant.

354.	In 1963, Techalloy purchased TCA for use at the plant.

355.	In 1963, Techalloy purchased PCE for use at the plant.

356.	In 1963, Techalloy purchased DCE for use at the plant.

357.	In 1963, Techalloy purchased DCA for use at the plant.

358.	In 1963, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

359.	In 1963, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

360.	In 1963, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

361.	In 1963, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

362.	In 1963, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

363.	In 1963, Techalloy disposed of TCE used at the plant.

364.	In 1963, Techalloy was in control of disposing TCA at the plant.

365.	In 1963, Techalloy was in control of disposing PCE at the plant.

366.	In 1963, Techalloy was in control of disposing DCE at the plant.

367.	In 1963, Techalloy was in control of disposing DCA at the plant.

368.	In 1963, Techalloy designed an outdoor, concrete evaporation pad for TCE

369.    In 1963, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

370.    In 1963, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

371.    In 1963, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

372.    In 1963, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

373.    In 1963, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

374.    That in 1963, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

375.    That in 1963, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

376.    That in 1963, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

377.    That in 1963, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

378.    That in 1963, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

379.    That in 1963, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

380.    That in 1963, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

381.    That in 1963, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

382.    That in 1963, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

383.    That in 1963, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

384.    That in 1963, TCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

385.    That in 1963, TCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

386.    That in 1963, PCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

387.    That in 1963, DCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

388.    That in 1963, DCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.


389.    That in 1963, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

390.    That in 1963, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

391.    That in 1963, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

392.    That in 1963, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

393.    That in 1963, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

394.    That in 1963, TCE from the plant entered the air in Union, IL.

395.    That in 1963, TCA from the plant entered the air in Union, IL.

396.    That in 1963, DCE from the plant entered the air in Union, IL.

397.    That in 1963, DCA from the plant entered the air in Union, IL.

398.    That in 1963, PCE from the plant entered the air in Union, IL.

399.    That in 1963, TCE from the plant entered the Peredna residence basement.

400.    That in 1963, TCE from the plant entered the Peredna residence crawl spaces.

401.    That in 1963, TCE from the plant entered the Peredna residence home.

402.    That in 1963, TCA from the plant entered the Peredna residence basement.

403.    That in 1963, TCA from the plant entered the Peredna residence crawl spaces.

404.    That in 1963, TCA from the plant entered the Peredna residence home.

405.    That in 1963, DCE from the plant entered the Peredna residence basement.

406.    That in 1963, DCE from the plant entered the Peredna residence crawl spaces.

407.    That in 1963, DCE from the plant entered the Peredna residence home.

408.    That in 1963, DCA from the plant entered the Peredna residence basement.

409.    That in 1963, DCA from the plant entered the Peredna residence crawl spaces.

410.    That in 1963, DCA from the plant entered the Peredna residence home.

411.   That in 1963, PCE from the plant entered the Peredna residence basement.

412.   That in 1963, PCE from the plant entered the Peredna residence crawl spaces.

413.   That in 1963, PCE from the plant entered the Peredna residence home.

414.   In 1964, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

415.   In 1964, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

416.   In 1964, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

417.   In 1964, Techalloy operated the property at 6509 Olson Rd, Union, IL.

418.   In 1964, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

419.   In 1964, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

420.   In 1964, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

421.   In 1964, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

422.   In 1964, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

423.   In 1964, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

424.   In 1964, Techalloy purchased TCE for use at the plant.

425.   In 1964, Techalloy purchased TCA for use at the plant.

426.   In 1964, Techalloy purchased PCE for use at the plant.

427.   In 1964, Techalloy purchased DCE for use at the plant.

428.    In 1964, Techalloy purchased DCA for use at the plant.

429.    In 1964, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

430.    In 1964, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

431.    In 1964, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

432.    In 1964, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

433.    In 1964, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

434.    In 1964, Techalloy disposed of TCE used at the plant.

435.    In 1964, Techalloy was in control of disposing TCA at the plant.

436.    In 1964, Techalloy was in control of disposing PCE at the plant.

437.    In 1964, Techalloy was in control of disposing DCE at the plant.

438.    In 1964, Techalloy was in control of disposing DCA at the plant.

439.    In 1964, Techalloy designed an outdoor, concrete evaporation pad for TCE

440.    In 1964, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

441.    In 1964, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

442.    In 1964, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

443.    In 1964, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

444.    In 1964, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

445.    That in 1964, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

446.    That in 1964, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

447.    That in 1964, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

448.    That in 1964, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

449.    That in 1964, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

450.    That in 1964, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

451.    That in 1964, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

452.    That in 1964, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

453.    That in 1964, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

454.    That in 1964, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

455.    That in 1964, TCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

456.     That in 1964, TCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

457.     That in 1964, PCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

458.     That in 1964, DCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

459.     That in 1964, DCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

460.     That in 1964, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

461.     That in 1964, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

462.     That in 1964, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

463.     That in 1964, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

464.     That in 1964, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

465.     That in 1964, TCE from the plant entered the air in Union, IL.

466.     That in 1964, TCA from the plant entered the air in Union, IL.

467.     That in 1964, DCE from the plant entered the air in Union, IL.

468.     That in 1964, DCA from the plant entered the air in Union, IL.

469.     That in 1964, PCE from the plant entered the air in Union, IL.

470.    That in 1964, TCE from the plant entered the Peredna residence basement.

471.    That in 1964, TCE from the plant entered the Peredna residence crawl spaces.

472.    That in 1964, TCE from the plant entered the Peredna residence home.

473.    That in 1964, TCA from the plant entered the Peredna residence basement.

474.    That in 1964, TCA from the plant entered the Peredna residence crawl spaces.

475.    That in 1964, TCA from the plant entered the Peredna residence home.

476.    That in 1964, DCE from the plant entered the Peredna residence basement.

477.    That in 1964, DCE from the plant entered the Peredna residence crawl spaces.

478.    That in 1964, DCE from the plant entered the Peredna residence home.

479.    That in 1964, DCA from the plant entered the Peredna residence basement.

480.    That in 1964, DCA from the plant entered the Peredna residence crawl spaces.

481.    That in 1964, DCA from the plant entered the Peredna residence home.

482.    That in 1964, PCE from the plant entered the Peredna residence basement.

483.    That in 1964, PCE from the plant entered the Peredna residence crawl spaces.

484.    That in 1964, PCE from the plant entered the Peredna residence home.

485.    In 1965, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

486.    In 1965, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

487.    In 1965, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

488.    In 1965, Techalloy operated the property at 6509 Olson Rd, Union, IL.

489.    In 1965, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

490.    In 1965, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

491.    In 1965, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

492.    In 1965, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

493.    In 1965, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

494.    In 1965, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

495.    In 1965, Techalloy purchased TCE for use at the plant.

496.    In 1965, Techalloy purchased TCA for use at the plant.

497.    In 1965, Techalloy purchased PCE for use at the plant.

498.    In 1965, Techalloy purchased DCE for use at the plant.

499.    In 1965, Techalloy purchased DCA for use at the plant.

500.    In 1965, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

501.    In 1965, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

502.    In 1965, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

503.    In 1965, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

504.    In 1965, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

505.    In 1965, Techalloy disposed of TCE used at the plant.

506.    In 1965, Techalloy was in control of disposing TCA at the plant.

507.    In 1965, Techalloy was in control of disposing PCE at the plant.

508.    In 1965, Techalloy was in control of disposing DCE at the plant.

509.    In 1965, Techalloy was in control of disposing DCA at the plant.

510.    In 1965, Techalloy designed an outdoor, concrete evaporation pad for TCE

511.    In 1965, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

512.    In 1965, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

513.    In 1965, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

514.    In 1965, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

515.    In 1965, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

516.    That in 1965, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

517.    That in 1965, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

518.    That in 1965, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

519.    That in 1965, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

520.    That in 1965, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

521.    That in 1965, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

522.    That in 1965, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

523.    That in 1965, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

524.    That in 1965, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

525.    That in 1965, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

526.    That in 1965, TCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

527.    That in 1965, TCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

528.    That in 1965, PCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

529.    That in 1965, DCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

530.    That in 1965, DCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

531.    That in 1965, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

532.    That in 1965, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

533.    That in 1965, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

534.    That in 1965, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

535.    That in 1965, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

536.    That in 1965, TCE from the plant entered the air in Union, IL.

537.    That in 1965, TCA from the plant entered the air in Union, IL.

538.    That in 1965, DCE from the plant entered the air in Union, IL.

539.    That in 1965, DCA from the plant entered the air in Union, IL.

540.    That in 1965, PCE from the plant entered the air in Union, IL.

541.    That in 1965, TCE from the plant entered the Peredna residence basement.

542.    That in 1965, TCE from the plant entered the Peredna residence crawl spaces.

543.    That in 1965, TCE from the plant entered the Peredna residence home.

544.    That in 1965, TCA from the plant entered the Peredna residence basement.

545.    That in 1965, TCA from the plant entered the Peredna residence crawl spaces.

546.    That in 1965, TCA from the plant entered the Peredna residence home.

547.    That in 1965, DCE from the plant entered the Peredna residence basement.

548.    That in 1965, DCE from the plant entered the Peredna residence crawl spaces.

549.    That in 1965, DCE from the plant entered the Peredna residence home.

550.    That in 1965, DCA from the plant entered the Peredna residence basement.

551.    That in 1965, DCA from the plant entered the Peredna residence crawl spaces.

552.    That in 1965, DCA from the plant entered the Peredna residence home.

553.    That in 1965, PCE from the plant entered the Peredna residence basement.

554.    That in 1965, PCE from the plant entered the Peredna residence crawl spaces.

555.    That in 1965, PCE from the plant entered the Peredna residence home.

556.    In 1966, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

557.    In 1966, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

558.    In 1966, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

559.    In 1966, Techalloy operated the property at 6509 Olson Rd, Union, IL.

560.    In 1966, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

561.    In 1966, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

562.    In 1966, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

563.    In 1966, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

564.    In 1966, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

565.    In 1966, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

566.    In 1966, Techalloy purchased TCE for use at the plant.

567.    In 1966, Techalloy purchased TCA for use at the plant.

568. In 1966, Techalloy purchased PCE for use at the plant.

569. In 1966, Techalloy purchased DCE for use at the plant.

570. In 1966, Techalloy purchased DCA for use at the plant.

571. In 1966, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

572. In 1966, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

573. In 1966, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

574. In 1966, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

575. In 1966, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

576. In 1966, Techalloy disposed of TCE used at the plant.

577. In 1966, Techalloy was in control of disposing TCA at the plant.

578. In 1966, Techalloy was in control of disposing PCE at the plant.

579. In 1966, Techalloy was in control of disposing DCE at the plant.

580. In 1966, Techalloy was in control of disposing DCA at the plant.

581. In 1966, Techalloy designed an outdoor, concrete evaporation pad for TCE

582. In 1966, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

583. In 1966, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

584. In 1966, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

585. In 1966, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

586.    In 1966, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

587.    That in 1966, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

588.    That in 1966, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

589.    That in 1966, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

590.    That in 1966, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

591.    That in 1966, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

592.    That in 1966, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

593.    That in 1966, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

594.    That in 1966, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

595.    That in 1966, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

596.    That in 1966, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

597.     That in 1966, TCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

598.     That in 1966, TCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

599.     That in 1966, PCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

600.     That in 1966, DCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

601.     That in 1966, DCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

602.     That in 1966, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

603.     That in 1966, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

604.     That in 1966, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

605.     That in 1966, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

606.     That in 1966, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

607.     That in 1966, TCE from the plant entered the air in Union, IL.

608.     That in 1966, TCA from the plant entered the air in Union, IL.

609.     That in 1966, DCE from the plant entered the air in Union, IL.

610.   That in 1966, DCA from the plant entered the air in Union, IL.

611.   That in 1966, PCE from the plant entered the air in Union, IL.

612.   That in 1966, TCE from the plant entered the Peredna residence basement.

613.   That in 1966, TCE from the plant entered the Peredna residence crawl spaces.

614.   That in 1966, TCE from the plant entered the Peredna residence home.

615.   That in 1966, TCA from the plant entered the Peredna residence basement.

616.   That in 1966, TCA from the plant entered the Peredna residence crawl spaces.

617.   That in 1966, TCA from the plant entered the Peredna residence home.

618.   That in 1966, DCE from the plant entered the Peredna residence basement.

619.   That in 1966, DCE from the plant entered the Peredna residence crawl spaces.

620.   That in 1966, DCE from the plant entered the Peredna residence home.

621.   That in 1966, DCA from the plant entered the Peredna residence basement.

622.   That in 1966, DCA from the plant entered the Peredna residence crawl spaces.

623.   That in 1966, DCA from the plant entered the Peredna residence home.

624.   That in 1966, PCE from the plant entered the Peredna residence basement.

625.   That in 1966, PCE from the plant entered the Peredna residence crawl spaces.

626.   That in 1966, PCE from the plant entered the Peredna residence home.

627.   In 1967, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

628.   In 1967, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

629.   In 1967, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

630.   In 1967, Techalloy operated the property at 6509 Olson Rd, Union, IL.

631.   In 1967, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

632. In 1967, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

633. In 1967, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

634. In 1967, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

635. In 1967, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

636. In 1967, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

637. In 1967, Techalloy purchased TCE for use at the plant.

638. In 1967, Techalloy purchased TCA for use at the plant.

639. In 1967, Techalloy purchased PCE for use at the plant.

640. In 1967, Techalloy purchased DCE for use at the plant.

641. In 1967, Techalloy purchased DCA for use at the plant.

642. In 1967, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

643. In 1967, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

644. In 1967, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

645. In 1967, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

646. In 1967, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

647. In 1967, Techalloy disposed of TCE used at the plant.

648. In 1967, Techalloy was in control of disposing TCA at the plant.

649.     In 1967, Techalloy was in control of disposing PCE at the plant.

650.     In 1967, Techalloy was in control of disposing DCE at the plant.

651.     In 1967, Techalloy was in control of disposing DCA at the plant.

652.     In 1967, Techalloy designed an outdoor, concrete evaporation pad for TCE

653.     In 1967, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

654.     In 1967, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

655.     In 1967, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

656.     In 1967, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

657.     In 1967, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

658.     That in 1967, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

659.     That in 1967, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

660.     That in 1967, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

661.     That in 1967, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

662.    That in 1967, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

663.    That in 1967, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

664.    That in 1967, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

665.    That in 1967, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

666.    That in 1967, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

667.    That in 1967, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

668.    That in 1967, TCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

669.    That in 1967, TCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

670.    That in 1967, PCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

671.    That in 1967, DCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

672.    That in 1967, DCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

673.     That in 1967, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

674.     That in 1967, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

675.     That in 1967, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

676.     That in 1967, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

677.     That in 1967, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

678.     That in 1967, TCE from the plant entered the air in Union, IL.

679.     That in 1967, TCA from the plant entered the air in Union, IL.

680.     That in 1967, DCE from the plant entered the air in Union, IL.

681.     That in 1967, DCA from the plant entered the air in Union, IL.

682.     That in 1967, PCE from the plant entered the air in Union, IL.

683.     That in 1967, TCE from the plant entered the Peredna residence basement.

684.     That in 1967, TCE from the plant entered the Peredna residence crawl spaces.

685.     That in 1967, TCE from the plant entered the Peredna residence home.

686.     That in 1967, TCA from the plant entered the Peredna residence basement.

687.     That in 1967, TCA from the plant entered the Peredna residence crawl spaces.

688.     That in 1967, TCA from the plant entered the Peredna residence home.

689.     That in 1967, DCE from the plant entered the Peredna residence basement.

690.     That in 1967, DCE from the plant entered the Peredna residence crawl spaces.

691.    That in 1967, DCE from the plant entered the Peredna residence home.

692.    That in 1967, DCA from the plant entered the Peredna residence basement.

693.    That in 1967, DCA from the plant entered the Peredna residence crawl spaces.

694.    That in 1967, DCA from the plant entered the Peredna residence home.

695.    That in 1967, PCE from the plant entered the Peredna residence basement.

696.    That in 1967, PCE from the plant entered the Peredna residence crawl spaces.

697.    That in 1967, PCE from the plant entered the Peredna residence home.

698.    In 1968, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

699.    In 1968, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

700.    In 1968, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

701.    In 1968, Techalloy operated the property at 6509 Olson Rd, Union, IL.

702.    In 1968, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

703.    In 1968, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

704.    In 1968, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

705.    In 1968, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

706.    In 1968, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

707.    In 1968, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

708.    In 1968, Techalloy purchased TCE for use at the plant.

709.    In 1968, Techalloy purchased TCA for use at the plant.

710.    In 1968, Techalloy purchased PCE for use at the plant.

711.    In 1968, Techalloy purchased DCE for use at the plant.

712.    In 1968, Techalloy purchased DCA for use at the plant.

713.    In 1968, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

714.    In 1968, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

715.    In 1968, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

716.    In 1968, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

717.    In 1968, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

718.    In 1968, Techalloy disposed of TCE used at the plant.

719.    In 1968, Techalloy was in control of disposing TCA at the plant.

720.    In 1968, Techalloy was in control of disposing PCE at the plant.

721.    In 1968, Techalloy was in control of disposing DCE at the plant.

722.    In 1968, Techalloy was in control of disposing DCA at the plant.

723.    In 1968, Techalloy designed an outdoor, concrete evaporation pad for TCE

724.    In 1968, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

725.    In 1968, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

726.    In 1968, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

727.    In 1968, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

728.    In 1968, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

729.    That in 1968, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

730.    That in 1968, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

731.    That in 1968, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

732.    That in 1968, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

733.    That in 1968, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

734.    That in 1968, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

735.    That in 1968, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

736.    That in 1968, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

737.    That in 1968, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

738.    That in 1968, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

739.    That in 1968, TCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

740.    That in 1968, TCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

741.    That in 1968, PCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

742.    That in 1968, DCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

743.    That in 1968, DCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

744.    That in 1968, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

745.    That in 1968, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

746.    That in 1968, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

747.    That in 1968, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

748.    That in 1968, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

749.    That in 1968, TCE from the plant entered the air in Union, IL.

750.  That in 1968, TCA from the plant entered the air in Union, IL.

751.  That in 1968, DCE from the plant entered the air in Union, IL.

752.  That in 1968, DCA from the plant entered the air in Union, IL.

753.  That in 1968, PCE from the plant entered the air in Union, IL.

754.  That in 1968, TCE from the plant entered the Peredna residence basement.

755.  That in 1968, TCE from the plant entered the Peredna residence crawl spaces.

756.  That in 1968, TCE from the plant entered the Peredna residence home.

757.  That in 1968, TCA from the plant entered the Peredna residence basement.

758.  That in 1968, TCA from the plant entered the Peredna residence crawl spaces.

759.  That in 1968, TCA from the plant entered the Peredna residence home.

760.  That in 1968, DCE from the plant entered the Peredna residence basement.

761.  That in 1968, DCE from the plant entered the Peredna residence crawl spaces.

762.  That in 1968, DCE from the plant entered the Peredna residence home.


763.  That in 1968, DCA from the plant entered the Peredna residence basement.

764.  That in 1968, DCA from the plant entered the Peredna residence crawl spaces.

765.  That in 1968, DCA from the plant entered the Peredna residence home.

766.  That in 1968, PCE from the plant entered the Peredna residence basement.

767.  That in 1968, PCE from the plant entered the Peredna residence crawl spaces.

768.  That in 1968, PCE from the plant entered the Peredna residence home.

769.  In 1969, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

770.  In 1969, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

771.  In 1969, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

772.  In 1969, Techalloy operated the property at 6509 Olson Rd, Union, IL.

773.  In 1969, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

774.  In 1969, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

775.  In 1969, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

776.  In 1969, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

777.  In 1969, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

778.  In 1969, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

779.  In 1969, Techalloy purchased TCE for use at the plant.

780.  In 1969, Techalloy purchased TCA for use at the plant.

781.  In 1969, Techalloy purchased PCE for use at the plant.

782.  In 1969, Techalloy purchased DCE for use at the plant.

783.  In 1969, Techalloy purchased DCA for use at the plant.

784.  In 1969, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

785.  In 1969, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

786.  In 1969, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

787.  In 1969, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

788.  In 1969, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

789.  In 1969, Techalloy disposed of TCE used at the plant.

790.  In 1969, Techalloy was in control of disposing TCA at the plant.

791.  In 1969, Techalloy was in control of disposing PCE at the plant.

792.  In 1969, Techalloy was in control of disposing DCE at the plant.

793.  In 1969, Techalloy was in control of disposing DCA at the plant.

794.  In 1969, Techalloy designed an outdoor, concrete evaporation pad for TCE

795.  In 1969, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

796.  In 1969, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

797.  In 1969, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

798.  In 1969, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

799.  In 1969, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

800.  That in 1969, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

801.  That in 1969, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

802.  That in 1969, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

803.    That in 1969, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

804.    That in 1969, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

805.    That in 1969, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

806.    That in 1969, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

807.    That in 1969, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

808.    That in 1969, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

809.    That in 1969, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

810.    That in 1969, TCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

811.    That in 1969, TCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

812.    That in 1969, PCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

813.    That in 1969, DCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

814.     That in 1969, DCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

815.     That in 1969, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

816.     That in 1969, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

817.     That in 1969, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

818.     That in 1969, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

819.     That in 1969, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

820.     That in 1969, TCE from the plant entered the air in Union, IL.

821.     That in 1969, TCA from the plant entered the air in Union, IL.

822.     That in 1969, DCE from the plant entered the air in Union, IL.

823.     That in 1969, DCA from the plant entered the air in Union, IL.

824.     That in 1969, PCE from the plant entered the air in Union, IL.

825.     That in 1969, TCE from the plant entered the Peredna residence basement.

826.     That in 1969, TCE from the plant entered the Peredna residence crawl spaces.

827.     That in 1969, TCE from the plant entered the Peredna residence home.

828.     That in 1969, TCA from the plant entered the Peredna residence basement.

829.     That in 1969, TCA from the plant entered the Peredna residence crawl spaces.

830.     That in 1969, TCA from the plant entered the Peredna residence home.

831.    That in 1969, DCE from the plant entered the Peredna residence basement.

832.    That in 1969, DCE from the plant entered the Peredna residence crawl spaces.

833.    That in 1969, DCE from the plant entered the Peredna residence home.

834.    That in 1969, DCA from the plant entered the Peredna residence basement.

835.    That in 1969, DCA from the plant entered the Peredna residence crawl spaces.

836.    That in 1969, DCA from the plant entered the Peredna residence home.

837.    That in 1969, PCE from the plant entered the Peredna residence basement.

838.    That in 1969, PCE from the plant entered the Peredna residence crawl spaces.

839.    That in 1969, PCE from the plant entered the Peredna residence home.

840.    In 1970, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

841.    In 1970, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

842.    In 1970, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

843.    In 1970, Techalloy operated the property at 6509 Olson Rd, Union, IL.

844.    In 1970, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

845.    In 1970, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

846.    In 1970, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

847.    In 1970, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

848.    In 1970, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

849.    In 1970, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

850.    In 1970, Techalloy purchased TCE for use at the plant.

851.    In 1970, Techalloy purchased TCA for use at the plant.

852.    In 1970, Techalloy purchased PCE for use at the plant.

853.    In 1970, Techalloy purchased DCE for use at the plant.

854.    In 1970, Techalloy purchased DCA for use at the plant.

855.    In 1970, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

856.    In 1970, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

857.    In 1970, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

858.    In 1970, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

859.    In 1970, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

860.    In 1970, Techalloy disposed of TCE used at the plant.

861.    In 1970, Techalloy was in control of disposing TCA at the plant.

862.    In 1970, Techalloy was in control of disposing PCE at the plant.

863.    In 1970, Techalloy was in control of disposing DCE at the plant.

864.    In 1970, Techalloy was in control of disposing DCA at the plant.

865.    In 1970, Techalloy designed an outdoor, concrete evaporation pad for TCE

866.    In 1970, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

867.    In 1970, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

868.    In 1970, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

869.    In 1970, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

870.    In 1970, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

871.    That in 1970, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

872.    That in 1970, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

873.    That in 1970, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

874.    That in 1970, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

875.    That in 1970, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

876.    That in 1970, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

877.    That in 1970, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

878.    That in 1970, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

879.     That in 1970, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

880.     That in 1970, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

881.     That in 1970, TCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

882.     That in 1970, TCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

883.     That in 1970, PCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

884.     That in 1970, DCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

885.     That in 1970, DCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

886.     That in 1970, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

887.     That in 1970, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

888.     That in 1970, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

889.   That in 1970, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

890.   That in 1970, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

891.   That in 1970, TCE from the plant entered the air in Union, IL.

892.   That in 1970, TCA from the plant entered the air in Union, IL.

893.   That in 1970, DCE from the plant entered the air in Union, IL.

894.   That in 1970, DCA from the plant entered the air in Union, IL.

895.   That in 1970, PCE from the plant entered the air in Union, IL.

896.   That in 1970, TCE from the plant entered the Peredna residence basement.

897.   That in 1970, TCE from the plant entered the Peredna residence crawl spaces.

898.   That in 1970, TCE from the plant entered the Peredna residence home.

899.   That in 1970, TCA from the plant entered the Peredna residence basement.

900.   That in 1970, TCA from the plant entered the Peredna residence crawl spaces.

901.   That in 1970, TCA from the plant entered the Peredna residence home.

902.   That in 1970, DCE from the plant entered the Peredna residence basement.

903.   That in 1970, DCE from the plant entered the Peredna residence crawl spaces.

904.   That in 1970, DCE from the plant entered the Peredna residence home.

905.   That in 1970, DCA from the plant entered the Peredna residence basement.

906.   That in 1970, DCA from the plant entered the Peredna residence crawl spaces.

907.   That in 1970, DCA from the plant entered the Peredna residence home.

908.   That in 1970, PCE from the plant entered the Peredna residence basement.

909.   That in 1970, PCE from the plant entered the Peredna residence crawl spaces.

910.    That in 1970, PCE from the plant entered the Peredna residence home.

911.    In 1971, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

912.    In 1971, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

913.    In 1971, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

914.    In 1971, Techalloy operated the property at 6509 Olson Rd, Union, IL.

915.    In 1971, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

916.    In 1971, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

917.    In 1971, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

918.    In 1971, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

919.    In 1971, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

920.    In 1971, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

921.    In 1971, Techalloy purchased TCE for use at the plant.

922.    In 1971, Techalloy purchased TCA for use at the plant.

923.    In 1971, Techalloy purchased PCE for use at the plant.

924.    In 1971, Techalloy purchased DCE for use at the plant.

925.    In 1971, Techalloy purchased DCA for use at the plant.

926.    In 1971, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

927.    In 1971, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

928.    In 1971, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

929.    In 1971, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

930.    In 1971, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

931.    In 1971, Techalloy disposed of TCE used at the plant.

932.    In 1971, Techalloy was in control of disposing TCA at the plant.

933.    In 1971, Techalloy was in control of disposing PCE at the plant.

934.    In 1971, Techalloy was in control of disposing DCE at the plant.

935.    In 1971, Techalloy was in control of disposing DCA at the plant.

936.    In 1971, Techalloy designed an outdoor, concrete evaporation pad for TCE

937.    In 1971, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

938.    In 1971, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

939.    In 1971, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

940.    In 1971, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

941.    In 1971, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

942.    That in 1971, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

943.    That in 1971, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

944.    That in 1971, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

945.    That in 1971, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

946.    That in 1971, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

947.    That in 1971, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

948.    That in 1971, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

949.    That in 1971, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

950.    That in 1971, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

951.    That in 1971, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

952.    That in 1971, TCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

953.    That in 1971, TCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

954.    That in 1971, PCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

955.    That in 1971, DCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

956.    That in 1971, DCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

957.    That in 1971, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

958.    That in 1971, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

959.    That in 1971, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

960.    That in 1971, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

961.    That in 1971, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

962.    That in 1971, TCE from the plant entered the air in Union, IL.

963.    That in 1971, TCA from the plant entered the air in Union, IL.

964.    That in 1971, DCE from the plant entered the air in Union, IL.

965.    That in 1971, DCA from the plant entered the air in Union, IL.

966.    That in 1971, PCE from the plant entered the air in Union, IL.

967. That in 1971, TCE from the plant entered the Peredna residence basement.

968. That in 1971, TCE from the plant entered the Peredna residence crawl spaces.

969. That in 1971, TCE from the plant entered the Peredna residence home.

970. That in 1971, TCA from the plant entered the Peredna residence basement.

971. That in 1971, TCA from the plant entered the Peredna residence crawl spaces.

972. That in 1971, TCA from the plant entered the Peredna residence home.

973. That in 1971, DCE from the plant entered the Peredna residence basement.

974. That in 1971, DCE from the plant entered the Peredna residence crawl spaces.

975. That in 1971, DCE from the plant entered the Peredna residence home.

976. That in 1971, DCA from the plant entered the Peredna residence basement.

977. That in 1971, DCA from the plant entered the Peredna residence crawl spaces.

978. That in 1971, DCA from the plant entered the Peredna residence home.

979. That in 1971, PCE from the plant entered the Peredna residence basement.

980. That in 1971, PCE from the plant entered the Peredna residence crawl spaces.

981. That in 1971, PCE from the plant entered the Peredna residence home.

982. In 1972, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

983. In 1972, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

984. In 1972, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

985. In 1972, Techalloy operated the property at 6509 Olson Rd, Union, IL.

986. In 1972, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

987. In 1972, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

988. In 1972, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

989. In 1972, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

990. In 1972, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

991. In 1972, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

992. In 1972, Techalloy purchased TCE for use at the plant.

993. In 1972, Techalloy purchased TCA for use at the plant.

994. In 1972, Techalloy purchased PCE for use at the plant.

995. In 1972, Techalloy purchased DCE for use at the plant.

996. In 1972, Techalloy purchased DCA for use at the plant.

997. In 1972, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

998. In 1972, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

999. In 1972, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

1000. In 1972, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

1001. In 1972, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

1002. In 1972, Techalloy disposed of TCE used at the plant.

1003. In 1972, Techalloy was in control of disposing TCA at the plant.

1004. In 1972, Techalloy was in control of disposing PCE at the plant.

1005. In 1972, Techalloy was in control of disposing DCE at the plant.

1006.   In 1972, Techalloy was in control of disposing DCA at the plant.

1007.   In 1972, Techalloy designed an outdoor, concrete evaporation pad for TCE

1008.   In 1972, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

1009.   In 1972, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

1010.   In 1972, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

1011.   In 1972, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

1012.   In 1972, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

1013.   That in 1972, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1014.   That in 1972, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1015.   That in 1972, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1016.   That in 1972, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1017.   That in 1972, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1018.   That in 1972, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1019.   That in 1972, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1020.   That in 1972, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1021.   That in 1972, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1022.   That in 1972, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1023.   That in 1972, TCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1024.   That in 1972, TCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1025.   That in 1972, PCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1026.   That in 1972, DCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1027.   That in 1972, DCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1028.   That in 1972, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1029.   That in 1972, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1030.   That in 1972, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1031.   That in 1972, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1032.   That in 1972, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1033.   That in 1972, TCE from the plant entered the air in Union, IL.

1034.   That in 1972, TCA from the plant entered the air in Union, IL.

1035.   That in 1972, DCE from the plant entered the air in Union, IL.

1036.   That in 1972, DCA from the plant entered the air in Union, IL.

1037.   That in 1972, PCE from the plant entered the air in Union, IL.

1038.   That in 1972, TCE from the plant entered the Peredna residence basement.

1039.   That in 1972, TCE from the plant entered the Peredna residence crawl spaces.

1040.   That in 1972, TCE from the plant entered the Peredna residence home.

1041.   That in 1972, TCA from the plant entered the Peredna residence basement.

1042.   That in 1972, TCA from the plant entered the Peredna residence crawl spaces.

1043.   That in 1972, TCA from the plant entered the Peredna residence home.

1044.   That in 1972, DCE from the plant entered the Peredna residence basement.

1045.   That in 1972, DCE from the plant entered the Peredna residence crawl spaces.

1046.   That in 1972, DCE from the plant entered the Peredna residence home.

1047.   That in 1972, DCA from the plant entered the Peredna residence basement.

1048.   That in 1972, DCA from the plant entered the Peredna residence crawl spaces.

1049.   That in 1972, DCA from the plant entered the Peredna residence home.

1050.   That in 1972, PCE from the plant entered the Peredna residence basement.

1051.   That in 1972, PCE from the plant entered the Peredna residence crawl spaces.

1052.   That in 1972, PCE from the plant entered the Peredna residence home.

1053.   In 1973, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

1054.   In 1973, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

1055.   In 1973, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

1056.   In 1973, Techalloy operated the property at 6509 Olson Rd, Union, IL.

1057.   In 1973, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

1058.   In 1973, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

1059.   In 1973, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

1060.   In 1973, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

1061.   In 1973, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

1062.   In 1973, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

1063.   In 1973, Techalloy purchased TCE for use at the plant.

1064.   In 1973, Techalloy purchased TCA for use at the plant.

1065.   In 1973, Techalloy purchased PCE for use at the plant.

1066.   In 1973, Techalloy purchased DCE for use at the plant.

1067.   In 1973, Techalloy purchased DCA for use at the plant.

1068.   In 1973, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

1069.   In 1973, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

1070.   In 1973, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

1071.   In 1973, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

1072.   In 1973, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

1073.   In 1973, Techalloy disposed of TCE used at the plant.

1074.   In 1973, Techalloy was in control of disposing TCA at the plant.

1075.   In 1973, Techalloy was in control of disposing PCE at the plant.

1076.   In 1973, Techalloy was in control of disposing DCE at the plant.

1077.   In 1973, Techalloy was in control of disposing DCA at the plant.

1078.   In 1973, Techalloy designed an outdoor, concrete evaporation pad for TCE

1079.   In 1973, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

1080.   In 1973, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

1081.   In 1973, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

1082.   In 1973, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

1083.   In 1973, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

1084.   That in 1973, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1085.   That in 1973, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1086.   That in 1973, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1087.   That in 1973, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1088.   That in 1973, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1089.   That in 1973, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1090.   That in 1973, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1091.   That in 1973, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1092.   That in 1973, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1093.   That in 1973, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1094.   That in 1973, TCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1095.   That in 1973, TCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1096.   That in 1973, PCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1097.   That in 1973, DCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1098.   That in 1973, DCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1099.   That in 1973, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1100.   That in 1973, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1101.   That in 1973, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1102.   That in 1973, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1103.   That in 1973, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1104.   That in 1973, TCE from the plant entered the air in Union, IL.

1105.   That in 1973, TCA from the plant entered the air in Union, IL.

1106.   That in 1973, DCE from the plant entered the air in Union, IL.

1107. That in 1973, DCA from the plant entered the air in Union, IL.

1108. That in 1973, PCE from the plant entered the air in Union, IL.

1109. That in 1973, TCE from the plant entered the Peredna residence basement.

1110. That in 1973, TCE from the plant entered the Peredna residence crawl spaces.

1111. That in 1973, TCE from the plant entered the Peredna residence home.

1112. That in 1973, TCA from the plant entered the Peredna residence basement.

1113. That in 1973, TCA from the plant entered the Peredna residence crawl spaces.

1114. That in 1973, TCA from the plant entered the Peredna residence home.

1115. That in 1973, DCE from the plant entered the Peredna residence basement.

1116. That in 1973, DCE from the plant entered the Peredna residence crawl spaces.

1117. That in 1973, DCE from the plant entered the Peredna residence home.

1118. That in 1973, DCA from the plant entered the Peredna residence basement.

1119. That in 1973, DCA from the plant entered the Peredna residence crawl spaces.

1120. That in 1973, DCA from the plant entered the Peredna residence home.

1121. That in 1973, PCE from the plant entered the Peredna residence basement.

1122. That in 1973, PCE from the plant entered the Peredna residence crawl spaces.

1123. That in 1973, PCE from the plant entered the Peredna residence home.

1124. In 1974, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

1125. In 1974, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

1126. In 1974, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

1127. In 1974, Techalloy operated the property at 6509 Olson Rd, Union, IL.

1128. In 1974, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

1129. In 1974, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

1130. In 1974, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

1131. In 1974, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

1132. In 1974, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

1133. In 1974, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

1134. In 1974, Techalloy purchased TCE for use at the plant.

1135. In 1974, Techalloy purchased TCA for use at the plant.

1136. In 1974, Techalloy purchased PCE for use at the plant.

1137. In 1974, Techalloy purchased DCE for use at the plant.

1138. In 1974, Techalloy purchased DCA for use at the plant.

1139. In 1974, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

1140. In 1974, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

1141. In 1974, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

1142. In 1974, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

1143. In 1974, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

1144. In 1974, Techalloy disposed of TCE used at the plant.

1145. In 1974, Techalloy was in control of disposing TCA at the plant.

1146.   In 1974, Techalloy was in control of disposing PCE at the plant.

1147.   In 1974, Techalloy was in control of disposing DCE at the plant.

1148.   In 1974, Techalloy was in control of disposing DCA at the plant.

1149.   In 1974, Techalloy designed an outdoor, concrete evaporation pad for TCE

1150.   In 1974, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

1151.   In 1974, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

1152.   In 1974, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

1153.   In 1974, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

1154.   In 1974, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

1155.   That in 1974, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1156.   That in 1974, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1157.   That in 1974, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1158.   That in 1974, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1159.   That in 1974, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1160.   That in 1974, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1161.   That in 1974, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1162.   That in 1974, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1163.   That in 1974, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1164.   That in 1974, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1165.   That in 1974, TCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1166.   That in 1974, TCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1167.   That in 1974, PCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1168.   That in 1974, DCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1169.   That in 1974, DCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1170.   That in 1974, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1171.   That in 1974, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1172.   That in 1974, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1173.   That in 1974, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1174.   That in 1974, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1175.   That in 1974, TCE from the plant entered the air in Union, IL.

1176.   That in 1974, TCA from the plant entered the air in Union, IL.

1177.   That in 1974, DCE from the plant entered the air in Union, IL.

1178.   That in 1974, DCA from the plant entered the air in Union, IL.

1179.   That in 1974, PCE from the plant entered the air in Union, IL.

1180.   That in 1974, TCE from the plant entered the Peredna residence basement.

1181.   That in 1974, TCE from the plant entered the Peredna residence crawl spaces.

1182.   That in 1974, TCE from the plant entered the Peredna residence home.

1183.   That in 1974, TCA from the plant entered the Peredna residence basement.

1184.   That in 1974, TCA from the plant entered the Peredna residence crawl spaces.

1185.   That in 1974, TCA from the plant entered the Peredna residence home.

1186.   That in 1974, DCE from the plant entered the Peredna residence basement.

1187.   That in 1974, DCE from the plant entered the Peredna residence crawl spaces.

1188.   That in 1974, DCE from the plant entered the Peredna residence home.

1189.   That in 1974, DCA from the plant entered the Peredna residence basement.

1190.   That in 1974, DCA from the plant entered the Peredna residence crawl spaces.

1191.   That in 1974, DCA from the plant entered the Peredna residence home.

1192.   That in 1974, PCE from the plant entered the Peredna residence basement.

1193.   That in 1974, PCE from the plant entered the Peredna residence crawl spaces.

1194.   That in 1974, PCE from the plant entered the Peredna residence home.

1195.   In 1975, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

1196.   In 1975, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

1197.   In 1975, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

1198.   In 1975, Techalloy operated the property at 6509 Olson Rd, Union, IL.

1199.   In 1975, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

1200.   In 1975, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

1201.   In 1975, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

1202.   In 1975, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

1203.   In 1975, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

1204.   In 1975, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

1205.   In 1975, Techalloy purchased TCE for use at the plant.

1206.   In 1975, Techalloy purchased TCA for use at the plant.

1207.   In 1975, Techalloy purchased PCE for use at the plant.

1208.   In 1975, Techalloy purchased DCE for use at the plant.

1209.   In 1975, Techalloy purchased DCA for use at the plant.

1210.   In 1975, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

1211.   In 1975, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

1212.   In 1975, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

1213.   In 1975, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

1214.   In 1975, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

1215.   In 1975, Techalloy disposed of TCE used at the plant.

1216.   In 1975, Techalloy was in control of disposing TCA at the plant.

1217.   In 1975, Techalloy was in control of disposing PCE at the plant.

1218.   In 1975, Techalloy was in control of disposing DCE at the plant.

1219.   In 1975, Techalloy was in control of disposing DCA at the plant.

1220.   In 1975, Techalloy designed an outdoor, concrete evaporation pad for TCE

1221.   In 1975, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

1222.   In 1975, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

1223.   In 1975, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

1224.   In 1975, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

1225.   In 1975, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

1226.   That in 1975, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1227.   That in 1975, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1228.   That in 1975, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1229.   That in 1975, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1230.   That in 1975, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1231.   That in 1975, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1232.   That in 1975, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1233.   That in 1975, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1234.   That in 1975, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1235.   That in 1975, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1236.   That in 1975, TCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1237.   That in 1975, TCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1238.   That in 1975, PCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1239.   That in 1975, DCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1240.   That in 1975, DCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1241.   That in 1975, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1242.   That in 1975, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1243.   That in 1975, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1244.   That in 1975, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1245.   That in 1975, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1246.   That in 1975, TCE from the plant entered the air in Union, IL.

1247. That in 1975, TCA from the plant entered the air in Union, IL.

1248. That in 1975, DCE from the plant entered the air in Union, IL.

1249. That in 1975, DCA from the plant entered the air in Union, IL.

1250. That in 1975, PCE from the plant entered the air in Union, IL.

1251. That in 1975, TCE from the plant entered the Peredna residence basement.

1252. That in 1975, TCE from the plant entered the Peredna residence crawl spaces.

1253. That in 1975, TCE from the plant entered the Peredna residence home.

1254. That in 1975, TCA from the plant entered the Peredna residence basement.

1255. That in 1975, TCA from the plant entered the Peredna residence crawl spaces.

1256. That in 1975, TCA from the plant entered the Peredna residence home.

1257. That in 1975, DCE from the plant entered the Peredna residence basement.

1258. That in 1975, DCE from the plant entered the Peredna residence crawl spaces.

1259. That in 1975, DCE from the plant entered the Peredna residence home.

1260. That in 1975, DCA from the plant entered the Peredna residence basement.

1261. That in 1975, DCA from the plant entered the Peredna residence crawl spaces.

1262. That in 1975, DCA from the plant entered the Peredna residence home.

1263. That in 1975, PCE from the plant entered the Peredna residence basement.

1264. That in 1975, PCE from the plant entered the Peredna residence crawl spaces.

1265. That in 1975, PCE from the plant entered the Peredna residence home.

1266. In 1976, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

1267. In 1976, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

1268. In 1976, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

1269. In 1976, Techalloy operated the property at 6509 Olson Rd, Union, IL.

1270. In 1976, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

1271. In 1976, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

1272. In 1976, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

1273. In 1976, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

1274. In 1976, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

1275. In 1976, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

1276. In 1976, Techalloy purchased TCE for use at the plant.

1277. In 1976, Techalloy purchased TCA for use at the plant.

1278. In 1976, Techalloy purchased PCE for use at the plant.

1279. In 1976, Techalloy purchased DCE for use at the plant.

1280. In 1976, Techalloy purchased DCA for use at the plant.

1281. In 1976, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

1282. In 1976, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

1283. In 1976, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

1284. In 1976, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

1285. In 1976, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

1286.   In 1976, Techalloy disposed of TCE used at the plant.

1287.   In 1976, Techalloy was in control of disposing TCA at the plant.

1288.   In 1976, Techalloy was in control of disposing PCE at the plant.

1289.   In 1976, Techalloy was in control of disposing DCE at the plant.

1290.   In 1976, Techalloy was in control of disposing DCA at the plant.

1291.   In 1976, Techalloy designed an outdoor, concrete evaporation pad for TCE

1292.   In 1976, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

1293.   In 1976, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

1294.   In 1976, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

1295.   In 1976, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

1296.   In 1976, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

1297.   That in 1976, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1298.   That in 1976, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1299.   That in 1976, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1300.   That in 1976, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1301.   That in 1976, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1302.   That in 1976, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1303.   That in 1976, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1304.   That in 1976, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1305.   That in 1976, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1306.   That in 1976, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1307.   That in 1976, TCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1308.   That in 1976, TCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1309.   That in 1976, PCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1310.   That in 1976, DCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1311. That in 1976, DCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1312. That in 1976, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1313. That in 1976, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1314. That in 1976, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1315. That in 1976, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1316. That in 1976, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1317. That in 1976, TCE from the plant entered the air in Union, IL.

1318. That in 1976, TCA from the plant entered the air in Union, IL.

1319. That in 1976, DCE from the plant entered the air in Union, IL.

1320. That in 1976, DCA from the plant entered the air in Union, IL.

1321. That in 1976, PCE from the plant entered the air in Union, IL.

1322. That in 1976, TCE from the plant entered the Peredna residence basement.

1323. That in 1976, TCE from the plant entered the Peredna residence crawl spaces.

1324. That in 1976, TCE from the plant entered the Peredna residence home.

1325. That in 1976, TCA from the plant entered the Peredna residence basement.

1326. That in 1976, TCA from the plant entered the Peredna residence crawl spaces.

1327. That in 1976, TCA from the plant entered the Peredna residence home.

1328. That in 1976, DCE from the plant entered the Peredna residence basement.

1329. That in 1976, DCE from the plant entered the Peredna residence crawl spaces.

1330. That in 1976, DCE from the plant entered the Peredna residence home.

1331. That in 1976, DCA from the plant entered the Peredna residence basement.

1332. That in 1976, DCA from the plant entered the Peredna residence crawl spaces.

1333. That in 1976, DCA from the plant entered the Peredna residence home.

1334. That in 1976, PCE from the plant entered the Peredna residence basement.

1335. That in 1976, PCE from the plant entered the Peredna residence crawl spaces.

1336. That in 1976, PCE from the plant entered the Peredna residence home.

1337. In 1977, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

1338. In 1977, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

1339. In 1977, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

1340. In 1977, Techalloy operated the property at 6509 Olson Rd, Union, IL.

1341. In 1977, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

1342. In 1977, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

1343. In 1977, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

1344. In 1977, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

1345. In 1977, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

1346. In 1977, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

1347. In 1977, Techalloy purchased TCE for use at the plant.

1348. In 1977, Techalloy purchased TCA for use at the plant.

1349. In 1977, Techalloy purchased PCE for use at the plant.

1350. In 1977, Techalloy purchased DCE for use at the plant.

1351. In 1977, Techalloy purchased DCA for use at the plant.

1352. In 1977, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

1353. In 1977, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

1354. In 1977, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

1355. In 1977, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

1356. In 1977, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

1357. In 1977, Techalloy disposed of TCE used at the plant.

1358. In 1977, Techalloy was in control of disposing TCA at the plant.

1359. In 1977, Techalloy was in control of disposing PCE at the plant.

1360. In 1977, Techalloy was in control of disposing DCE at the plant.

1361. In 1977, Techalloy was in control of disposing DCA at the plant.

1362. In 1977, Techalloy designed an outdoor, concrete evaporation pad for TCE

1363. In 1977, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

1364. In 1977, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

1365.   In 1977, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

1366.   In 1977, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

1367.   In 1977, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

1368.   That in 1977, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1369.   That in 1977, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1370.   That in 1977, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1371.   That in 1977, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1372.   That in 1977, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1373.   That in 1977, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1374.   That in 1977, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1375.   That in 1977, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1376.   That in 1977, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1377.   That in 1977, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1378.   That in 1977, TCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1379.   That in 1977, TCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1380.   That in 1977, PCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1381.   That in 1977, DCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1382.   That in 1977, DCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1383.   That in 1977, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1384.   That in 1977, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1385.   That in 1977, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1386.   That in 1977, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1387. That in 1977, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1388. That in 1977, TCE from the plant entered the air in Union, IL.

1389. That in 1977, TCA from the plant entered the air in Union, IL.

1390. That in 1977, DCE from the plant entered the air in Union, IL.

1391. That in 1977, DCA from the plant entered the air in Union, IL.

1392. That in 1977, PCE from the plant entered the air in Union, IL.

1393. That in 1977, TCE from the plant entered the Peredna residence basement.

1394. That in 1977, TCE from the plant entered the Peredna residence crawl spaces.

1395. That in 1977, TCE from the plant entered the Peredna residence home.

1396. That in 1977, TCA from the plant entered the Peredna residence basement.

1397. That in 1977, TCA from the plant entered the Peredna residence crawl spaces.

1398. That in 1977, TCA from the plant entered the Peredna residence home.

1399. That in 1977, DCE from the plant entered the Peredna residence basement.

1400. That in 1977, DCE from the plant entered the Peredna residence crawl spaces.

1401. That in 1977, DCE from the plant entered the Peredna residence home.

1402. That in 1977, DCA from the plant entered the Peredna residence basement.

1403. That in 1977, DCA from the plant entered the Peredna residence crawl spaces.

1404. That in 1977, DCA from the plant entered the Peredna residence home.

1405. That in 1977, PCE from the plant entered the Peredna residence basement.

1406. That in 1977, PCE from the plant entered the Peredna residence crawl spaces.

1407. That in 1977, PCE from the plant entered the Peredna residence home.

1408. In 1978, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

1409. In 1978, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

1410. In 1978, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

1411. In 1978, Techalloy operated the property at 6509 Olson Rd, Union, IL.

1412. In 1978, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

1413. In 1978, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

1414. In 1978, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

1415. In 1978, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

1416. In 1978, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

1417. In 1978, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

1418. In 1978, Techalloy purchased TCE for use at the plant.

1419. In 1978, Techalloy purchased TCA for use at the plant.

1420. In 1978, Techalloy purchased PCE for use at the plant.

1421. In 1978, Techalloy purchased DCE for use at the plant.

1422. In 1978, Techalloy purchased DCA for use at the plant.

1423. In 1978, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

1424.    In 1978, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

1425.    In 1978, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

1426.    In 1978, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

1427.    In 1978, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

1428.    In 1978, Techalloy disposed of TCE used at the plant.

1429.    In 1978, Techalloy was in control of disposing TCA at the plant.

1430.    In 1978, Techalloy was in control of disposing PCE at the plant.

1431.    In 1978, Techalloy was in control of disposing DCE at the plant.

1432.    In 1978, Techalloy was in control of disposing DCA at the plant.

1433.    In 1978, Techalloy designed an outdoor, concrete evaporation pad for TCE

1434.    In 1978, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

1435.    In 1978, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

1436.    In 1978, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

1437.    In 1978, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

1438.    In 1978, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

1439.    That in 1978, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1440.   That in 1978, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1441.   That in 1978, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1442.   That in 1978, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1443.   That in 1978, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1444.   That in 1978, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1445.   That in 1978, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1446.   That in 1978, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1447.   That in 1978, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1448.   That in 1978, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1449.   That in 1978, TCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1450.   That in 1978, TCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1451.   That in 1978, PCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1452.   That in 1978, DCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1453.   That in 1978, DCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1454.   That in 1978, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1455.   That in 1978, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1456.   That in 1978, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1457.   That in 1978, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1458.   That in 1978, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1459.   That in 1978, TCE from the plant from the plant entered the air in Union, IL.

1460.   That in 1978, TCA from the plant from the plant entered the air in Union, IL.

1461.   That in 1978, DCE from the plant from the plant entered the air in Union, IL.

1462.   That in 1978, DCA from the plant from the plant entered the air in Union, IL.

1463.   That in 1978, PCE from the plant from the plant entered the air in Union, IL.

1464.   That in 1978, TCE from the plant from the plant entered the Peredna residence basement.

1465.    That in 1978, TCE from the plant from the plant entered the Peredna residence crawl spaces.

1466.    That in 1978, TCE from the plant from the plant entered the Peredna residence home.

1467.    That in 1978, TCA from the plant from the plant entered the Peredna residence basement.

1468.    That in 1978, TCA from the plant from the plant entered the Peredna residence crawl spaces.

1469.    That in 1978, TCA from the plant from the plant entered the Peredna residence home.

1470.    That in 1978, DCE from the plant from the plant entered the Peredna residence basement.

1471.    That in 1978, DCE from the plant entered the Peredna residence crawl spaces.

1472.    That in 1978, DCE from the plant entered the Peredna residence home.

1473.    That in 1978, DCA from the plant entered the Peredna residence basement.

1474.    That in 1978, DCA from the plant entered the Peredna residence crawl spaces.

1475.    That in 1978, DCA from the plant entered the Peredna residence home.

1476.    That in 1978, PCE from the plant entered the Peredna residence basement.

1477.    That in 1978, PCE from the plant entered the Peredna residence crawl spaces.

1478.    That in 1978, PCE from the plant entered the Peredna residence home.

1479.    In 1979, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

1480.    In 1979, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

1481.   In 1979, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

1482.   In 1979, Techalloy operated the property at 6509 Olson Rd, Union, IL.

1483.   In 1979, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

1484.   In 1979, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

1485.   In 1979, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

1486.   In 1979, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

1487.   In 1979, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

1488.   In 1979, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

1489.   In 1979, Techalloy purchased TCE for use at the plant.

1490.   In 1979, Techalloy purchased TCA for use at the plant.

1491.   In 1979, Techalloy purchased PCE for use at the plant.

1492.   In 1979, Techalloy purchased DCE for use at the plant.

1493.   In 1979, Techalloy purchased DCA for use at the plant.

1494.   In 1979, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

1495.   In 1979, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

1496.   In 1979, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

1497.   In 1979, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

1498.   In 1979, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

1499.   In 1979, Techalloy disposed of TCE used at the plant.

1500.   In 1979, Techalloy was in control of disposing TCA at the plant.

1501.   In 1979, Techalloy was in control of disposing PCE at the plant.

1502.   In 1979, Techalloy was in control of disposing DCE at the plant.

1503.   In 1979, Techalloy was in control of disposing DCA at the plant.

1504.   In 1979, Techalloy designed an outdoor, concrete evaporation pad for TCE

1505.   In 1979, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

1506.   In 1979, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

1507.   In 1979, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

1508.   In 1979, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

1509.   In 1979, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

1510.   That in 1979, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1511.   That in 1979, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1512.   That in 1979, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1513.   That in 1979, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1514.   That in 1979, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1515.   That in 1979, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1516.   That in 1979, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1517.   That in 1979, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1518.   That in 1979, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1519.   That in 1979, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1520.   That in 1979, TCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1521.   That in 1979, TCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1522.   That in 1979, PCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1523.   That in 1979, DCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1524.   That in 1979, DCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1525.   That in 1979, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1526.   That in 1979, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1527.   That in 1979, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1528.   That in 1979, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1529.   That in 1979, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1530.   That in 1979, TCE from the plant entered the air in Union, IL.

1531.   That in 1979, TCA from the plant entered the air in Union, IL.

1532.   That in 1979, DCE from the plant entered the air in Union, IL.

1533.   That in 1979, DCA from the plant entered the air in Union, IL.

1534.   That in 1979, PCE from the plant entered the air in Union, IL.

1535.   That in 1979, TCE from the plant entered the Peredna residence basement.

1536.   That in 1979, TCE from the plant entered the Peredna residence crawl spaces.

1537.   That in 1979, TCE from the plant entered the Peredna residence home.

1538.   That in 1979, TCA from the plant entered the Peredna residence basement.

1539.   That in 1979, TCA from the plant entered the Peredna residence crawl spaces.

1540.   That in 1979, TCA from the plant entered the Peredna residence home.

1541. That in 1979, DCE from the plant entered the Peredna residence basement.

1542. That in 1979, DCE from the plant entered the Peredna residence crawl spaces.

1543. That in 1979, DCE from the plant entered the Peredna residence home.

1544. That in 1979, DCA from the plant entered the Peredna residence basement.

1545. That in 1979, DCA from the plant entered the Peredna residence crawl spaces.

1546. That in 1979, DCA from the plant entered the Peredna residence home.

1547. That in 1979, PCE from the plant entered the Peredna residence basement.

1548. That in 1979, PCE from the plant entered the Peredna residence crawl spaces.

1549. That in 1979, PCE from the plant entered the Peredna residence home.

1550. In 1980, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

1551. In 1980, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

1552. In 1980, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

1553. In 1980, Techalloy operated the property at 6509 Olson Rd, Union, IL.

1554. In 1980, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

1555. In 1980, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

1556. In 1980, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

1557. In 1980, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

1558. In 1980, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

1559.   In 1980, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

1560.   In 1980, Techalloy purchased TCE for use at the plant.

1561.   In 1980, Techalloy purchased TCA for use at the plant.

1562.   In 1980, Techalloy purchased PCE for use at the plant.

1563.   In 1980, Techalloy purchased DCE for use at the plant.

1564.   In 1980, Techalloy purchased DCA for use at the plant.

1565.   In 1980, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

1566.   In 1980, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

1567.   In 1980, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

1568.   In 1980, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

1569.   In 1980, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

1570.   In 1980, Techalloy disposed of TCE used at the plant.

1571.   In 1980, Techalloy was in control of disposing TCA at the plant.

1572.   In 1980, Techalloy was in control of disposing PCE at the plant.

1573.   In 1980, Techalloy was in control of disposing DCE at the plant.

1574.   In 1980, Techalloy was in control of disposing DCA at the plant.

1575.   In 1980, Techalloy designed an outdoor, concrete evaporation pad for TCE

1576.   In 1980, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

1577.   In 1980, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

1578. In 1980, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

1579. In 1980, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

1580. In 1980, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

1581. That in 1980, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1582. That in 1980, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1583. That in 1980, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1584. That in 1980, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1585. That in 1980, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1586. That in 1980, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1587. That in 1980, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1588. That in 1980, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1589.   That in 1980, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1590.   That in 1980, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1591.   That in 1980, TCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1592.   That in 1980, TCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1593.   That in 1980, PCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1594.   That in 1980, DCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1595.   That in 1980, DCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1596.   That in 1980, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1597.   That in 1980, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1598.   That in 1980, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1599.   That in 1980, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1600.   That in 1980, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1601.   That in 1980, TCE from the plant entered the air in Union, IL.

1602.   That in 1980, TCA from the plant entered the air in Union, IL.

1603.   That in 1980, DCE from the plant entered the air in Union, IL.

1604.   That in 1980, DCA from the plant entered the air in Union, IL.

1605.   That in 1980, PCE from the plant entered the air in Union, IL.

1606.   That in 1980, TCE from the plant entered the Peredna residence basement.

1607.   That in 1980, TCE from the plant entered the Peredna residence crawl spaces.

1608.   That in 1980, TCE from the plant entered the Peredna residence home.

1609.   That in 1980, TCA from the plant entered the Peredna residence basement.

1610.   That in 1980, TCA from the plant entered the Peredna residence crawl spaces.

1611.   That in 1980, TCA from the plant entered the Peredna residence home.

1612.   That in 1980, DCE from the plant entered the Peredna residence basement.

1613.   That in 1980, DCE from the plant entered the Peredna residence crawl spaces.

1614.   That in 1980, DCE from the plant entered the Peredna residence home.

1615.   That in 1980, DCA from the plant entered the Peredna residence basement.

1616.   That in 1980, DCA from the plant entered the Peredna residence crawl spaces.

1617.   That in 1980, DCA from the plant entered the Peredna residence home.

1618.   That in 1980, PCE from the plant entered the Peredna residence basement.

1619.   That in 1980, PCE from the plant entered the Peredna residence crawl spaces.

1620.   That in 1980, PCE from the plant entered the Peredna residence home.

1621.   In 1981, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

1622.   In 1981, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

1623.   In 1981, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

1624.   In 1981, Techalloy operated the property at 6509 Olson Rd, Union, IL.

1625.   In 1981, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

1626.   In 1981, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

1627.   In 1981, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

1628.   In 1981, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

1629.   In 1981, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

1630.   In 1981, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

1631.   In 1981, Techalloy purchased TCE for use at the plant.

1632.   In 1981, Techalloy purchased TCA for use at the plant.

1633.   In 1981, Techalloy purchased PCE for use at the plant.

1634.   In 1981, Techalloy purchased DCE for use at the plant.

1635.   In 1981, Techalloy purchased DCA for use at the plant.

1636.   In 1981, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

1637.   In 1981, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

1638.   In 1981, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

1639.   In 1981, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

1640.   In 1981, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

1641.   In 1981, Techalloy disposed of TCE used at the plant.

1642.   In 1981, Techalloy was in control of disposing TCA at the plant.

1643.   In 1981, Techalloy was in control of disposing PCE at the plant.

1644.   In 1981, Techalloy was in control of disposing DCE at the plant.

1645.   In 1981, Techalloy was in control of disposing DCA at the plant.

1646.   In 1981, Techalloy designed an outdoor, concrete evaporation pad for TCE

1647.   In 1981, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

1648.   In 1981, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

1649.   In 1981, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

1650.   In 1981, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

1651.   In 1981, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

1652.   That in 1981, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1653.   That in 1981, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1654.   That in 1981, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1655.   That in 1981, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1656.   That in 1981, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1657.   That in 1981, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1658.   That in 1981, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1659.   That in 1981, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1660.   That in 1981, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1661.   That in 1981, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1662.   That in 1981, TCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1663.   That in 1981, TCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1664. That in 1981, PCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1665. That in 1981, DCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1666. That in 1981, DCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1667. That in 1981, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1668. That in 1981, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1669. That in 1981, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1670. That in 1981, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1671. That in 1981, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1672. That in 1981, TCE from the plant entered the air in Union, IL.

1673. That in 1981, TCA from the plant entered the air in Union, IL.

1674. That in 1981, DCE from the plant entered the air in Union, IL.

1675. That in 1981, DCA from the plant entered the air in Union, IL.

1676. That in 1981, PCE from the plant entered the air in Union, IL.

1677. That in 1981, TCE from the plant entered the Peredna residence basement.

1678. That in 1981, TCE from the plant entered the Peredna residence crawl spaces.

1679. That in 1981, TCE from the plant entered the Peredna residence home.

1680. That in 1981, TCA from the plant entered the Peredna residence basement.

1681. That in 1981, TCA from the plant entered the Peredna residence crawl spaces.

1682. That in 1981, TCA from the plant entered the Peredna residence home.

1683. That in 1981, DCE from the plant entered the Peredna residence basement.

1684. That in 1981, DCE from the plant entered the Peredna residence crawl spaces.

1685. That in 1981, DCE from the plant entered the Peredna residence home.

1686. That in 1981, DCA from the plant entered the Peredna residence basement.

1687. That in 1981, DCA from the plant entered the Peredna residence crawl spaces.

1688. That in 1981, DCA from the plant entered the Peredna residence home.

1689. That in 1981, PCE from the plant entered the Peredna residence basement.

1690. That in 1981, PCE from the plant entered the Peredna residence crawl spaces.

1691. That in 1981, PCE from the plant entered the Peredna residence home.

1692. In 1982, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

1693. In 1982, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

1694. In 1982, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

1695. In 1982, Techalloy operated the property at 6509 Olson Rd, Union, IL.

1696. In 1982, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

1697. In 1982, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

1698. In 1982, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

1699.   In 1982, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

1700.   In 1982, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

1701.   In 1982, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

1702.   In 1982, Techalloy purchased TCE for use at the plant.

1703.   In 1982, Techalloy purchased TCA for use at the plant.

1704.   In 1982, Techalloy purchased PCE for use at the plant.

1705.   In 1982, Techalloy purchased DCE for use at the plant.

1706.   In 1982, Techalloy purchased DCA for use at the plant.

1707.   In 1982, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

1708.   In 1982, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

1709.   In 1982, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

1710.   In 1982, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

1711.   In 1982, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

1712.   In 1982, Techalloy disposed of TCE used at the plant.

1713.   In 1982, Techalloy was in control of disposing TCA at the plant.

1714.   In 1982, Techalloy was in control of disposing PCE at the plant.

1715.   In 1982, Techalloy was in control of disposing DCE at the plant.

1716.   In 1982, Techalloy was in control of disposing DCA at the plant.

1717.   In 1982, Techalloy designed an outdoor, concrete evaporation pad for TCE

1718.   In 1982, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

1719.   In 1982, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

1720.   In 1982, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

1721.   In 1982, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

1722.   In 1982, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

1723.   That in 1982, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1724.   That in 1982, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1725.   That in 1982, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1726.   That in 1982, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1727.   That in 1982, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1728.   That in 1982, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1729.   That in 1982, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1730.   That in 1982, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1731.   That in 1982, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1732.   That in 1982, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1733.   That in 1982, TCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1734.   That in 1982, TCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1735.   That in 1982, PCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1736.   That in 1982, DCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1737.   That in 1982, DCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1738.   That in 1982, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1739.   That in 1982, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1740. That in 1982, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1741. That in 1982, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1742. That in 1982, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1743. That in 1982, TCE from the plant entered the air in Union, IL.

1744. That in 1982, TCA from the plant entered the air in Union, IL.

1745. That in 1982, DCE from the plant entered the air in Union, IL.

1746. That in 1982, DCA from the plant entered the air in Union, IL.

1747. That in 1982, PCE from the plant entered the air in Union, IL.

1748. That in 1982, TCE from the plant entered the Peredna residence basement.

1749. That in 1982, TCE from the plant entered the Peredna residence crawl spaces.

1750. That in 1982, TCE from the plant entered the Peredna residence home.

1751. That in 1982, TCA from the plant entered the Peredna residence basement.

1752. That in 1982, TCA from the plant entered the Peredna residence crawl spaces.

1753. That in 1982, TCA from the plant entered the Peredna residence home.

1754. That in 1982, DCE from the plant entered the Peredna residence basement.

1755. That in 1982, DCE from the plant entered the Peredna residence crawl spaces.

1756. That in 1982, DCE from the plant entered the Peredna residence home.

1757. That in 1982, DCA from the plant entered the Peredna residence basement.

1758. That in 1982, DCA from the plant entered the Peredna residence crawl spaces.

1759. That in 1982, DCA from the plant entered the Peredna residence home.

1760. That in 1982, PCE from the plant entered the Peredna residence basement.

1761. That in 1982, PCE from the plant entered the Peredna residence crawl spaces.

1762. That in 1982, PCE from the plant entered the Peredna residence home.

1763. In 1983, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

1764. In 1983, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

1765. In 1983, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

1766. In 1983, Techalloy operated the property at 6509 Olson Rd, Union, IL.

1767. In 1983, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

1768. In 1983, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

1769. In 1983, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

1770. In 1983, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

1771. In 1983, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

1772. In 1983, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

1773. In 1983, Techalloy purchased TCE for use at the plant.

1774. In 1983, Techalloy purchased TCA for use at the plant.

1775. In 1983, Techalloy purchased PCE for use at the plant.

1776. In 1983, Techalloy purchased DCE for use at the plant.

1777. In 1983, Techalloy purchased DCA for use at the plant.

1778. In 1983, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

1779. In 1983, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

1780. In 1983, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

1781. In 1983, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

1782. In 1983, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

1783. In 1983, Techalloy disposed of TCE used at the plant.

1784. In 1983, Techalloy was in control of disposing TCA at the plant.

1785. In 1983, Techalloy was in control of disposing PCE at the plant.

1786. In 1983, Techalloy was in control of disposing DCE at the plant.

1787. In 1983, Techalloy was in control of disposing DCA at the plant.

1788. In 1983, Techalloy designed an outdoor, concrete evaporation pad for TCE

1789. In 1983, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

1790. In 1983, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

1791. In 1983, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

1792. In 1983, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

1793. In 1983, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

1794.   That in 1983, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1795.   That in 1983, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1796.   That in 1983, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1797.   That in 1983, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1798.   That in 1983, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1799.   That in 1983, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1800.   That in 1983, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1801.   That in 1983, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1802.   That in 1983, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1803.   That in 1983, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1804.   That in 1983, TCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1805.   That in 1983, TCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1806.   That in 1983, PCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1807.   That in 1983, DCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1808.   That in 1983, DCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1809.   That in 1983, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1810.   That in 1983, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1811.   That in 1983, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1812.   That in 1983, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1813.   That in 1983, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1814.   That in 1983, TCE from the plant entered the air in Union, IL.

1815.   That in 1983, TCA from the plant entered the air in Union, IL.

1816.   That in 1983, DCE from the plant entered the air in Union, IL.

1817.   That in 1983, DCA from the plant entered the air in Union, IL.

1818.   That in 1983, PCE from the plant entered the air in Union, IL.

1819.   That in 1983, TCE from the plant entered the Peredna residence basement.

1820.   That in 1983, TCE from the plant entered the Peredna residence crawl spaces.

1821.   That in 1983, TCE from the plant entered the Peredna residence home.

1822.   That in 1983, TCA from the plant entered the Peredna residence basement.

1823.   That in 1983, TCA from the plant entered the Peredna residence crawl spaces.

1824.   That in 1983, TCA from the plant entered the Peredna residence home.

1825.   That in 1983, DCE from the plant entered the Peredna residence basement.

1826.   That in 1983, DCE from the plant entered the Peredna residence crawl spaces.

1827.   That in 1983, DCE from the plant entered the Peredna residence home.

1828.   That in 1983, DCA from the plant entered the Peredna residence basement.

1829.   That in 1983, DCA from the plant entered the Peredna residence crawl spaces.

1830.   That in 1983, DCA from the plant entered the Peredna residence home.

1831.   That in 1983, PCE from the plant entered the Peredna residence basement.

1832.   That in 1983, PCE from the plant entered the Peredna residence crawl spaces.

1833.   That in 1983, PCE from the plant entered the Peredna residence home.

1834.   In 1984, Techalloy had an ownership interest in the property located at 6509 Olson Road, Union Illinois.

1835.   In 1984, Techalloy maintained the property at 6509 Olson Rd, Union, IL.

1836.   In 1984, Techalloy controlled the property located at 6509 Olson Rd, Union, IL.

1837.   In 1984, Techalloy operated the property at 6509 Olson Rd, Union, IL.

1838.   In 1984, Techalloy inspected the property at 6509 Olson Rd, Union, IL.

1839.   In 1984, Techalloy had an ownership interest in the property doing business at 6509 Olson Rd, Union, IL.

1840.   In 1984, Techalloy maintained the factory doing business at 6509 Olson Rd, Union, IL.

1841.   In 1984, Techalloy controlled the factory doing business at 6509 Olson Rd, Union, IL.

1842.   In 1984, Techalloy operated the factory doing business at 6509 Olson Rd, Union, IL.

1843.   In 1984, Techalloy inspected the factory doing business at 6509 Olson Rd, Union, IL.

1844.   In 1984, Techalloy purchased TCE for use at the plant.

1845.   In 1984, Techalloy purchased TCA for use at the plant.

1846.   In 1984, Techalloy purchased PCE for use at the plant.

1847.   In 1984, Techalloy purchased DCE for use at the plant.

1848.   In 1984, Techalloy purchased DCA for use at the plant.

1849.   In 1984, Techalloy used TCE in its business operations at 6509 Olson Rd, Union, IL.

1850.   In 1984, Techalloy used TCA in its factory at 6509 Olson Rd, Union, IL.

1851.   In 1984, Techalloy used PCE in its factory at 6509 Olson Rd, Union, IL.

1852.   In 1984, Techalloy used DCE in its factory at 6509 Olson Rd, Union, IL.

1853.   In 1984, Techalloy used DCA in its factory at 6509 Olson Rd, Union, IL.

1854.   In 1984, Techalloy disposed of TCE used at the plant.

1855.   In 1984, Techalloy was in control of disposing TCA at the plant.

1856.   In 1984, Techalloy was in control of disposing PCE at the plant.

1857.   In 1984, Techalloy was in control of disposing DCE at the plant.

1858. In 1984, Techalloy was in control of disposing DCA at the plant.

1859. In 1984, Techalloy designed an outdoor, concrete evaporation pad for TCE

1860. In 1984, Techalloy manufactured, built, or otherwise made an outdoor concrete evaporation pad for TCE

1861. In 1984, Techalloy maintained the outdoor concrete evaporation pad where TCE was used to clean wire.

1862. In 1984, Techalloy maintained the outdoor concrete evaporation pad where PCE was used to clean wire.

1863. In 1984, Techalloy operated the outdoor concrete evaporation pad where TCE was used to clean wire.

1864. In 1984, Techalloy operated the outdoor concrete evaporation pad where PCE was used to clean wire.

1865. That in 1984, TCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1866. That in 1984, TCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1867. That in 1984, TCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1868. That in 1984, TCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1869. That in 1984, PCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1870.   That in 1984, PCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1871.   That in 1984, DCE from the plant entered the groundwater of Union, IL, and neighboring public wells.

1872.   That in 1984, DCE from the plant entered the groundwater of Union, IL, and neighboring private wells.

1873.   That in 1984, DCA from the plant entered the groundwater of Union, IL, and neighboring public wells.

1874.   That in 1984, DCA from the plant entered the groundwater of Union, IL, and neighboring private wells.

1875.   That in 1984, TCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1876.   That in 1984, TCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1877.   That in 1984, PCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1878.   That in 1984, DCE from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1879.   That in 1984, DCA from the plant entered the Peredna residence located at 6408 N. Wayne St, Union, IL.

1880.   That in 1984, TCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1881. That in 1984, TCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1882. That in 1984, DCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1883. That in 1984, DCA from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1884. That in 1984, PCE from the plant entered the groundwater of Evergreen Middle School, in Union, IL.

1885. That in 1984, TCE from the plant entered the air in Union, IL.

1886. That in 1984, TCA from the plant entered the air in Union, IL.

1887. That in 1984, DCE from the plant entered the air in Union, IL.

1888. That in 1984, DCA from the plant entered the air in Union, IL.

1889. That in 1984, PCE from the plant entered the air in Union, IL.

1890. That in 1984, TCE from the plant entered the Peredna residence basement.

1891. That in 1984, TCE from the plant entered the Peredna residence crawl spaces.

1892. That in 1984, TCE from the plant entered the Peredna residence home.

1893. That in 1984, TCA from the plant entered the Peredna residence basement.

1894. That in 1984, TCA from the plant entered the Peredna residence crawl spaces.

1895. That in 1984, TCA from the plant entered the Peredna residence home.

1896. That in 1984, DCE from the plant entered the Peredna residence basement.

1897. That in 1984, DCE from the plant entered the Peredna residence crawl spaces.

1898. That in 1984, DCE from the plant entered the Peredna residence home.

1899. That in 1984, DCA from the plant entered the Peredna residence basement.

1900.   That in 1984, DCA from the plant entered the Peredna residence crawl spaces.

1901.   That in 1984, DCA from the plant entered the Peredna residence home.

1902.   That in 1984, PCE from the plant entered the Peredna residence basement.

1903.   That in 1984, PCE from the plant entered the Peredna residence crawl spaces.

1904.   That in 1984, PCE from the plant entered the Peredna residence home.

1905.   That from 1984 to the present, Techalloy and Central Wire have continuously operated the factory at 6509 Olson Rd, Union, IL.

1906.    That from 1984 to the present, Techalloy and Central Wire have continuously operated the facility at 6509 Olson Rd, Union, IL.

## COUNT I – NEGLIGENCE
### *Linda Peredna v. Techalloy, Inc.*

1907.    Linda Peredna re-alleges paragraphs 1 through 25, and 107 and 108 herein.

1908.   Linda Peredna pleads hypothetically and in the alternative.

1909.   That in 1960, TCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1910.   That in 1960, TCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1911.   That in 1960, PCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1912.   That in 1960, PCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1913.   That in 1960, DCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1914.   That in 1960, DCE accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1915.   That in 1960, DCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1916.   That in 1960, DCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1917.   That in 1960, TCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1918.   That in 1960, TCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1919.   That in 1961, TCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1920.   That in 1961, TCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1921.   That in 1961, PCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1922.   That in 1961, PCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1923.   That in 1961, DCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1924.   That in 1961, DCE accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1925.   That in 1961, DCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1926.   That in 1961, DCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1927.   That in 1961, TCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1928.   That in 1961, TCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1929.   That in 1962, TCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1930.   That in 1962, TCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1931.   That in 1962, PCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1932.   That in 1962, PCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1933.   That in 1962, DCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1934.   That in 1962, DCE accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1935.   That in 1962, DCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1936. That in 1962, DCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1937. That in 1962, TCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1938. That in 1962, TCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1939. That in 1963, TCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1940. That in 1963, TCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1941. That in 1963, PCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1942. That in 1963, PCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1943. That in 1963, DCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1944. That in 1963, DCE accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1945. That in 1963, DCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1946. That in 1963, DCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1947. That in 1963, TCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1948. That in 1963, TCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1949. That in 1964, TCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1950. That in 1964, TCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1951. That in 1964, PCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1952. That in 1964, PCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1953. That in 1964, DCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1954. That in 1964, DCE accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1955. That in 1964, DCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1956. That in 1964, DCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1957. That in 1964, TCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1958.   That in 1964, TCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1959.   That in 1965, TCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1960.   That in 1965, TCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1961.   That in 1965, PCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1962.   That in 1965, PCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1963.   That in 1965, DCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1964.   That in 1965, DCE accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1965.   That in 1965, DCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1966.   That in 1965, DCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1967.   That in 1965, TCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1968.   That in 1965, TCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1969.   That in 1966, TCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1970.   That in 1966, TCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1971.   That in 1966, PCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1972.   That in 1966, PCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1973.   That in 1966, DCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1974.   That in 1966, DCE accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1975.   That in 1966, DCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1976.   That in 1966, DCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1977.   That in 1966, TCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1978.   That in 1966, TCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1979.   That in 1967, TCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1980. That in 1967, TCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1981. That in 1967, PCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1982. That in 1967, PCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1983. That in 1967, DCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1984. That in 1967, DCE accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1985. That in 1967, DCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1986. That in 1967, DCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1987. That in 1967, TCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1988. That in 1967, TCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1989. That in 1968, TCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1990. That in 1968, TCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1991.   That in 1968, PCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1992.   That in 1968, PCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1993.   That in 1968, DCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

1994.   That in 1968, DCE accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1995.   That in 1968, DCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1996.   That in 1968, DCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1997.   That in 1968, TCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1998.   That in 1968, TCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

1999.   That in 1969, TCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2000.   That in 1969, TCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2001.   That in 1969, PCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2002. That in 1969, PCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2003. That in 1969, DCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2004. That in 1969, DCE accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2005. That in 1969, DCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2006. That in 1969, DCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2007. That in 1969, TCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2008. That in 1969, TCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2009. That in 1970, TCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2010. That in 1970, TCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2011. That in 1970, PCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2012. That in 1970, PCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2013. That in 1970, DCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2014. That in 1970, DCE accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2015. That in 1970, DCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2016. That in 1970, DCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2017. That in 1970, TCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2018. That in 1970, TCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2019. That in 1971, TCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2020. That in 1971, TCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2021. That in 1971, PCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2022. That in 1971, PCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2023. That in 1971, DCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2024.   That in 1971, DCE accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2025.   That in 1971, DCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2026.   That in 1971, DCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2027.   That in 1971, TCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2028.   That in 1971, TCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2029.   That in 1972, TCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2030.   That in 1972, TCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2031.   That in 1972, PCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2032.   That in 1972, PCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2033.   That in 1972, DCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2034.   That in 1972, DCE accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2035.   That in 1972, DCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2036.   That in 1972, DCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2037.   That in 1972, TCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2038.   That in 1972, TCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2039.   That in 1973, TCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2040.   That in 1973, TCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2041.   That in 1973, PCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2042.   That in 1973, PCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2043.   That in 1973, DCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2044.   That in 1973, DCE accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2045.   That in 1973, DCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2046. That in 1973, DCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2047. That in 1973, TCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2048. That in 1973, TCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2049. That in 1974, TCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2050. That in 1974, TCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2051. That in 1974, PCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2052. That in 1974, PCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2053. That in 1974, DCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2054. That in 1974, DCE accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2055. That in 1974, DCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2056. That in 1974, DCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2057.   That in 1974, TCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2058.   That in 1974, TCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2059.   That in 1975, TCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2060.   That in 1975, TCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2061.   That in 1975, PCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2062.   That in 1975, PCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2063.   That in 1975, DCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2064.   That in 1975, DCE accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2065.   That in 1975, DCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2066.   That in 1975, DCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2067.   That in 1975, TCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2068.   That in 1975, TCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL

2069.   That in 1976, TCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2070.   That in 1976, TCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2071.   That in 1976, PCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2072.   That in 1976, PCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2073.   That in 1976, DCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2074.   That in 1976, DCE accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2075.   That in 1976, DCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2076.   That in 1976, DCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2077.   That in 1976, TCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2078.   That in 1976, TCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL

2079.   That in 1977, TCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2080.   That in 1977, TCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2081.   That in 1977, PCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2082.   That in 1977, PCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2083.   That in 1977, DCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2084.   That in 1977, DCE accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2085.   That in 1977, DCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2086.   That in 1977, DCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2087.   That in 1977, TCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2088.   That in 1977, TCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2089.   That in 1978, TCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2090. That in 1978, TCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2091. That in 1978, PCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2092. That in 1978, PCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2093. That in 1978, DCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2094. That in 1978, DCE accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2095. That in 1978, DCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2096. That in 1978, DCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2097. That in 1978, TCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2098. That in 1978, TCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2099. That in 1979, TCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2100. That in 1979, TCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2101.   That in 1979, PCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2102.   That in 1979, PCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2103.   That in 1979, DCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2104.   That in 1979, DCE accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2105.   That in 1979, DCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2106.   That in 1979, DCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2107.   That in 1979, TCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2108.   That in 1979, TCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2109.   That in 1980, TCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2110.   That in 1980, TCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2111.   That in 1980, PCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2112.   That in 1980, PCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2113.   That in 1980, DCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2114.   That in 1980, DCE accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2115.   That in 1980, DCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2116.   That in 1980, DCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2117.   That in 1980, TCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2118.   That in 1980, TCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2119.   That in 1981, TCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2120.   That in 1981, TCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2121.   That in 1981, PCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2122.   That in 1981, PCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2123.   That in 1981, DCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2124.   That in 1981, DCE accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2125.   That in 1981, DCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2126.   That in 1981, DCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2127.   That in 1981, TCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2128.   That in 1981, TCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2129.   That in 1982, TCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2130.   That in 1982, TCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2131.   That in 1982, PCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2132.   That in 1982, PCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2133.   That in 1982, DCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2134.   That in 1982, DCE accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2135.   That in 1982, DCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2136.   That in 1982, DCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2137.   That in 1982, TCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2138.   That in 1982, TCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2139.   That in 1983, TCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2140.   That in 1983, TCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2141.   That in 1983, PCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2142.   That in 1983, PCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2143.   That in 1983, DCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2144.   That in 1983, DCE accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2145.   That in 1983, DCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2146.   That in 1983, DCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2147.   That in 1983, TCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2148.   That in 1983, TCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2149.   That in 1984, TCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2150.   That in 1984, TCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2151.   That in 1984, PCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2152.   That in 1984, PCE accidentally entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2153.   That in 1984, DCE suddenly entered the underground water supply from the plant at 6509 Olson Rd, Union, IL.

2154.   That in 1984, DCE accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2155.   That in 1984, DCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2156. That in 1984, DCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2157. That in 1984, TCA suddenly entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2158. That in 1984, TCA accidentally entered the underground water supply from the plant located at 6509 Olson Rd, Union, IL.

2159. At all times relevant, Defendant had a duty to use reasonable care of its ownership and operation of its facility so as not to cause injury to others, including Linda Peredna.

2160. The Defendant committed, by and through its agents, one or more of the following acts and/or omissions:

    a. Improperly used TCE, TCA, PCE, DCE, and/or DCA in its' operations without taking proper precautions to prevent the discharge from the plant into the groundwater;

    b. Failed to properly isolate TCE, TCA, PCE, DCE, and DCA from entry into the groundwater.

    c. Failed to properly protect Ms. Peredna and others after TCE, TCA, PCE, DCE, and DCA from the plant entered the groundwater.

2161. As a direct and proximate cause of one or more of the Defendant's aforesaid acts and/or omissions, hazardous chemicals were improperly released into the air, soil, and water that Linda Peredna was exposed to while living in Union.

2162. As a further direct and proximate cause of one or more of the Defendant's negligent acts and/or omissions, the Defendants' negligent acts and omissions, Linda Peredna was caused to develop Autoimmune disease and thyroid cancer.

2163.   That as a further direct and proximate result of one or more of the Defendant's acts and/or omissions, Linda Peredna was caused to incur an increased chance in developing Autoimmune disease and thyroid cancer.

2164.   That as a further direct and proximate cause of one or more of Defendant's acts and/or omissions, Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

### COUNT II – NEGLIGENCE
### *Linda Peredna v. Techalloy, Inc.*

2165.   Plaintiff Linda Peredna re-alleges and incorporates paragraphs 1 through 1906.

2166.   That Defendant, Techalloy, by and through its principals and/or agents, knew or should have known that TCE was toxic.

2167.   That Defendant, Techalloy, by and through its principals and/or agents, knew or should have known that TCE was carcinogenic.

2168.   That Defendant, Techalloy, by and through its principals and/or agents, knew or should have known that TCE was not safe for humans.

2169.   That Defendant, Techalloy, by and through its principals and/or agents, knew or should have known that TCE could leach into the ground water, if not properly contained.

2170.    That Defendant, Techalloy, by and through its principals and/or agents, knew or should have known that TCE could leach into the ground water, if not properly disposed of.

2171.   That Defendant, Techalloy, by and through its principals and/or agents, knew or should have known that TCE could pose a public nuisance if allowed into the groundwater

2172.   That Defendant, Techalloy, by and through its principals and/or agents, knew or should have known that TCE leaching into the ground water would contaminate public drinking water.

2173.   That Defendant, Techalloy, by and through its principals and/or agents, knew or should have known that TCE leaching into the ground water could enter into peoples' basements, crawl spaces, and living space.

2174.   That Defendant, Techalloy, by and through its principals and/or agents, knew or should have known that TCE leaching into the ground water would be expensive to remove from the ground water.

2175.   That Defendant, Techalloy, by and through its principals and/or agents, knew or should have known that TCE leaching into the ground water would be expensive to properly remediate.

2176.   That prior to 2005, Techalloy, by and through its principals and/or agents, knew or should have known that TCE had entered the drinking water of the Village of Union.

2177.   That prior to 2005, Techalloy, by and through its principals and/or agents, knew or should have known that TCE had entered the Peredna residence drinking water.

2178.   That prior to 2005, Techalloy, by and through its principals and/or agents, knew or should have known that TCE had entered the Peredna residence basement.

2179.   That prior to 2005, Techalloy, by and through its principals and/or agents, knew or should have known that TCE had entered the Peredna residence bathing water.

2180.   That prior to 2005, Techalloy, by and through its principals and/or agents, knew or should have known that TCE had entered the Peredna residence living areas.

2181.   That prior to 2005, Techalloy, by and through its principals and/or agents, knew or should have known that TCE had entered the Peredna residence basement.

2182.   That prior to 2005, Techalloy, by and through its principals and/or agents, knew or should have known that the Perednas needed to be told that their property had been contaminated with TCE.

2183.   That prior to 2005, Techalloy, by and through its principals and/or agents, knew or should have known that the Perednas needed to be told that TCE could affect Mrs. Peredna's pregnancy with Dana.

2184.   That prior to 2005, Techalloy, by and through its principals and/or agents, knew or should have known that the Perednas needed to be told that TCE could affect the health of all children living in the Peredna home.

2185.   That prior to 2005, Techalloy, by and through its principals and/or agents, knew or should have known that the Village of Union and its citizens needed to be told that all individuals exposed to TCE from the ground, air, and water were at a risk of developing cancer.

2186.   That prior to 2005, Techalloy did not advise the Village of Union and its citizens that the TCE that it had allowed into their groundwater could cause cancer.

2187.   That prior to 2005, Techalloy did not advise the Village of Union and its citizens that the TCE that it had allowed into their basements and living spaces could cause cancer.

2188.   That prior to 2005, Techalloy did not advise the Village of Union and its citizens that the TCE that it had allowed into the air could cause cancer.

2189. That prior to 2005, Techalloy did not advise the Village of Union and its citizens that the TCE that it had allowed into their public schools could cause cancer

2190. That prior to 2005, TCE that entered into the groundwater in the Village of Union, including the Peredna residence, exceeded State of Illinois levels regarded as unsafe for humans.

2191. That prior to 2005, Techalloy did not remove all of the TCE from public ground water including the Perednas

2192. That prior to 2005, Linda Peredna was exposed to TCE introduced into the groundwater by Techalloy.

2193. That prior to 2005, Linda Peredna was exposed to TCE in the areas surrounding the Techalloy premises emitted by Techalloy.

2194. That prior to 2005, Linda Peredna was exposed to TCE in her home that was created by Techalloy's removal of TCE practices.

2195. That Linda Peredna contracted Stage IV Mantle Cell Lymphoma, a type of Autoimmune disease and thyroid cancer.

2196. That Techalloy had a duty to exercise ordinary care for those living near the plant breathing, drinking or otherwise ingesting air and water containing TCE and other contaminants from the factory.

2197. The Defendant committed one or more of the following acts and/or omissions:

   a. Permitted substances, including TCE and PCE, to be released onto the soil of the Defendant's facilities and into the groundwater.

   b. Failed to establish a procedure for the use of VOCs, including but not limited to TCE and PCE at the plant that did not result in the release of TCE and PCE into the environment;

   c. Failed to test the Peredna home for VOCs, including TCE contamination;

   d. Failed to alert Linda Peredna to the possibility of TCE exposure;

e. Failed to alert Linda Peredna of the cancer risk TCE exposure can cause;

f. Failed to advise the Perednas that their children were at risk for developing cancer as a result of the toxic plume of VOCs including TCE that they introduced;

g. Failed to purchase the Peredna's property;

h. Failed to educate the Perednas about the risks of VOC's and TCE that they exposed the Perednas to;

i. Failed to timely and properly test surrounding air, soil, and water, which ultimately led to Ms. Peredna's TCE exposure;

j. Failed to safely and properly operate, maintain, and dispose of dangerous chemicals, including TCE and PCE.

k. Failed to provide appropriate safe-guards and security measures to prevent, monitor and/ or remedy the release of harmful VOCs from being released into the environment;

l. Failed to properly dispose of VOCs, including TCE, which permitted the toxins to enter the environment and migrate to the Peredna residence;

m. Carelessly and improperly stored TCE and other VOCs without the proper safe-guards required to ensure the prevention of said chemicals from entering into the environment, whether that was discharge, spillage, release, or escape;

n. Failed to warn Union residents, including Linda Peredna, of the life-threatening conditions created by the Defendant's releases VOCs, including TCE-containing substances, into the surrounding air, soil, water, and general environment;

o. Failed to properly contain and clean up the VOCs which were released by the Defendant into the environment;

p. Failed to implement institutional controls consisting of a facility deed restriction and a county restriction on water well drilling permits following the release of TCE and other VOCs;

q. Failed to properly and timely initiate a private well sampling program following the release of TCE into the groundwater;

r. Failed to properly and timely implement an air sparge/soil vapor extraction system to treat on-site soils and groundwater contaminated with VOCs following the release of TCE into the groundwater;

s. Failed to timely remediate the plume of VOCs, including TCE; and/or

t.  Placed the profit of their owners over the safety of people living near their factories, including the Perednas.

2198.  As a direct and proximate cause of the Defendant's foregoing negligent acts and omissions, chemicals were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Peredna residence.

2199.  As a direct and proximate cause of the Defendants' negligent acts and omissions, Linda Peredna's body was exposed to TCE, which were a cause of her development of Autoimmune disease and thyroid cancer.

2200.  That as a further direct and proximate result of the aforesaid injuries, Plaintiff Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendants, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT III – PREMISES LIABILITY
### Linda Peredna v. Techalloy, Inc

2201.  Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2202.  At all times stated herein, it was the duty of the Defendant, Techalloy, as owner, occupier and/or manager of the land located at 6509 Olson Road in Union, Illinois, by and through its agents, employees and/or servants, to exercise ordinary care so that the premises were in a

reasonably safe condition so as not to cause injury to individuals, including Plaintiff Linda Peredna.

2203.   Defendant utilized volatile organic compounds (VOCs) which migrated beyond their factories into the environment and onto Plaintiff's property.

2204.   At all times relevant, Plaintiff Linda Peredna, resided in Union, Illinois.

2205.   On and before 1960, Defendant, Techalloy owned the land at 6509 Olson Road in Union, Illinois.

2206.   On and before 1960, Defendant, Techalloy owned the land at 6509 Olson Road in Union, Illinois from Defendant, Techalloy.

2207.   On and before, 1960, and at all times relevant herein, Techalloy knew or should have been aware of the dangerous condition of the land its disposal of TCE and other VOCs created.

2208.   On and before 1960, and at all times relevant herein, Techalloy Techalloy knew or should have been aware that the facility on the land was emitting TCE.

2209.   On and before 1960, and at all times relevant herein, Techalloy was the facility on the land was emitting PCE.

2210.   On and before 1960, and at all times relevant herein, Techalloy maintained the land at 6509 Olson Road in Union, Illinois.

2211.   On and before 1960, and at all times relevant herein, Techalloy inspected the land at 6509 Olson Road in Union, Illinois.

2212.   On and before 1960, and at all times relevant herein, Techalloy controlled the land at 6509 Olson Road in Union, Illinois.

2213.   On and before 1960, and at all times relevant herein, Techalloy, Techalloy knew or should have known of the dangerous conditions emitting from their land, including TCE and other VOCs entering the groundwater.

2214.   On and before 1960, and at all times relevant herein, Techalloy, knew or should have known of the cancer-causing agents emitting from their land.

2215.   On and before February of 2005 Defendant Techalloy knew of these conditions and sold the land to Defendant, Central Wire.

2216.   That Techalloy had a duty as an owner and occupier of its proper to exercise ordinary care to see that the property was reasonably safe.

2217.   The Defendants failed to see that their that property was reasonably safe in one or more of the following regards:

    a.   Allowed a dangerous condition of the emission of volatile organic compounds from their property into the town of Union, Illinois to continue;

    b.   Allowed a dangerous condition of the emission of VOCs, including TCE and PCE into Plaintiff's air space and water supply;

    c.   Knew or should have known of a dangerous condition caused by the emissions of TCE and PCE into Plaintiff's air space and water supply and allowed it to continue;

    d.   Created a dangerous condition on the land by failing to take appropriate measures to eliminate the emission of volatile organic compounds, clean them up, or warn of their presence;

    e.   Failed to properly inspect the premises to identify these safety hazards; and/or

    f.   Allowed the ongoing pollution of Plaintiff's air space and water to continue for years.

2218.   As a direct and proximate cause of the Defendants' negligent acts and omissions, Linda Peredna's body was exposed to TCE, which were a proximate cause in her development of Autoimmune disease and thyroid cancer.

2219.   That as a further direct and proximate result of the aforesaid injuries, Plaintiff Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT IV – CIVIL BATTERY
### Linda Peredna v. Techalloy, Inc.

2220.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2221.   At all relevant times, Defendant knew that TCEs, including TCE and PCE emitting from the Defendant would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons drinking, ingesting, or exposed to it.

2222.   Notwithstanding this knowledge, Defendant caused and/or set in motion events that caused TCEs, including TCE and PCE to come in contact with Plaintiff.

2223.   Plaintiff's contact with TCEs was offensive and harmful.

2224.   Defendant intended to emit TCEs into environment despite its knowledge that it would contact people who lived or worked near the Defendant, specifically Linda Peredna.

2225.   Plaintiff, Linda Peredna did not consent to contact with TCEs emitted from the Defendant.

2226.   As a direct and proximate result of Defendant's emission of TCEs, Plaintiff was placed into contact with TCEs without consent.

2227.   As a direct and proximate result thereof, Plaintiffs ingested and was exposed to TCE and developed cancer or have otherwise sustained severe personal injuries, and have been caused to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and loss of normal life.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT V – PUBLIC NUISANCE
### *Linda Peredna v. Techalloy, Inc.*

2228.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2229.   The general public has a common right to breathe in clean air without dangerous levels of carcinogens such at TCEs. The Illinois Constitution guarantees these rights to its citizens.

2230.   Article XI of the Illinois Constitution of 1970, Environment, Section 1, Public Policy – Legislative Responsibility, provides that:

> The public policy of the State and the duty of each person is to provide and maintain a healthful environment for the benefit of this and future generations. The General Assembly shall provide by law for the implementation and enforcement of this public policy.

Article XI of the Illinois Constitution of 1970, Environment, Section 2, Rights of Individuals, provides that:

> Each person has the right to a healthful environment. Each person may enforce this right against any party, governmental or private, through appropriate legal proceedings subject to reasonable limitation and regulation as the General Assembly may provide by law.

2231.   Defendant's use and emission of VOCs, including TCE, substantially and unreasonably infringed upon and/ or transgresses this public right. In particular, the activities of Defendant caused those who lived and worked in the area surrounding, Linda Peredna, to inhale high levels of TCEs on a routine and constant basis, and further, to be exposed to air causing a substantially elevated risk of cancer.

2232.   Defendant's use and emission of VOCs, including TCEs is especially inappropriate given the area in which it is located; namely, within a populated residential area.

2233.   As a direct and proximate result of Defendant's use and emission of TCEs, Plaintiff ingested and was exposed to dangerous amounts of TCEs and developed serious diseases or conditions or have otherwise sustained severe personal injuries, and have been caused to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and loss of normal life.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT VI – NEGLIGENCE
### *Linda Peredna v. Central Wire, Inc.*

2234.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2235.   That Central Wire, Inc., had a duty to exercise ordinary care for those living near the plant breathing, drinking or otherwise ingesting air and water containing TCE and other contaminants from the factory.

2236.   The Defendant committed one or more of the following acts and/or omissions:

a.  Permitted substances, including TCE and PCE, to be released onto the soil of the Defendant's facilities and into the groundwater.

b.  Failed to establish a procedure for the use of VOCs, including but not limited to TCE and PCE at the plant that did not result in the release of TCE and PCE into the environment;

c.  Failed to test the Peredna home for VOCs, including TCE contamination;

d.  Failed to alert Linda Peredna to the possibility of TCE exposure;

e.  Failed to alert Linda Peredna of the cancer risk TCE exposure can cause;

f.  Failed to advise the Perednas that their children were at risk for developing cancer as a result of the toxic plume of VOCs including TCE that they introduced;

g.  Failed to purchase the Peredna's property;

h.  Failed to educate the Perednas about the risks of VOC's and TCE that they exposed the Perednas to;

i.  Failed to timely and properly test surrounding air, soil, and water, which ultimately led to Ms. Peredna's TCE exposure;

j.  Failed to safely and properly operate, maintain, and dispose of dangerous chemicals, including TCE and PCE.

k.  Failed to provide appropriate safe-guards and security measures to prevent, monitor and/ or remedy the release of harmful VOCs from being released into the environment;

l.  Failed to properly dispose of VOCs, including TCE, which permitted the toxins to enter the environment and migrate to the Peredna residence;

m. Carelessly and improperly stored TCE and other VOCs without the proper safe-guards required to ensure the prevention of said chemicals from entering into the environment, whether that was discharge, spillage, release, or escape;

n.  Failed to warn Union residents, including Linda Peredna, of the life-threatening conditions created by the Defendant's releases VOCs, including TCE-containing substances, into the surrounding air, soil, water, and general environment;

o.  Failed to properly contain and clean up the VOCs which were released by the Defendant into the environment;

p.   Failed to implement institutional controls consisting of a facility deed restriction and a county restriction on water well drilling permits following the release of TCE and other VOCs;

q.   Failed to properly and timely initiate a private well sampling program following the release of TCE into the groundwater;

r.   Failed to properly and timely implement an air sparge/soil vapor extraction system to treat on-site soils and groundwater contaminated with VOCs following the release of TCE into the groundwater;

s.   Failed to timely remediate the plume of VOCs, including TCE; and/or

t.   Placed the profit of their owners over the safety of people living near their factories, including the Perednas.

2237.   As a direct and proximate cause of the Defendant's foregoing negligent acts and omissions, chemicals were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Peredna residence.

2238.   As a direct and proximate cause of the Defendants' negligent acts and omissions, Linda Peredna's body was exposed to VOCs at such lengths, and for such amounts, which were a proximate cause of her development of Autoimmune disease and thyroid cancer.

2239.   That as a further direct and proximate result of the aforesaid injuries, Plaintiff Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT VII – PREMISES LIABILITY
### *Linda Peredna v. Central Wire, Inc.*

2240.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2241.   At all times stated herein, it was the duty of the Defendant, Central Wire, as owner, occupier and/or manager of the land located at 6509 Olson Road in Union, Illinois, by and through its agents, employees and/or servants, to exercise ordinary care so that the premises were in a reasonably safe condition so as not to cause injury to individuals, including Plaintiff Linda Peredna.

2242.   Defendant utilized volatile organic compounds (VOCs) which migrated beyond their factories into the environment and onto Plaintiff's property.

2243.   At all times relevant, Plaintiff Linda Peredna, resided in Union, Illinois.

2244.   On and before February 8, 2005, Defendant, Central Wire, purchased the land at 6509 Olson Road in Union, Illinois from Defendant, Techalloy.

2245.   On and before, February 8, 2005, and at all times relevant herein, Central Wire knew or should have known of the dangerous condition of the land.

2246.   On and before February 8, 2005, and at all times relevant herein, Central Wire knew or should have known that the property owner was emitting TCE.

2247.   On and before February 8, 2005, and at all times relevant herein, Central Wire knew or should have known that the property owner was emitting PCE.

2248.   On and before February 8, 2005, and at all times relevant herein, Central Wire knew or should have known that the property owner was emitting VOCs.

2249.   On and before February 8, 2005, and at all times relevant herein, Central Wire owned the land at 6509 Olson Road in Union, Illinois.

2250.   On and before February 8, 2005, and at all times relevant herein, Central Wire maintained the land at 6509 Olson Road in Union, Illinois.

2251.   On and before February 8, 2005, and at all times relevant herein, Central Wire inspected the land at 6509 Olson Road in Union, Illinois.

2252.   On and before February 8, 2005, and at all times relevant herein, Central Wire controlled the land at 6509 Olson Road in Union, Illinois.

2253.   On and before February 8, 2005, and at all times relevant herein, Central Wire, should have known of the dangerous conditions emitting from their land.

2254.   On and before February 8, 2005, and at all times relevant herein, Central Wire, should have known of the cancer-causing agents emitting from their land.

2255.   That Central Wire, Inc., had a duty as an owner and occupier of its proper to exercise ordinary care to see that the property was reasonably safe.

2256.   The Defendants failed to see that their that property was reasonably safe in one or more of the following regards:

   a.   Allowed a dangerous condition of the emission of volatile organic compounds from their property into the town of Union, Illinois to continue;

   b.   Allowed a dangerous condition of the emission of VOCs, including TCE and PCE into Plaintiff's air space and water supply;

   c.   Knew or should have known of a dangerous condition caused by the emissions of TCE and PCE into Plaintiff's air space and water supply and allowed it to continue;

   d.   Created a dangerous condition on the land by failing to take appropriate measures to eliminate the emission of volatile organic compounds, clean them up, or warn of their presence;

   e.   Failed to properly inspect the premises to identify these safety hazards; and/or

   f.   Allowed the ongoing pollution of Plaintiff's air space and water to continue for years.

2257.   As a direct and proximate cause of the Defendants' negligent acts and omissions, Linda Peredna's body was exposed to TCE, which were a proximate cause in her development of Autoimmune disease and thyroid cancer.

2258.   That as a further direct and proximate result of the aforesaid injuries, Plaintiff Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT VIII – CIVIL BATTERY
### *Linda Peredna v. Central Wire, Inc.*

2259.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2260.   At all relevant times, Defendant knew that VOCs, including TCE and PCE emitting from the Defendant would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons drinking, ingesting, or exposed to it.

2261.   Notwithstanding this knowledge, Defendant caused and/or set in motion events that caused VOCs, including TCE and PCE to come in contact with Plaintiff.

2262.   Plaintiff's contact with VOCs was offensive and harmful.

2263.   Central Wire, Inc. intended to emit VOCs into environment despite its knowledge that it would contact people who lived or worked near the Defendant, specifically Linda Peredna.

2264.   Plaintiff, Linda Peredna did not consent to contact with VOCs emitted from the Defendant.

2265.   As a direct and proximate result of Defendant's emission of VOCs, Plaintiff was forced into contact with VOCs without consent.

2266.   As a direct and proximate result thereof, Plaintiffs ingested and was exposed to dangerous amounts of VOCs and developed cancer or have otherwise sustained severe personal injuries, and have been caused to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and loss of normal life.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendants, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT IX – PUBLIC NUISANCE
### *Linda Peredna v. Central Wire, Inc.*

2267.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2268.   The general public has a common right to breathe in clean air without dangerous levels of carcinogens such at VOCs. The Illinois Constitution guarantees these rights to its citizens.

2269.   Article XI of the Illinois Constitution of 1970, Environment, Section 1, Public Policy – Legislative Responsibility, provides that:

The public policy of the State and the duty of each person is to provide and maintain a healthful environment for the benefit of this and future generations. The General Assembly shall provide by law for the implementation and enforcement of this public policy.

Article XI of the Illinois Constitution of 1970, Environment, Section 2, Rights of Individuals, provides that:

> Each person has the right to a healthful environment. Each person may enforce this right against any party, governmental or private, through appropriate legal proceedings subject to reasonable limitation and regulation as the General Assembly may provide by law.

2270.   Defendant's use and emission of VOCs substantially and unreasonably infringed upon and/ or transgresses this public right. In particular, the activities of Defendant caused those who lived and worked in the area surrounding, Linda Peredna, to inhale high levels of VOCs on a routine and constant basis, and further, to be exposed to air causing a substantially elevated risk of cancer.

2271.   Defendant's use and emission of VOCs is especially inappropriate given the area in which it is located; namely, within a populated residential area.

2272.   As a direct and proximate result of Defendant's use and emission of VOCs, Plaintiff ingested and was exposed to dangerous amounts of VOCs and developed serious diseases or conditions or have otherwise sustained severe personal injuries, and have been caused to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and loss of normal life.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT X- SUCCESSOR-IN-INTEREST LIABILITY
*Linda Peredna v.  Central Wire Industries, Ltd. As Successor-In-Interest to Central Wire, Inc.*

2273.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2274.   As of February 8, 2005, Central Wire Industries, Ltd. was a corporation organized under the laws of Delaware and doing business in the state of Illinois.

2275.   Upon information and belief, on or around February 8, 2005, Central Wire Industries, Ltd., acquired an ownership interest in Techalloy Company, Inc., also known as Central Wire, Inc.

2276.   Central Wire Industries, Ltd.'s status as parent company to Central Wire, Inc. makes Central Wire Industries, Ltd. a current operator of the facility located at 6509 Olson Road, Union, Illinois.

2277.   That in 2005, Central Wire Industries, Ltd., is in the business of manufacturing industrial metal and wire products.

2278.   That in 2005, Central Wire, Inc., previously known as Techalloy Company, Inc., is in the business of designing and manufacturing industrial metal and wire products.

2279.   Upon information and belief, Central Wire Industries, Ltd. employs several of the same high-level employees that Central Wire, Inc employed.

2280.   Central Wire Industries, Ltd. is engaged in the same business that Central Wire Inc. engaged in prior to any asset sale.

2281.   Upon information and belief, on or after February 8, 2005, Central Wire, Inc. transferred assets related to its business to Central Wire Industries, Ltd.

2282.   Upon information and belief, on or after February 8, 2005, Central Wire, Inc. transferred equipment related to its business to Central Wire Industries, Ltd.

2283.   Upon information and belief, on or after February 8, 2005, Central Wire, Inc. assigned contracts related to its business to Central Wire Industries, Ltd.

2284. Upon information and belief, Central Wire, Inc., received less than fair market value in exchange for any of the aforementioned transfers and/or purchases.

2285. Central Wire Industries, Ltd. is a successor-in-interest to Central Wire, Inc.

2286. Central Wire Industries, Ltd., a successor-in-interest to Central Wire, Inc., is liable to Linda Peredna for the debts and liabilities of Central Wire, Inc., including any judgments rendered against Central Wire, Inc. pursuant to this Complaint at Law.

2287. WHEREFORE, Plaintiff, Linda Peredna prays for a judgment against Defendant CENTRAL WIRE INDUSTRIES, LTD. in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

### COUNT XI – JOINT VENTURE
***Linda Peredna v. Central Wire Industries, Ltd.'s Liability for Being Joint Venture with Central Wire, Inc.***

2288. Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2289. As of February 8, 2005, Central Wire Industries, Ltd. was a corporation organized under the laws of Delaware and doing business in the state of Illinois.

2290. Upon information and belief, on or after February 8, 2005, Central Wire Industries, Ltd. distributed products by made Central Wire, Inc.

2291. Upon information and belief, on or after February 8, 2005, one of Central Wire Industries, Ltd.'s places of business was at 6509 Olson Road, Union, Illinois, the plant where Central Wire, Inc. is located.

2292. Central Wire Industries, Ltd. is an international company who specializes in high performance specialty alloys in nickel, stainless and red metal.

2293.   Central Wire Industries, Ltd. is in the business of manufacturing industrial metal and wire products, the same business in which Central Wire, Inc. engaged in.

2294.   Upon information and belief, Central Wire Industries, Ltd. employs several of the same high-level employees that Central Wire, Inc employed.

2295.   This agreement between Central Wire Industries, Ltd. and Central Wire, Inc. to manufacture and distribute goods created a single enterprise.

2296.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. and Central Wire, Inc. had a common interest in this single enterprise in that both entities shared in profits and losses based on the volume of product manufactured by Central Wire, Inc. which could then be distributed by Central Wire Industries, Ltd.

2297.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. and Central Wire, Inc. each had an expectation to share in the profits of the aforementioned single enterprise.

2298.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. and Central Wire, Inc. each had a duty to share in the profits and losses of the aforementioned single enterprise.

2299.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. had the right to dictate the amount of product Central Wire, Inc. manufactured.

2300.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. had the right to dictate the type of product Central Wire, Inc. manufactured.

2301.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. had the right to help develop the product that Central Wire, Inc. manufactured.

2302.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. had the right to govern the conduct of Central Wire, Inc.

2303.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Inc. had the right to dictate the amount of product that Central Wire Industries, Ltd. distributed.

2304.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Inc. had the right to dictate to whom Central Wire Industries, Ltd. distributed its product.

2305.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Inc. had the right to dictate the method in which Central Wire Industries, Ltd. distributed its product.

2306.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Inc. had a right to govern the conduct of Central Wire Industries, Ltd.

2307.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. was a joint venturer in the joint venture between Central Wire, Inc. and Central Wire Industries, Ltd.

2308.   Central Wire, Inc. was a joint venturer in the joint venture between Central Wire, Inc. and Central Wire Industries, Ltd.

2309.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Inc. and Central Wire Industries, Ltd. carried on a single enterprise described herein for profit.

2310.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Inc. and Central Wire Industries, Ltd. was in fact a joint venture.

2311.   Because Central Wire Industries, Ltd. and Central Wire, Inc. were engaged in a joint venture, Central Wire Industries, Ltd. is liable to Linda Peredna for the debts and liabilities of Central Wire, Inc, including any and all judgments rendered against Central Wire, Inc. pursuant to this Complaint at law.

WHEREFORE, Plaintiff, Linda Peredna prays for a judgment against Defendant Central Wire Industries, Ltd. in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## <u>COUNT XII – ALTER EGO</u>
### *Linda Peredna v. Central Wire Industries, Ltd. As Being Alter Ego to Central Wire, Inc.*

2312.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs  through 1906, above as fully stated herein.

2313.   As of February 8, 2005, Central Wire Industries, Ltd. was a corporation organized under the laws of Delaware, and doing business in the state of Illinois.

2314.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. distributed products made by Central Wire, Inc.

2315.   That in 2005, Central Wire Industries, Ltd., is in the business of manufacturing industrial metal and wire products.

2316.   That in 2005, Central Wire, Inc., previously known as Techalloy Company, Inc., is in the business of designing and manufacturing industrial metal and wire products.

2317.   Upon information and belief, Central Wire Industries, Ltd. employs several of the same high-level employees that Central Wire, Inc employed.

2318.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. used Central Wire, Inc. to procure labor.

2319.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. used Central Wire, Inc. to procure services.

2320.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. was used as a conduit for Central Wire, Inc.

2321.   Upon information and belief, on or after February 8, 2005, and at all relevant times, the funds of Central Wire Industries, Ltd. were commingled with the funds of Central Wire, Inc.

2322.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd.'s equitable ownership was predominantly the same as the equitable ownership of Central Wire, Inc.

2323.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. was undercapitalized in relation to Central Wire, Inc.

2324.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. failed to maintain adequate meeting minutes.

2325.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. failed to maintain adequate business records.

2326.   Upon information and belief, on or after February 8, 2005, and at all relevant times, the same individuals who oversaw Central Wire Industries, Ltd.'s operation oversaw Central Wire, Inc.'s operation.

2327.  Upon information and belief, on or after February 8, 2005, and at all relevant times, the same individuals who oversaw Central Wire Industries, Ltd.'s operation managed Central Wire, Inc.'s operation.

2328.  Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. maintained complete control over Central Wire, Inc.

2329.  Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. treated the assets of Central Wire, Inc. as its own.

2330.  Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Industries, Ltd. failed to maintain an arm's length relationship between Central Wire, Inc. and its own personal business.

2331.  Central Wire, Inc. is a mere alter ego to Defendant, Central Wire Industries, Ltd.

2332.  Because Central Wire, Inc. is a mere alter-ego of Central Wire Industries, Ltd., Central Wire Industries, Ltd. is liable to Linda Peredna for the debts and liabilities of Central Wire, Inc., including any and all judgments rendered against Central Wire, Inc. pursuant to this Complaint at Law.

WHEREFORE, Plaintiff, Linda Peredna prays for a judgment against Defendant CENTRAL WIRE INDUSTRIES, LTD. in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XIII – NEGLIGENCE
### Linda Peredna v. Central Wire Industries, Ltd.

2333.  Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2334.   At all times relevant, it was the duty of the Defendant, Central Wire Industries Ltd., owed a duty of ordinary care to Linda Peredna in providing a reasonably safe environment for Dana to live.

2335.   The Defendant committed one or more of the following acts and/or omissions:

   a.   Failed to test the Peredna home for TCE, TCA, PCE, DCE, and DCA;

   b.   Failed to alert and advise residents, including the Perednas, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

   c.   Failed to timely and properly warn residents, including the Perednas, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

   d.   Failed to timely and properly remediate the TCA, TCE, PCE, DCE, and DCA; and/or

   e.   Failed to timely and properly protect residents, including the Perednas, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2336.   As a direct and proximate cause of the Defendant's foregoing negligent acts and omissions, chemicals were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Peredna residence.

2337.   As a direct and proximate cause of the Defendant's foregoing  acts and omissions, chemicals remain in the environment, which subsequently migrate from the Defendant's properties into the air, soil, and water in inherent to the use and enjoyment of the Peredna Residence and Union Illinois, collectively.

2338.   As a direct and proximate cause of the Defendants' negligent acts and omissions, Linda Peredna's body was exposed to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which were a proximate cause in her development of Autoimmune disease and thyroid cancer.

2339.   As a direct and proximate cause of the Defendants' negligent acts and omissions, TCE, TCE, PCE, DCE, and DCA remain in the environment which expose Linda Peredna and residents of Union, Illinois to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which can result in serious and permanent injuries to health.

2340.   That as a further direct and proximate result of the aforesaid injuries, Plaintiff Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XIV – SUCCESOR IN INTEREST LIABILITY
### *Linda Peredna v. CWI Holding Inc. As Successor-In-Interest to Central Wire, Inc.*

2341.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2342.   As of February 8, 2005, CWI Holding Inc. was a corporation organized under the laws of Delaware and doing business in the state of Illinois.

2343.   Upon information and belief, on or around February 8, 2005, CWI Holding Inc., acquired an ownership interest in Techalloy Company, Inc., also known as Central Wire, Inc.

2344.   CWI Holding Inc.'s status as parent company to Central Wire, Inc. makes CWI Holding Inc. a current operator of the facility located at 6509 Olson Road, Union, Illinois.

2345.   That in 2005, CWI Holding, Inc., is in the business of manufacturing industrial metal and wire products.

2346.   That in 2005, Central Wire, Inc., previously known as Techalloy Company, Inc., is in the business of designing and manufacturing industrial metal and wire products.

2347.   Upon information and belief, CWI Holding Inc. employs several of the same high-level employees that Central Wire, Inc employed.

2348.   CWI Holding Inc. is engaged in the same business that Central Wire Inc. engaged in prior to any asset sale.

2349.   Upon information and belief, on or after February 8, 2005 Central Wire, Inc. transferred assets related to its business to CWI Holding Inc.

2350.   Upon information and belief, on or after February 8, 2005 Central Wire, Inc. transferred equipment related to its business to CWI Holding Inc.

2351.   Upon information and belief, on or after February 8, 2005 Central Wire, Inc. assigned contracts related to its business to CWI Holding Inc.

2352.   Upon information and belief, Central Wire, Inc., received less than fair market value in exchange for any of the aforementioned transfers and/or purchases.

2353.   CWI Holding Inc. is a successor-in-interest to Central Wire, Inc.

2354.   CWI Holding Inc., a successor-in-interest to Central Wire, Inc., is liable to Linda Peredna for the debts and liabilities of Central Wire, Inc., including any judgments rendered against Central Wire, Inc. pursuant to this Complaint at Law.

2355.   WHEREFORE, Plaintiff, Linda Peredna prays for a judgment against Defendant CWI HOLDING INC. in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

### **COUNT XV- JOINT VENTURE**
***Linda Peredna v. CWI Holding Inc.'s Liability for Being Joint Venture with Central Wire, Inc.***

2356.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2357.   As of February 8, 2005, CWI Holding Inc. was a corporation organized under the laws of Delaware and doing business in the state of Illinois.

2358.   Upon information and belief, on or after February 8, 2005 CWI Holding Inc. distributed products by made Central Wire, Inc.

2359.   Upon information and belief, on or after February 8, 2005 one of CWI Holding Inc.'s places of business was at 6509 Olson Road, Union, Illinois, the plant where Central Wire, Inc. is located.

2360.   CWI Holding Inc. is an international company who specializes in high performance specialty alloys in nickel, stainless and red metal.

2361.   CWI Holding Inc. is in the business of manufacturing industrial metal and wire products, the same business in which Central Wire, Inc. engaged in.

2362.   Upon information and belief, CWI Holding Inc. employs several of the same high-level employees that Central Wire, Inc employed.

2363.   This agreement between CWI Holding Inc. and Central Wire, Inc. to manufacture and distribute goods created a single enterprise.

2364.   Upon information and belief, on or after February 8, 2005, and at all relevant times, CWI Holding Inc. and Central Wire, Inc. had a common interest in this single enterprise in that both entities shared in profits and losses based on the volume of product manufactured by Central Wire, Inc. which could then be distributed by CWI Holding Inc.

2365. Upon information and belief, on or after February 8, 2005, and at all relevant times, CWI Holding Inc. and Central Wire, Inc. each had an expectation to share in the profits of the aforementioned single enterprise.

2366. Upon information and belief, on or after February 8, 2005, and at all relevant times, CWI Holding Inc. and Central Wire, Inc. each had a duty to share in the profits and losses of the aforementioned single enterprise.

2367. Upon information and belief, on or after February 8, 2005, and at all relevant times, CWI Holding Inc. had the right to dictate the amount of product Central Wire, Inc. manufactured.

2368. Upon information and belief, on or after February 8, 2005, and at all relevant times, CWI Holding Inc. had the right to dictate the type of product Central Wire, Inc. manufactured.

2369. Upon information and belief, on or after February 8, 2005, and at all relevant times, CWI Holding Inc. had the right to help develop the product that Central Wire, Inc. manufactured.

2370. Upon information and belief, on or after February 8, 2005, and at all relevant times, CWI Holding Inc. had the right to govern the conduct of Central Wire, Inc.

2371. Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Inc. had the right to dictate the amount of product that CWI Holding Inc. distributed.

2372. Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Inc. had the right to dictate to whom CWI Holding Inc. distributed its product.

2373.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Inc. had the right to dictate the method in which CWI Holding Inc. distributed its product.

2374.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Inc. had a right to govern the conduct of CWI Holding Inc.

2375.   Upon information and belief, on or after February 8, 2005 and at all relevant times, CWI Holding Inc. was a joint venturer in the joint venture between Central Wire, Inc. and CWI Holding Inc.

2376.   Central Wire, Inc. was a joint venturer in the joint venture between Central Wire, Inc. and CWI Holding Inc.

2377.   Upon information and belief, on or after February 8, 2005, and at all relevant times, Central Wire Inc. and CWI Holding Inc. carried on a single enterprise described herein for profit.

2378.   Upon information and belief, on or after February 8, 2005 and at all relevant times, Central Wire Inc. and CWI Holding Inc. was in fact a joint venture.

2379.   Because CWI Holding Inc. and Central Wire, Inc. were engaged in a joint venture, CWI Holding Inc. is liable to Linda Peredna for the debts and liabilities of Central Wire, Inc, including any and all judgments rendered against Central Wire, Inc. pursuant to this Complaint at law.

WHEREFORE, Plaintiff, Linda Peredna prays for a judgment against Defendant CWI Holding Inc. in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

### COUNT XVI – ALTER EGO
***Linda Peredna v. CWI Holding Inc. As Being Alter Ego to Central Wire, Inc.***

2380.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2381.   As of February 8, 2005, CWI Holding Inc. was a corporation organized under the laws of Delaware, and doing business in the state of Illinois.

2382.   Upon information and belief, on or after February 8, 2005, and at all relevant times, CWI Holding Inc. distributed products made by Central Wire, Inc.

2383.   That in 2005, CWI Holding, Inc., is in the business of manufacturing industrial metal and wire products.

2384.   That in 2005, Central Wire, Inc., previously known as Techalloy Company, Inc., is in the business of designing and manufacturing industrial metal and wire products.

2385.   Upon information and belief, CWI Holding Inc. employs several of the same high-level employees that Central Wire, Inc employed.

2386.   Upon information and belief, on or after February 8, 2005, and at all relevant times, CWI Holding Inc. used Central Wire, Inc. to procure labor.

2387.   Upon information and belief, on or after February 8, 2005, and at all relevant times, CWI Holding Inc. used Central Wire, Inc. to procure services.

2388.   Upon information and belief, on or after February 8, 2005, and at all relevant times, CWI Holding Inc. was used as a conduit for Central Wire, Inc.

2389.   Upon information and belief, on or after February 8, 2005, and at all relevant times, the funds of CWI Holding Inc. were commingled with the funds of Central Wire, Inc.

2390.   Upon information and belief, on or after February 8, 2005, and at all relevant times, CWI Holding Inc.'s equitable ownership was predominantly the same as the equitable ownership of Central Wire, Inc.

2391. Upon information and belief, on or after February 8, 2005 and at all relevant times, CWI Holding Inc. was undercapitalized in relation to Central Wire, Inc.

2392. Upon information and belief, on or after February 8, 2005 and at all relevant times, CWI Holding Inc. failed to maintain adequate meeting minutes.

2393. Upon information and belief, on or after February 8, 2005, and at all relevant times, CWI Holding Inc. failed to maintain adequate business records.

2394. Upon information and belief, on or after February 8, 2005, and at all relevant times, the same individuals who oversaw CWI Holding Inc.'s operation oversaw Central Wire, Inc.'s operation.

2395. Upon information and belief, on or after February 8, 2005, and at all relevant times, the same individuals who oversaw CWI Holding Inc.'s operation managed Central Wire, Inc.'s operation.

2396. Upon information and belief, on or after February 8, 2005 and at all relevant times, CWI Holding Inc. maintained complete control over Central Wire, Inc.

2397. Upon information and belief, on or after February 8, 2005, and at all relevant times, CWI Holding Inc. treated the assets of Central Wire, Inc. as its own.

2398. Upon information and belief, on or after February 8, 2005, and at all relevant times, CWI Holding Inc. failed to maintain an arm's length relationship between Central Wire, Inc. and its own personal business.

2399. Central Wire, Inc. is a mere alter ego to Defendant, CWI Holding Inc.

2400. Because Central Wire, Inc. is a mere alter-ego of CWI Holding Inc., CWI Holding Inc. is liable to Linda Peredna for the debts and liabilities of Central Wire, Inc.,

including any and all judgments rendered against Central Wire, Inc. pursuant to this Complaint at Law.

WHEREFORE, Plaintiff, Linda Peredna prays for a judgment against Defendant CWI HOLDING INC. in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XVII – NEGLIGENCE
### *Linda Peredna v. CWI Holding Inc.*

2401. Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2402. At all times relevant, it was the duty of the Defendant, CWI Holding, Inc., owed a duty of ordinary care to Linda Peredna.

2403. The Defendant committed one or more of the following acts and/or omissions:

a. Failed to test the Peredna home for TCE, TCA, PCE, DCE, and DCA;

b. Failed to alert and advise residents, including the Perednas, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

c. Failed to timely and properly warn residents, including the Perednas, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

d. Failed to timely and properly remediate the TCA, TCE, PCE, DCE, and DCA; and/or

e. Failed to timely and properly protect residents, including the Perednas, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2404. As a direct and proximate cause of the Defendant's foregoing negligent acts and omissions, chemicals were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Peredna residence.

2405.   As a direct and proximate cause of the Defendant's foregoing acts and omissions, chemicals remain in the environment, which subsequently migrate from the Defendant's properties into the air, soil, and water in inherent to the use and enjoyment of the Peredna Residence and Union Illinois, collectively.

2406.   As a direct and proximate cause of the Defendants' negligent acts and omissions, Linda Peredna's body was exposed to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which were a proximate cause in her development of Autoimmune disease and thyroid cancer.

2407.   As a direct and proximate cause of the Defendants' negligent acts and omissions, TCE, TCE, PCE, DCE, and DCA remain in the environment which expose Linda Peredna and residents of Union, Illinois to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which can result in serious and permanent injuries to health.

2408.   That as a further direct and proximate result of the aforesaid injuries, Plaintiff Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XVIII – SUCCESSOR IN INTEREST LIABILITY
***Linda Peredna v. Lincoln Electric Holdings, Inc. As Successor-In-Interest to Central Wire, Inc.***

2409.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2410.   As of July 29, 2011, Lincoln Electric Holdings, Inc. was a corporation organized under the laws of Delaware and doing business in the state of Illinois.

2411.   Upon information and belief, on or around July 29, 2011, Lincoln Electric Holdings, Inc., acquired an ownership interest in Techalloy Company, Inc., also known as Central Wire, Inc.

2412.   Lincoln Electric Holdings, Inc.'s status as parent company to Central Wire, Inc. makes Lincoln Electric Holdings, Inc. a current operator of the facility located at 6509 Olson Road, Union, Illinois.

2413.   That in 2011, Lincoln Electric Holdings, Inc., is in the business of manufacturing industrial metal and wire products.

2414.   That in 2011, Central Wire, Inc., previously known as Techalloy Company, Inc., is in the business of designing and manufacturing industrial metal and wire products.

2415.   Upon information and belief, Lincoln Electric Holdings, Inc. employs several of the same high-level employees that Central Wire, Inc employed.

2416.   Lincoln Electric Holdings, Inc. is engaged in the same business that Central Wire Inc. engaged in prior to any asset sale.

2417.   Upon information and belief, on or after July 29, 2011 Central Wire, Inc. transferred assets related to its business to Lincoln Electric Holdings, Inc.

2418.   Upon information and belief, on or after July 29, 2011 Central Wire, Inc. transferred equipment related to its business to Lincoln Electric Holdings, Inc.

2419.   Upon information and belief, on or after July 29, 2011 Central Wire, Inc. assigned contracts related to its business to Lincoln Electric Holdings, Inc.

2420.   Upon information and belief, Central Wire, Inc., received less than fair market value in exchange for any of the aforementioned transfers and/or purchases.

2421.   Lincoln Electric Holdings, Inc. is a successor-in-interest to Central Wire, Inc.

2422.   Lincoln Electric Holdings, Inc., a successor-in-interest to Central Wire, Inc., is liable to Linda Peredna for the debts and liabilities of Central Wire, Inc., including any judgments rendered against Central Wire, Inc. pursuant to this Complaint at Law.

2423.   WHEREFORE, Plaintiff, Linda Peredna prays for a judgment against Defendant LINCOLN ELECTRIC HOLDINGS, INC. in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XIX – NEGLIGENCE
### *Linda Peredna v. Lincoln Electric Holdings, Inc.*

2424.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2425.   At all times relevant, it was the duty of the Defendant, Lincoln Electric Holdings, Inc., owed a duty of ordinary care to Linda Peredna.

2426.   The Defendant committed one or more of the following acts and/or omissions:

   a.   Failed to test the Peredna home for TCE, TCA, PCE, DCE, and DCA;

   b.   Failed to alert and advise residents, including the Perednas, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

   c.   Failed to timely and properly warn residents, including the Perednas, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

   d.   Failed to timely and properly remediate the TCA, TCE, PCE, DCE, and DCA; and/or

   e.   Failed to timely and properly protect residents, including the Perednas, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2427.   As a direct and proximate cause of the Defendant's foregoing negligent acts and omissions, chemicals were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Peredna residence.

2428.   As a direct and proximate cause of the Defendant's foregoing acts and omissions, chemicals remain in the environment, which subsequently migrate from the Defendant's properties into the air, soil, and water in inherent to the use and enjoyment of the Peredna Residence and Union Illinois, collectively.

2429.   As a direct and proximate cause of the Defendants' negligent acts and omissions, Linda Peredna's body was exposed to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which were a proximate cause in her development of Autoimmune disease and thyroid cancer.

2430.   As a direct and proximate cause of the Defendants' negligent acts and omissions, TCE, TCE, PCE, DCE, and DCA remain in the environment which expose Linda Peredna and residents of Union, Illinois to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which can result in serious and permanent injuries to health.

2431.   That as a further direct and proximate result of the aforesaid injuries, Plaintiff Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XX – SUCCESSOR IN INTEREST LIABILTY
### *Linda Peredna v. USI Holding, Inc. As Successor-In-Interest to Central Wire, Inc.*

2148.   As of February 8, 2005, USI Holding, Inc. was a corporation organized under the laws of Delaware and doing business in the state of Illinois.

2149.   Upon information and belief, on or around February 8, 2005, USI Holding, Inc., acquired an ownership interest in Techalloy Company, Inc., also known as Central Wire, Inc.

2150.   USI Holding, Inc.'s status as parent company to Central Wire, Inc. makes USI Holding, Inc. a current operator of the facility located at 6509 Olson Road, Union, Illinois.

2151.   That in 2005, USI Holding, Inc., is in the business of manufacturing industrial metal and wire products.

2152.   That in 2005, Central Wire, Inc., previously known as Techalloy Company, Inc., is in the business of designing and manufacturing industrial metal and wire products.

2153.   Upon information and belief, USI Holding, Inc. employs several of the same high-level employees that Central Wire, Inc employed.

2154.   USI Holding, Inc. is engaged in the same business that Central Wire Inc. engaged in prior to any asset sale.

2155.   Upon information and belief, on or after February 8, 2005, Central Wire, Inc. transferred assets related to its business to USI Holding, Inc.

2156.   Upon information and belief, on or after February 8, 2005, Central Wire, Inc. transferred equipment related to its business to USI Holding, Inc.

2157.   Upon information and belief, on or after February 8, 2005, Central Wire, Inc. assigned contracts related to its business to USI Holding, Inc.

2158.   Upon information and belief, Central Wire, Inc., received less than fair market value in exchange for any of the aforementioned transfers and/or purchases.

2159.   USI Holding, Inc. is a successor-in-interest to Central Wire, Inc.

2160.   USI Holding, Inc., a successor-in-interest to Central Wire, Inc., is liable to Linda Peredna for the debts and liabilities of Central Wire, Inc., including any judgments rendered against Central Wire, Inc. pursuant to this Complaint at Law.

WHEREFORE, Plaintiff, Linda Peredna prays for a judgment against Defendant USI HOLDING, INC. in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

<u>**COUNT XXI – NEGLIGENCE**</u>
***Linda Peredna v. USI Holding, Inc.***

2161.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2162.   At all times relevant, it was the duty of the Defendant, CWI Holding, Inc., owed a duty of ordinary care to Linda Peredna in providing a reasonably safe environment for Dana to live.

2163.   The Defendant committed one or more of the following negligent acts and/or omissions:

  a.   Failed to test the Peredna home for TCE, TCA, PCE, DCE, and DCA;

  b.   Failed to alert and advise residents, including the Perednas, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

  c.   Failed to timely and properly warn residents, including the Perednas, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

  d.   Failed to timely and properly remediate the TCA, TCE, PCE, DCE, and DCA; and/or

  e.   Failed to timely and properly protect residents, including the Perednas, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2164.   As a direct and proximate cause of the Defendant's foregoing negligent acts and omissions, chemicals were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Peredna residence.

2165.   As a direct and proximate cause of the Defendant's foregoing acts and omissions, chemicals remain in the environment, which subsequently migrate from the Defendant's properties into the air, soil, and water in inherent to the use and enjoyment of the Peredna Residence and Union Illinois, collectively.

2166.   As a direct and proximate cause of the Defendants' negligent acts and omissions, Linda Peredna's body was exposed to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which were a proximate cause in her development of Autoimmune disease and thyroid cancer.

2167.   As a direct and proximate cause of the Defendants' negligent acts and omissions, TCE, TCE, PCE, DCE, and DCA remain in the environment which expose Linda Peredna and residents of Union, Illinois to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which can result in serious and permanent injuries to health.

2168.   That as a further direct and proximate result of the aforesaid injuries, Plaintiff Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XXII – SUCCESSOR IN INTEREST LIABILITY
*Linda Peredna v. Arcelormittal International America, LLC, As Successor-In-Interest to Central Wire, Inc.*

2169.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2170.   As of July of 1990, Arcelormittal International America, LLC, was a corporation organized under the laws of Delaware and doing business in the state of Illinois.

2171.   Upon information and belief, on or around July of 1990, Arcelormittal International America, LLC, acquired an ownership interest in Techalloy Company, Inc., also known as Central Wire, Inc.

2172.   Defendant, Arcelormittal has an ownership interest in Central Wire, Inc.,

2173.   Defendant, Arcelormittal has agreed to indemnify Central Wire, Inc., and Techalloy Company, Inc., for any personal injury related to any environmental, health, and safety liabilities

2174.   Arcelormittal International America, LLC,'s status as parent company to Central Wire, Inc. makes Arcelormittal International America, LLC, a current operator of the facility located at 6509 Olson Road, Union, Illinois.

2175.   That in 1990, Arcelormittal International America, LLC,,is in the business of manufacturing industrial metal and wire products.

2176.   That in 1990, Central Wire, Inc., previously known as Techalloy Company, Inc., is in the business of designing and manufacturing industrial metal and wire products.

2177.   Upon information and belief, Arcelormittal International America, LLC, employs several of the same high-level employees that Central Wire, Inc employed.

2178. Arcelormittal International America, LLC, is engaged in the same business that Central Wire Inc. engaged in prior to any asset sale.

2179. Upon information and belief, on or after 1990, Central Wire, Inc. transferred assets related to its business to Arcelormittal International America, LLC,

2180. Upon information and belief, on or after 1990 Central Wire, Inc. transferred equipment related to its business to Arcelormittal International America, LLC,

2181. Upon information and belief, on or after 1990 Central Wire, Inc. assigned contracts related to its business to Arcelormittal International America, LLC.

2182. Upon information and belief, Central Wire, Inc., received less than fair market value in exchange for any of the aforementioned transfers and/or purchases.

2183. Arcelormittal International America, LLC, is a successor-in-interest to Techalloy and Central Wire, Inc.

2184. Arcelormittal International America, LLC,, a successor-in-interest to Central Wire, Inc., is liable to Linda Peredna for the debts and liabilities of Central Wire, Inc., including any judgments rendered against Central Wire, Inc. pursuant to this Complaint at Law.

WHEREFORE, Plaintiff, Linda Peredna prays for a judgment against Defendant ARCELORMITTAL INTERNATIONAL AMERICA, LLC, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XXIII – NEGLIGENCE
### *Linda Peredna v. Arcelormittal International America, LLC,*

2148. Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2149.   At all times relevant, it was the duty of the Defendant, Arcelormittal International America, LLC, owed a duty of ordinary care to Linda Peredna in providing a reasonably safe environment for Dana to live.

2150.   The Defendant committed one or more of the following negligent acts and/or omissions:

a.   Failed to test the Peredna home for TCE, TCA, PCE, DCE, and DCA;

b.   Failed to alert and advise residents, including the Perednas, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

c.   Failed to timely and properly warn residents, including the Perednas, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

d.   Failed to timely and properly remediate the TCA, TCE, PCE, DCE, and DCA; and/or

e.   Failed to timely and properly protect residents, including the Perednas, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2151.   As a direct and proximate cause of the Defendant's foregoing negligent acts and omissions, chemicals were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Peredna residence.

2152.   As a direct and proximate cause of the Defendant's foregoing  acts and omissions, chemicals remain in the environment, which subsequently migrate from the Defendant's properties into the air, soil, and water in inherent to the use and enjoyment of the Peredna Residence and Union Illinois, collectively.

2153.   As a direct and proximate cause of the Defendants' negligent acts and omissions, Linda Peredna's body was exposed to TCE, TCE, PCE, DCE, and DCA at such lengths, and for

such amounts, which were a proximate cause in her development of Autoimmune disease and thyroid cancer.

2154.  As a direct and proximate cause of the Defendants' negligent acts and omissions, TCE, TCE, PCE, DCE, and DCA remain in the environment which expose Linda Peredna and residents of Union, Illinois to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which can result in serious and permanent injuries to health.

2155.  That as a further direct and proximate result of the aforesaid injuries, Plaintiff Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XXIV – SUCCESSOR IN INTEREST LIABILITY
*Linda Peredna v. ArcelorMittal USA Foundation, Inc. As Successor-In-Interest to Techalloy Central Wire, Inc.*

2242.  Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2243.  As of 2006, ArcelorMittal USA Foundation, Inc. was a corporation organized under the laws of Delaware and doing business in the state of Illinois.

2244.  Upon information and belief, on or around 2006, ArcelorMittal USA Foundation, Inc., acquired an ownership interest in Techalloy Company, Inc., also known as Central Wire, Inc.

2245.  Defendant, Arcelormittal has an ownership interest in Central Wire, Inc.

2246.   Defendant, Arcelormittal has an ownership interest in Techalloy.

2247.   Defendant, Arcelormittal has agreed to indemnify Central Wire, Inc., and Techalloy Company, Inc., for any personal injury related to any environmental, health, and safety liabilities

2248.   ArcelorMittal USA Foundation, Inc.'s status as parent company to Central Wire, Inc. makes ArcelorMittal USA Foundation, Inc. a current operator of the facility located at 6509 Olson Road, Union, Illinois.

2249.   That in 2006, ArcelorMittal USA Foundation, Inc., is in the business of manufacturing industrial metal and wire products.

2250.   That in 2006, Central Wire, Inc., previously known as Techalloy Company, Inc., is in the business of designing and manufacturing industrial metal and wire products.

2251.   Upon information and belief, ArcelorMittal USA Foundation, Inc. employs several of the same high-level employees that Central Wire, Inc employed.

2252.   ArcelorMittal USA Foundation, Inc. is engaged in the same business that Central Wire Inc. engaged in prior to any asset sale.

2253.   Upon information and belief, on or after 2006, Central Wire, Inc. transferred assets related to its business to ArcelorMittal USA Foundation, Inc.

2254.   Upon information and belief, on or after 2006, Central Wire, Inc. transferred equipment related to its business to ArcelorMittal USA Foundation, Inc.

2255.   Upon information and belief, on or after 2006, Central Wire, Inc. assigned contracts related to its business to ArcelorMittal USA Foundation, Inc.

2256.   Upon information and belief, Central Wire, Inc., received less than fair market value in exchange for any of the aforementioned transfers and/or purchases.

2257.   ArcelorMittal USA Foundation, Inc. is a successor-in-interest to Central Wire, Inc.

2258.   ArcelorMittal USA Foundation, Inc., a successor-in-interest to Central Wire, Inc., is liable to Linda Peredna for the debts and liabilities of Central Wire, Inc., including any judgments rendered against Central Wire, Inc. pursuant to this Complaint at Law.

2259.   WHEREFORE, Plaintiff, Linda Peredna prays for a judgment against Defendant ARCELORMITTAL USA FOUNDATION, INC. in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XXV – NEGLIGENCE
### Linda Peredna v. ArcelorMittal USA Foundation, Inc.

2260.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2261.   At all times relevant, it was the duty of the Defendant, ArcelorMittal USA Foundation, Inc., owed a duty of ordinary care to Linda Peredna in providing a reasonably safe environment for Dana to live.

2262.   The Defendant committed one or more of the following negligent acts and/or omissions:

a.   Failed to test the Peredna home for TCE, TCA, PCE, DCE, and DCA;

b.   Failed to alert and advise residents, including the Perednas, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

c.   Failed to timely and properly warn residents, including the Perednas, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

d.   Failed to timely and properly remediate the TCA, TCE, PCE, DCE, and DCA; and/or

      e.  Failed to timely and properly protect residents, including the Perednas, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2263.  As a direct and proximate cause of the Defendant's foregoing negligent acts and omissions, chemicals were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Peredna residence.

2264.  As a direct and proximate cause of the Defendant's foregoing  acts and omissions, chemicals remain in the environment, which subsequently migrate from the Defendant's properties into the air, soil, and water in inherent to the use and enjoyment of the Peredna Residence and Union Illinois, collectively.

2265.  As a direct and proximate cause of the Defendants' negligent acts and omissions, Linda Peredna's body was exposed to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which were a proximate cause in her development of Autoimmune disease and thyroid cancer.

2266.  As a direct and proximate cause of the Defendants' negligent acts and omissions, TCE, TCE, PCE, DCE, and DCA remain in the environment which expose Linda Peredna and residents of Union, Illinois to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which can result in serious and permanent injuries to health.

2267.  That as a further direct and proximate result of the aforesaid injuries, Plaintiff Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XXVI – SUCCESSOR IN INTEREST LIABILITY
### *Linda Peredna v. Cleveland-Cliffs Steel LLC, As Successor-In-Interest to Central Wire, Inc.*

2268. Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2269. As of July 29, 2011, Cleveland-Cliffs Steel LLC, was a corporation organized under the laws of Delaware and doing business in the state of Illinois.

2270. Upon information and belief, on or around July 29, 2011, Cleveland-Cliffs Steel LLC,, acquired an ownership interest in Techalloy Company, Inc., also known as Central Wire, Inc.

2271. Cleveland-Cliffs Steel LLC,'s status as parent company to Central Wire, Inc. makes Cleveland-Cliffs Steel LLC, a current operator of the facility located at 6509 Olson Road, Union, Illinois.

2272. That in 2011, Cleveland-Cliffs Steel LLC, is in the business of manufacturing industrial metal and wire products.

2273. That in 2011, Central Wire, Inc., previously known as Techalloy Company, Inc., is in the business of designing and manufacturing industrial metal and wire products.

2274. Upon information and belief, Cleveland-Cliffs Steel LLC, employs several of the same high-level employees that Central Wire, Inc employed.

2275. Cleveland-Cliffs Steel LLC, is engaged in the same business that Central Wire Inc. engaged in prior to any asset sale.

2276.   Upon information and belief, on or after July 29, 2011 Central Wire, Inc. transferred assets related to its business to Cleveland-Cliffs Steel LLC,

2277.   Upon information and belief, on or after July 29, 2011 Central Wire, Inc. transferred equipment related to its business to Cleveland-Cliffs Steel LLC,

2278.   Upon information and belief, on or after July 29, 2011 Central Wire, Inc. assigned contracts related to its business to Cleveland-Cliffs Steel LLC,

2279.   Upon information and belief, Central Wire, Inc., received less than fair market value in exchange for any of the aforementioned transfers and/or purchases.

2280.   Cleveland-Cliffs Steel LLC, is a successor-in-interest to Central Wire, Inc.

2281.   Cleveland-Cliffs Steel LLC,, a successor-in-interest to Central Wire, Inc., is liable to Linda Peredna for the debts and liabilities of Central Wire, Inc., including any judgments rendered against Central Wire, Inc. pursuant to this Complaint at Law.

2282.   WHEREFORE, Plaintiff, Linda Peredna prays for a judgment against Defendant CLEVELAND-CLIFFS STEEL LLC, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XXVII– NEGLIGENCE
### Linda Peredna v. Cleveland-Cliffs Steel LLC,

2283.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2284.   At all times relevant, it was the duty of the Defendant, Cleveland-Cliffs Steel LLC, owed a duty of ordinary care to Linda Peredna in providing a reasonably safe environment for Dana to live.

2285.   The Defendant committed one or more of the following negligent acts and/or omissions:

a. Failed to test the Peredna home for TCE, TCA, PCE, DCE, and DCA;

b. Failed to alert and advise residents, including the Perednas, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

c. Failed to timely and properly warn residents, including the Perednas, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

d. Failed to timely and properly remediate the TCA, TCE, PCE, DCE, and DCA; and/or

e. Failed to timely and properly protect residents, including the Perednas, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2286.   As a direct and proximate cause of the Defendant's foregoing negligent acts and omissions, chemicals were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Peredna residence.

2287.   As a direct and proximate cause of the Defendant's foregoing  acts and omissions, chemicals remain in the environment, which subsequently migrate from the Defendant's properties into the air, soil, and water in inherent to the use and enjoyment of the Peredna Residence and Union Illinois, collectively.

2288.   As a direct and proximate cause of the Defendants' negligent acts and omissions, Linda Peredna's body was exposed to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which were a proximate cause in her development of Autoimmune disease and thyroid cancer.

2289.   As a direct and proximate cause of the Defendants' negligent acts and omissions, TCE, TCE, PCE, DCE, and DCA remain in the environment which expose Linda Peredna and residents of Union, Illinois to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which can result in serious and permanent injuries to health.

2290.   That as a further direct and proximate result of the aforesaid injuries, Plaintiff Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XXVIII – NEGLIGENCE
### Linda Peredna v. Gerry Roup

2432.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2433.   That between 2005 and 2020, Gerry Roup was an agent and/or employee of Techalloy and Central Wire.

2434.   That between 2005 and 2020, Defendant, Gerry Roup was the General Manager of Techlloy and/or Central Wire plant in Union, Illinois.

2435.   That Gerry Roup had a duty to exercise ordinary care for those living near the plant breathing, drinking or otherwise ingesting air and water containing TCE and other contaminants from the factory.

2436.   That Gerry Roup knew or should have known that TCE and other contaminants were unsafe to humans if they entered the water supply.

2437.   That Gerry Roup knew or should have known that it was not safe to dispose TCE and other contaminants on site.

2438.   That Gerry Roup knew or should have known that placing TCE on a cement slab would cause it to leach into the water supply.

2439.   That Gerry Roup knew or should have known that exposing humans to TCE without proper disposal was not safe.

2440.   That Gerry Roup did not determine if the factory's disposal of TCE onto concrete slabs posed a health risk to individuals living near the factory.

2441.   The Defendant committed one or more of the following acts and/or omissions:

   a.   Failed to test the Peredna home for TCE, TCA, PCE, DCE, and DCA;

   b.   Participated in unsafe disposal practices for TCE, TCA, PCE, DCE, and DCA;

   c.   Failed to implement safe disposal practices for TCE, TCA, PCE, DCE, and DCA;

   d.   Allowed TCE, TCA, PCE, DCE, and DCA to be released beyond into the town of Union's underground water supply;

   e.   Failed to alert and advise residents, including the Perednas, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

   f.   Failed to timely and properly warn residents, including the Perednas, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

   g.   Failed to timely and properly remove the TCA, TCE, PCE, DCE, and DCA; and/or

   h.   Failed to timely and properly protect residents, including the Perednas, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2442.   As a direct and proximate cause of one or more of the Defendant's aforesaid acts and/or omissions, hazardous chemicals were improperly released into the air, soil, and water that Linda Peredna was exposed to while living in Union.

2443.   As a further direct and proximate cause of one or more of the Defendant's negligent acts and/or omissions, the Defendants' negligent acts and omissions, Linda Peredna was caused to develop Autoimmune disease and thyroid cancer.

2444.   That as a further direct and proximate result of one or more of the Defendant's acts and/or omissions, Linda Peredna was caused to incur an increased chance in developing Autoimmune disease and thyroid cancer.

2445.   That as a further direct and proximate cause of one or more of Defendant's acts and/or omissions, Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XXIX – NEGLIGENCE
### Linda Peredna v. Henry Lopes

2446.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2447.   That between 1985 to 2014, Henry Lopes was an agent and/or employee of Techalloy and Central Wire.

2448.   That between 1985 to 2014, Defendant, Henry Lopes was the Vice President of U.S. Operations Techalloy and/or Central Wire plant in Union, Illinois.

2449.   That Henry Lopes had a duty to exercise ordinary care for those living near the plant breathing, drinking or otherwise ingesting air and water containing TCE and other contaminants from the factory.

2450.   That Henry Lopes knew or should have known that TCE and other contaminants were unsafe to humans if they entered the water supply.

2451.   That Henry Lopes knew or should have known that it was not safe to dispose TCE and other contaminants on site.

2452.   That Henry Lopes knew or should have known that placing TCE on a cement slab would cause it to leach into the water supply.

2453.   That Henry Lopes knew or should have known that exposing humans to TCE without proper disposal was not safe.

2454.   That Henry Lopes did not determine if the factory's disposal of TCE onto concrete slabs posed a health risk to individuals living near the factory.

2455.   The Defendant committed one or more of the following acts and/or omissions:

a.   Failed to test the Peredna home for TCE, TCA, PCE, DCE, and DCA;

b.   Participated in unsafe disposal practices for TCE, TCA, PCE, DCE, and DCA;

c.   Failed to implement safe disposal practices for TCE, TCA, PCE, DCE, and DCA;

d.   Allowed TCE, TCA, PCE, DCE, and DCA to be released beyond into the town of Union's underground water supply;

e.   Failed to alert and advise residents, including the Perednas, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

f.   Failed to timely and properly warn residents, including the Perednas, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

g.   Failed to timely and properly remove the TCA, TCE, PCE, DCE, and DCA; and/or

h.   Failed to timely and properly protect residents, including the Perednas, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2456.   As a direct and proximate cause of one or more of the Defendant's aforesaid acts and/or omissions, hazardous chemicals were improperly released into the air, soil, and water that Linda Peredna was exposed to while living in Union.

2457.   As a further direct and proximate cause of one or more of the Defendant's negligent acts and/or omissions, the Defendants' negligent acts and omissions, Linda Peredna was caused to develop Autoimmune disease and thyroid cancer.

2458.   That as a further direct and proximate result of one or more of the Defendant's acts and/or omissions, Linda Peredna was caused to incur an increased chance in developing Autoimmune disease and thyroid cancer.

2459.   That as a further direct and proximate cause of one or more of Defendant's acts and/or omissions, Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XXX – NEGLIGENCE
### Linda Peredna v. Richard Perlick

2460.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2461.   That between 1990 to 1997, Richard Perlick was an agent and/or employee of Techalloy and Central Wire.

2462.   That between 1990 to 1997, Defendant, Richard Perlick was the General Manager (GM) of the Techalloy and/or Central Wire plant in Union, Illinois.

2463.   That Richard Perlick had a duty to exercise ordinary care for those living near the plant breathing, drinking or otherwise ingesting air and water containing TCE and other contaminants from the factory.

2464.   That Richard Perlick knew or should have known that TCE and other contaminants were unsafe to humans if they entered the water supply.

2465.   That Richard Perlick knew or should have known that it was not safe to dispose TCE and other contaminants on site.

2466.   That Richard Perlick knew or should have known that placing TCE on a cement slab would cause it to leach into the water supply.

2467.   That Richard Perlick knew or should have known that exposing humans to TCE without proper disposal was not safe.

2468.   That Richard Perlick did not determine if the factory's disposal of TCE onto concrete slabs posed a health risk to individuals living near the factory.

2469.   The Defendant committed one or more of the following acts and/or omissions:

    a.   Failed to test the Peredna home for TCE, TCA, PCE, DCE, and DCA;

    b.   Participated in unsafe disposal practices for TCE, TCA, PCE, DCE, and DCA;

    c.   Failed to implement safe disposal practices for TCE, TCA, PCE, DCE, and DCA;

    d.   Allowed TCE, TCA, PCE, DCE, and DCA to be released beyond into the town of Union's underground water supply;

    e.   Failed to alert and advise residents, including the Perednas, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

    f.   Failed to timely and properly warn residents, including the Perednas, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

    g.   Failed to timely and properly remove the TCA, TCE, PCE, DCE, and DCA; and/or

     h.   Failed to timely and properly protect residents, including the Perednas, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2470.   As a direct and proximate cause of one or more of the Defendant's aforesaid acts and/or omissions, hazardous chemicals were improperly released into the air, soil, and water that Linda Peredna was exposed to while living in Union.

2471.   As a further direct and proximate cause of one or more of the Defendant's negligent acts and/or omissions, the Defendants' negligent acts and omissions, Linda Peredna was caused to develop Autoimmune disease and thyroid cancer.

2472.   That as a further direct and proximate result of one or more of the Defendant's acts and/or omissions, Linda Peredna was caused to incur an increased chance in developing Autoimmune disease and thyroid cancer.

2473.   That as a further direct and proximate cause of one or more of Defendant's acts and/or omissions, Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XXXI – NEGLIGENCE
### Linda Peredna v. Richard Gustafson

2474.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2475.   That between 2000 to 2020, Richard Gustafson was an agent and/or employee of Techalloy and Central Wire.

2476.   That between 2000 to 2020, Defendant, Richard Gustafson was the production manager of Techalloy and/or Central Wire plant in Union, Illinois.

2477.   That Richard Gustafson had a duty to exercise ordinary care for those living near the plant breathing, drinking or otherwise ingesting air and water containing TCE and other contaminants from the factory.

2478.   That Richard Gustafson knew or should have known that TCE and other contaminants were unsafe to humans if they entered the water supply.

2479.   That Richard Gustafson knew or should have known that it was not safe to dispose TCE and other contaminants on site.

2480.   That Richard Gustafson knew or should have known that placing TCE on a cement slab would cause it to leach into the water supply.

2481.   That Richard Gustafson knew or should have known that exposing humans to TCE without proper disposal was not safe.

2482.   That Richard Gustafson did not determine if the factory's disposal of TCE onto concrete slabs posed a health risk to individuals living near the factory.

2483.   The Defendant committed one or more of the following acts and/or omissions:

   a.   Failed to test the Peredna home for TCE, TCA, PCE, DCE, and DCA;

   b.   Participated in unsafe disposal practices for TCE, TCA, PCE, DCE, and DCA;

   c.   Failed to implement safe disposal practices for TCE, TCA, PCE, DCE, and DCA;

   d.   Allowed TCE, TCA, PCE, DCE, and DCA to be released beyond into the town of Union's underground water supply;

    e.   Failed to alert and advise residents, including the Perednas, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

    f.   Failed to timely and properly warn residents, including the Perednas, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

    g.   Failed to timely and properly remove the TCA, TCE, PCE, DCE, and DCA; and/or

    h.   Failed to timely and properly protect residents, including the Perednas, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2484.   As a direct and proximate cause of one or more of the Defendant's aforesaid acts and/or omissions, hazardous chemicals were improperly released into the air, soil, and water that Linda Peredna was exposed to while living in Union.

2485.   As a further direct and proximate cause of one or more of the Defendant's negligent acts and/or omissions, the Defendants' negligent acts and omissions, Linda Peredna was caused to develop Autoimmune disease and thyroid cancer.

2486.   That as a further direct and proximate result of one or more of the Defendant's acts and/or omissions, Linda Peredna was caused to incur an increased chance in developing Autoimmune disease and thyroid cancer.

2487.   That as a further direct and proximate cause of one or more of Defendant's acts and/or omissions, Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XXXII – NEGLIGENCE

### *Linda Peredna v. Mike Grunthener*

2488.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2489.   That between 1990 through 2006, Mike Grunthener was an agent and/or employee of Techalloy and Central Wire.

2490.   That between 1990 through 2006, Defendant, Mike Grunthener was the production manager of Techalloy and/or Central Wire plant in Union, Illinois.

2491.   That Mike Grunthener had a duty to exercise ordinary care for those living near the plant breathing, drinking or otherwise ingesting air and water containing TCE and other contaminants from the factory.

2492.   That Mike Grunthener knew or should have known that TCE and other contaminants were unsafe to humans if they entered the water supply.

2493.   That Mike Grunthener knew or should have known that it was not safe to dispose TCE and other contaminants on site.

2494.   That Mike Grunthener knew or should have known that placing TCE on a cement slab would cause it to leach into the water supply.

2495.   That Mike Grunthener knew or should have known that exposing humans to TCE without proper disposal was not safe.

2496.   That Mike Grunthener did not determine if the factory's disposal of TCE onto concrete slabs posed a health risk to individuals living near the factory.

2497.   The Defendant committed one or more of the following acts and/or omissions:

   a.   Failed to test the Peredna home for TCE, TCA, PCE, DCE, and DCA;

   b.   Participated in unsafe disposal practices for TCE, TCA, PCE, DCE, and DCA;

c. Failed to implement safe disposal practices for TCE, TCA, PCE, DCE, and DCA;

d. Allowed TCE, TCA, PCE, DCE, and DCA to be released beyond into the town of Union's underground water supply;

e. Failed to alert and advise residents, including the Perednas, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

f. Failed to timely and properly warn residents, including the Perednas, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

g. Failed to timely and properly remove the TCA, TCE, PCE, DCE, and DCA; and/or

h. Failed to timely and properly protect residents, including the Perednas, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2498. As a direct and proximate cause of one or more of the Defendant's aforesaid acts and/or omissions, hazardous chemicals were improperly released into the air, soil, and water that Linda Peredna was exposed to while living in Union.

2499. As a further direct and proximate cause of one or more of the Defendant's negligent acts and/or omissions, the Defendants' negligent acts and omissions, Linda Peredna was caused to develop Autoimmune disease and thyroid cancer.

2500. That as a further direct and proximate result of one or more of the Defendant's acts and/or omissions, Linda Peredna was caused to incur an increased chance in developing Autoimmune disease and thyroid cancer.

2501. That as a further direct and proximate cause of one or more of Defendant's acts and/or omissions, Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XXXIII – NEGLIGENCE
### *Linda Peredna v. David Plecner*

2502.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2503.   That between 1986 and 2009, David Plecner was an agent and/or employee of Techalloy and Central Wire.

2504.   That between 1986 and 2009, Defendant, David Plecner was the environmental supervisor of Techllaoy and/or Central Wire plant in Union, Illinois.

2505.   That David Plecner had a duty to exercise ordinary care for those living near the plant breathing, drinking or otherwise ingesting air and water containing TCE and other contaminants from the factory.

2506.   That David Plecner knew or should have known that TCE and other contaminants were unsafe to humans if they entered the water supply.

2507.   That David Plecner knew or should have known that it was not safe to dispose TCE and other contaminants on site.

2508.   That David Plecner knew or should have known that placing TCE on a cement slab would cause it to leach into the water supply.

2509.   That David Plecner knew or should have known that exposing humans to TCE without proper disposal was not safe.

2510.   That David Plecner did not determine if the factory's disposal of TCE onto concrete slabs posed a health risk to individuals living near the factory.

2511.   The Defendant committed one or more of the following acts and/or omissions:

a.   Failed to test the Peredna home for TCE, TCA, PCE, DCE, and DCA;

b.   Participated in unsafe disposal practices for TCE, TCA, PCE, DCE, and DCA;

c.   Failed to implement safe disposal practices for TCE, TCA, PCE, DCE, and DCA;

d.   Allowed TCE, TCA, PCE, DCE, and DCA to be released beyond into the town of Union's underground water supply;

e.   Failed to alert and advise residents, including the Perednas, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

f.   Failed to timely and properly warn residents, including the Perednas, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

g.   Failed to timely and properly remove the TCA, TCE, PCE, DCE, and DCA; and/or

h.   Failed to timely and properly protect residents, including the Perednas, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2512.   As a direct and proximate cause of one or more of the Defendant's aforesaid acts and/or omissions, hazardous chemicals were improperly released into the air, soil, and water that Linda Peredna was exposed to while living in Union.

2513.   As a further direct and proximate cause of one or more of the Defendant's negligent acts and/or omissions, the Defendants' negligent acts and omissions, Linda Peredna was caused to develop Autoimmune disease and thyroid cancer.

2514.   That as a further direct and proximate result of one or more of the Defendant's acts and/or omissions, Linda Peredna was caused to incur an increased chance in developing Autoimmune disease and thyroid cancer.

2515.   That as a further direct and proximate cause of one or more of Defendant's acts and/or omissions, Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal

obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XXXIV – NEGLIGENCE
### Linda Peredna v. Victor Polard

2516.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2517.   That between 2002 and 2006, Victor Polard was the Vice President of Arcelormittal International America, LLC.

2518.   That between 2002 and 2006, Victor Polard was Vice President of Arcelormittal USA Foundation, Inc.

2519.   That between 2002 and 2006, Defendant, Victor Polard an agent and/or employee Techalloy and/or Central Wire plant in Union, Illinois.

2520.   That Victor Polard had a duty to exercise ordinary care for those living near the plant breathing, drinking or otherwise ingesting air and water containing TCE and other contaminants from the factory.

2521.   That Victor Polard knew or should have known that TCE and other contaminants were unsafe to humans if they entered the water supply.

2522.   That Victor Polard knew or should have known that it was not safe to dispose TCE and other contaminants on site.

2523.   That Victor Polard knew or should have known that placing TCE on a cement slab would cause it to leach into the water supply.

2524.   That Victor Polard knew or should have known that exposing humans to TCE without proper disposal was not safe.

2525.   That Victor Polard did not determine if the factory's disposal of TCE onto concrete slabs posed a health risk to individuals living near the factory.

2526.   The Defendant committed one or more of the following acts and/or omissions:

    a.   Failed to test the Peredna home for TCE, TCA, PCE, DCE, and DCA;

    b.   Participated in unsafe disposal practices for TCE, TCA, PCE, DCE, and DCA;

    c.   Failed to implement safe disposal practices for TCE, TCA, PCE, DCE, and DCA;

    d.   Allowed TCE, TCA, PCE, DCE, and DCA to be released beyond into the town of Union's underground water supply;

    e.   Failed to alert and advise residents, including the Perednas, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

    f.   Failed to timely and properly warn residents, including the Perednas, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

    g.   Failed to timely and properly remove the TCA, TCE, PCE, DCE, and DCA; and/or

    h.   Failed to timely and properly protect residents, including the Perednas, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2527.   As a direct and proximate cause of one or more of the Defendant's aforesaid acts and/or omissions, hazardous chemicals were improperly released into the air, soil, and water that Linda Peredna was exposed to while living in Union.

2528.   As a further direct and proximate cause of one or more of the Defendant's negligent acts and/or omissions, the Defendants' negligent acts and omissions, Linda Peredna was caused to develop Autoimmune disease and thyroid cancer.

2529.  That as a further direct and proximate result of one or more of the Defendant's acts and/or omissions, Linda Peredna was caused to incur an increased chance in developing Autoimmune disease and thyroid cancer.

2530.  That as a further direct and proximate cause of one or more of Defendant's acts and/or omissions, Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XXXV – NEGLIGENCE
### Linda Peredna v. Carl Reed

2531.  Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2532.  That between 1986 and 2003, Carl Reed was an agent and/or employee of Techalloy and/or Central Wire plant in Union, Illinois.

2533.  That between 1986 and 2003, Defendant, Carl Reed a Corporate Safety Officer at Techalloy and/or Central Wire plant in Union, Illinois.

2534.  That Carl Reed had a duty to exercise ordinary care for those living near the plant breathing, drinking or otherwise ingesting air and water containing TCE and other contaminants from the factory.

2535.  That Carl Reed knew or should have known that TCE and other contaminants were unsafe to humans if they entered the water supply.

2536.   That Carl Reed knew or should have known that it was not safe to dispose TCE and other contaminants on site.

2537.   That Carl Reed knew or should have known that placing TCE on a cement slab would cause it to leach into the water supply.

2538.   That Carl Reed knew or should have known that exposing humans to TCE without proper disposal was not safe.

2539.   That Carl Reed did not determine if the factory's disposal of TCE onto concrete slabs posed a health risk to individuals living near the factory.

2540.   The Defendant committed one or more of the following acts and/or omissions:

   a.   Failed to test the Peredna home for TCE, TCA, PCE, DCE, and DCA;

   b.   Participated in unsafe disposal practices for TCE, TCA, PCE, DCE, and DCA;

   c.   Failed to implement safe disposal practices for TCE, TCA, PCE, DCE, and DCA;

   d.   Allowed TCE, TCA, PCE, DCE, and DCA to be released beyond into the town of Union's underground water supply;

   e.   Failed to alert and advise residents, including the Perednas, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

   f.   Failed to timely and properly warn residents, including the Perednas, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

   g.   Failed to timely and properly remove the TCA, TCE, PCE, DCE, and DCA; and/or

   h.   Failed to timely and properly protect residents, including the Perednas, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2541.   As a direct and proximate cause of one or more of the Defendant's aforesaid acts and/or omissions, hazardous chemicals were improperly released into the air, soil, and water that Linda Peredna was exposed to while living in Union.

2542.   As a further direct and proximate cause of one or more of the Defendant's negligent acts and/or omissions, the Defendants' negligent acts and omissions, Linda Peredna was caused to develop Autoimmune disease and thyroid cancer.

2543.   That as a further direct and proximate result of one or more of the Defendant's acts and/or omissions, Linda Peredna was caused to incur an increased chance in developing Autoimmune disease and thyroid cancer.

2544.   That as a further direct and proximate cause of one or more of Defendant's acts and/or omissions, Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XXXVI – NEGLIGENCE
### Linda Peredna v. Terry Tamanauskas

2545.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2546.   That between 2000 to present, Terry Tamanauskas was an agent and/or employee of Techalloy and/or Central Wire plant in Union, Illinois.

2547.   That between 2020 to present, Defendant, Terry Tamanauskas was a General Manager at Techalloy and/or Central Wire plant in Union, Illinois.

2548.   That Terry Tamanauskas had a duty to exercise ordinary care for those living near the plant breathing, drinking or otherwise ingesting air and water containing TCE and other contaminants from the factory.

2549.   That Terry Tamanauskas knew or should have known that TCE and other contaminants were unsafe to humans if they entered the water supply.

2550.   That Terry Tamanauskas knew or should have known that it was not safe to dispose TCE and other contaminants on site.

2551.   That Terry Tamanauskas knew or should have known that placing TCE on a cement slab would cause it to leach into the water supply.

2552.   That Terry Tamanauskas knew or should have known that exposing humans to TCE without proper disposal was not safe.

2553.   That Terry Tamanauskas did not determine if the factory's disposal of TCE onto concrete slabs posed a health risk to individuals living near the factory.

2554.   The Defendant committed one or more of the following acts and/or omissions:

    a.   Failed to test the Peredna home for TCE, TCA, PCE, DCE, and DCA;

    b.   Participated in unsafe disposal practices for TCE, TCA, PCE, DCE, and DCA;

    c.   Failed to implement safe disposal practices for TCE, TCA, PCE, DCE, and DCA;

    d.   Allowed TCE, TCA, PCE, DCE, and DCA to be released beyond into the town of Union's underground water supply;

    e.   Failed to alert and advise residents, including the Perednas, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

    f.   Failed to timely and properly warn residents, including the Perednas, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

    g.   Failed to timely and properly remove the TCA, TCE, PCE, DCE, and DCA; and/or

h. Failed to timely and properly protect residents, including the Perednas, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2555. As a direct and proximate cause of one or more of the Defendant's aforesaid acts and/or omissions, hazardous chemicals were improperly released into the air, soil, and water that Linda Peredna was exposed to while living in Union.

2556. As a further direct and proximate cause of one or more of the Defendant's negligent acts and/or omissions, the Defendants' negligent acts and omissions, Linda Peredna was caused to develop Autoimmune disease and thyroid cancer.

2557. That as a further direct and proximate result of one or more of the Defendant's acts and/or omissions, Linda Peredna was caused to incur an increased chance in developing Autoimmune disease and thyroid cancer.

2558. That as a further direct and proximate cause of one or more of Defendant's acts and/or omissions, Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XXXVII – NEGLIGENCE
### Linda Peredna v. Tom Hanewald

2559. Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2560.   That between 2015 and 2018, Tom Hanewald was an agent and/or employee of Techalloy and/or Central Wire plant in Union, Illinois.

2561.   That between 2015 and 2018, Defendant, Tom Hanewald was a Vice President/Chief Administrative Officer at Techalloy and/or Central Wire plant in Union, Illinois.

2562.   That Tom Hanewald had a duty to exercise ordinary care for those living near the plant breathing, drinking or otherwise ingesting air and water containing TCE and other contaminants from the factory.

2563.   That Tom Hanewald knew or should have known that TCE and other contaminants were unsafe to humans if they entered the water supply.

2564.   That Tom Hanewald knew or should have known that it was not safe to dispose TCE and other contaminants on site.

2565.   That Tom Hanewald knew or should have known that placing TCE on a cement slab would cause it to leach into the water supply.

2566.   That Tom Hanewald knew or should have known that exposing humans to TCE without proper disposal was not safe.

2567.   That Tom Hanewald did not determine if the factory's disposal of TCE onto concrete slabs posed a health risk to individuals living near the factory.

2568.   The Defendant committed one or more of the following acts and/or omissions:

   a.   Failed to test the Peredna home for TCE, TCA, PCE, DCE, and DCA;

   b.   Participated in unsafe disposal practices for TCE, TCA, PCE, DCE, and DCA;

   c.   Failed to implement safe disposal practices for TCE, TCA, PCE, DCE, and DCA;

   d.   Allowed TCE, TCA, PCE, DCE, and DCA to be released beyond into the town of Union's underground water supply;

e. Failed to alert and advise residents, including the Perednas, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

f. Failed to timely and properly warn residents, including the Perednas, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

g. Failed to timely and properly remove the TCA, TCE, PCE, DCE, and DCA; and/or

h. Failed to timely and properly protect residents, including the Perednas, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2569. As a direct and proximate cause of one or more of the Defendant's aforesaid acts and/or omissions, hazardous chemicals were improperly released into the air, soil, and water that Linda Peredna was exposed to while living in Union.

2570. As a further direct and proximate cause of one or more of the Defendant's negligent acts and/or omissions, the Defendants' negligent acts and omissions, Linda Peredna was caused to develop Autoimmune disease and thyroid cancer.

2571. That as a further direct and proximate result of one or more of the Defendant's acts and/or omissions, Linda Peredna was caused to incur an increased chance in developing Autoimmune disease and thyroid cancer.

2572. That as a further direct and proximate cause of one or more of Defendant's acts and/or omissions, Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XXXVIII– NEGLIGENCE

*Linda Peredna v. Thiery Cremailh*

2573.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2574.   That between 1990 and 2007, Thiery Cremailh was an agent and/or employee of Techalloy and/or Central Wire.

2575.   That between 1990 and 2007, Defendant, Thiery Cremailh was an Executive at Techalloy and/or Central Wire.

2576.   That between 1990 and 2007, Defendant, Thiery Cremailh was an Executive at Arcelormittal International America, LLC.

2577.   That Thiery Cremailh had a duty to exercise ordinary care for those living near the plant breathing, drinking or otherwise ingesting air and water containing TCE and other contaminants from the factory.

2578.   That Thiery Cremailh knew or should have known that TCE and other contaminants were unsafe to humans if they entered the water supply.

2579.   That Thiery Cremailh knew or should have known that it was not safe to dispose TCE and other contaminants on site.

2580.   That Thiery Cremailh knew or should have known that placing TCE on a cement slab would cause it to leach into the water supply.

2581.   That Thiery Cremailh knew or should have known that exposing humans to TCE without proper disposal was not safe.

2582.   That Thiery Cremailh did not determine if the factory's disposal of TCE onto concrete slabs posed a health risk to individuals living near the factory.

2583.   The Defendant committed one or more of the following acts and/or omissions:

a. Failed to test the Peredna home for TCE, TCA, PCE, DCE, and DCA;

b. Participated in unsafe disposal practices for TCE, TCA, PCE, DCE, and DCA;

c. Failed to implement safe disposal practices for TCE, TCA, PCE, DCE, and DCA;

d. Allowed TCE, TCA, PCE, DCE, and DCA to be released beyond into the town of Union's underground water supply;

e. Failed to alert and advise residents, including the Perednas, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

f. Failed to timely and properly warn residents, including the Perednas, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

g. Failed to timely and properly remove the TCA, TCE, PCE, DCE, and DCA; and/or

h. Failed to timely and properly protect residents, including the Perednas, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2584.   As a direct and proximate cause of one or more of the Defendant's aforesaid acts and/or omissions, hazardous chemicals were improperly released into the air, soil, and water that Linda Peredna was exposed to while living in Union.

2585.   As a further direct and proximate cause of one or more of the Defendant's negligent acts and/or omissions, the Defendants' negligent acts and omissions, Linda Peredna was caused to develop Autoimmune disease and thyroid cancer.

2586.   That as a further direct and proximate result of one or more of the Defendant's acts and/or omissions, Linda Peredna was caused to incur an increased chance in developing Autoimmune disease and thyroid cancer.

2587.   That as a further direct and proximate cause of one or more of Defendant's acts and/or omissions, Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal

obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XXXIX – NEGLIGENCE
### *Linda Peredna v. Gunnar K. Gilberg*

2588.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2589.   That between 1990 and 1998, Gunnar Gilberg was an agent and/or employee of the Techalloy and/or Central Wire plant in Union, Illinois.

2590.   That between 2015 and 2018, Defendant, Gunnar K. Gilberg was an Executive at the Techalloy and/or Central Wire plant in Union, Illinois.

2591.   That Gunnar K. Gilberg had a duty to exercise ordinary care for those living near the plant breathing, drinking or otherwise ingesting air and water containing TCE and other contaminants from the factory.

2592.   That Gunnar K. Gilberg knew or should have known that TCE and other contaminants were unsafe to humans if they entered the water supply.

2593.   That Gunnar K. Gilberg knew or should have known that it was not safe to dispose TCE and other contaminants on site.

2594.   That Gunnar K. Gilberg knew or should have known that placing TCE on a cement slab would cause it to leach into the water supply.

2595.   That Gunnar K. Gilberg knew or should have known that exposing humans to TCE without proper disposal was not safe.

2596.   That Gunnar K. Gilberg did not determine if the factory's disposal of TCE onto concrete slabs posed a health risk to individuals living near the factory.

2597.   The Defendant committed one or more of the following acts and/or omissions:

   a.   Failed to test the Peredna home for TCE, TCA, PCE, DCE, and DCA;

   b.   Participated in unsafe disposal practices for TCE, TCA, PCE, DCE, and DCA;

   c.   Failed to implement safe disposal practices for TCE, TCA, PCE, DCE, and DCA;

   d.   Allowed TCE, TCA, PCE, DCE, and DCA to be released beyond into the town of Union's underground water supply;

   e.   Failed to alert and advise residents, including the Perednas, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

   f.   Failed to timely and properly warn residents, including the Perednas, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

   g.   Failed to timely and properly remove the TCA, TCE, PCE, DCE, and DCA; and/or

   h.   Failed to timely and properly protect residents, including the Perednas, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2598.   As a direct and proximate cause of one or more of the Defendant's aforesaid acts and/or omissions, hazardous chemicals were improperly released into the air, soil, and water that Linda Peredna was exposed to while living in Union.

2599.   As a further direct and proximate cause of one or more of the Defendant's negligent acts and/or omissions, the Defendants' negligent acts and omissions, Linda Peredna was caused to develop Autoimmune disease and thyroid cancer.

2600.   That as a further direct and proximate result of one or more of the Defendant's acts and/or omissions, Linda Peredna was caused to incur an increased chance in developing Autoimmune disease and thyroid cancer.

2601.   That as a further direct and proximate cause of one or more of Defendant's acts and/or omissions, Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

### COUNT XL – NEGLIGENCE
#### Linda Peredna v. Jean-Claude Couasnon

2602.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2603.   That between 2004 and 2006, Jean Claude Couasnon was an agent and/or employee of the Techalloy and/or Central Wire plant in Union, Illinois.

2604.   That between 2004 and 2006, Defendant, Jean Claude Couasnon was  an Executive at the Techalloy and/or Central Wire plant in Union, Illinois.

2605.   That Jean-Claude Couasnon had a duty to exercise ordinary care for those living near the plant breathing, drinking or otherwise ingesting air and water containing TCE and other contaminants from the factory.

2606.   That Jean-Claude Couasnon knew or should have known that TCE and other contaminants were unsafe to humans if they entered the water supply.

2607.   That Jean-Claude Couasnon knew or should have known that it was not safe to dispose TCE and other contaminants on site.

2608. That Jean-Claude Couasnon knew or should have known that placing TCE on a cement slab would cause it to leach into the water supply.

2609. That Jean-Claude Couasnon knew or should have known that exposing humans to TCE without proper disposal was not safe.

2610. That Jean-Claude Couasnon did not determine if the factory's disposal of TCE onto concrete slabs posed a health risk to individuals living near the factory.

2611. The Defendant committed one or more of the following acts and/or omissions:

    a.  Failed to have the Peredna home tested for TCE, TCA, PCE, DCE, and DCA;

    b.  Permitted unsafe disposal practices for TCE, TCA, PCE, DCE, and DCA;

    c.  Failed to require safe disposal practices for TCE, TCA, PCE, DCE, and DCA;

    d.  Permitted TCE, TCA, PCE, DCE, and DCA to be released beyond into the town of Union's underground water supply;

    e.  Failed to timely and properly alert and advise residents, including the Perednas, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

    f.  Failed to timely and properly warn residents, including the Perednas, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

    g.  Failed to timely and properly remove the TCA, TCE, PCE, DCE, and DCA; and/or

    h.  Failed to timely and properly protect residents, including the Perednas, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2612. As a direct and proximate cause of one or more of the Defendant's aforesaid acts and/or omissions, chemicals, including TCE, were improperly released into the air, soil, and water that Linda Peredna was exposed to while living in Union.

2613. As a further direct and proximate cause of one or more of the Defendant's negligent acts and/or omissions, the Defendants' negligent acts and omissions, Linda Peredna was caused to develop Autoimmune disease and thyroid cancer.

2614.   That as a further direct and proximate result of one or more of the Defendant's acts and/or omissions, Linda Peredna was caused to incur an increased chance in developing Autoimmune disease and thyroid cancer.

2615.   That as a further direct and proximate cause of one or more of Defendant's acts and/or omissions, Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XLI – NEGLIGENCE
### *Linda Peredna v. Jack Zuharich*

2616.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

2617.   That between 1980 and 1990, Jack Zuharich was an agent and/or employee of the Techalloy and/or Central Wire plant in Union, Illinois.

2618.   That between 1980 and 1990, Defendant, Jack Zuharich was an Executive / Chief Executive Officer at the Techalloy and/or Central Wire plant in Union, Illinois.

2619.   That Jack Zuharich had a duty to exercise ordinary care for those living near the plant breathing, drinking or otherwise ingesting air and water containing TCE and other contaminants from the factory.

2620.   That Jack Zuharich knew or should have known that TCE and other contaminants were unsafe to humans if they entered the water supply.

2621.   That Jack Zuharich knew or should have known that it was not safe to dispose TCE and other contaminants on site.

2622.   That Jack Zuharich knew or should have known that placing TCE on a cement slab would cause it to leach into the water supply.

2623.   That Jack Zuharich knew or should have known that exposing humans to TCE without proper disposal was not safe.

2624.   That Jack Zuharich did not determine if the factory's disposal of TCE onto concrete slabs posed a health risk to individuals living near the factory.

2625.   The Defendant committed one or more of the following acts and/or omissions:

   a.   Failed to have the Peredna home tested for TCE, TCA, PCE, DCE, and DCA;

   b.   Permitted unsafe disposal practices for TCE, TCA, PCE, DCE, and DCA;

   c.   Failed to require safe disposal practices for TCE, TCA, PCE, DCE, and DCA;

   d.   Permitted TCE, TCA, PCE, DCE, and DCA to be released beyond into the town of Union's underground water supply;

   e.   Failed to timely and properly alert and advise residents, including the Perednas, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

   f.   Failed to timely and properly warn residents, including the Perednas, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

   g.   Failed to timely and properly remove the TCA, TCE, PCE, DCE, and DCA; and/or

   h.   Failed to timely and properly protect residents, including the Perednas, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

2626.   As a direct and proximate cause of one or more of the Defendant's aforesaid acts and/or omissions, hazardous chemicals were improperly released into the air, soil, and water that Linda Peredna was exposed to while living in Union.

2627.   As a further direct and proximate cause of one or more of the Defendant's negligent acts and/or omissions, the Defendants' negligent acts and omissions, Linda Peredna was caused to develop Autoimmune disease and thyroid cancer.

2628.   That as a further direct and proximate result of one or more of the Defendant's acts and/or omissions, Linda Peredna was caused to incur an increased chance in developing Autoimmune disease and thyroid cancer.

2629.   That as a further direct and proximate cause of one or more of Defendant's acts and/or omissions, Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XLII – NEGLIGENCE
### Linda Peredna v. Viking Chemical Company

2630.   Plaintiff Linda Peredna repeats, realleges, and incorporates all preceding paragraphs herein.

2631.   In 1968, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

2632.   In 1968, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2633.   In 1968, Defendant, Viking Chemical Company created TCE for Techalloy.

2634.   In 1968, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

2635.   In 1968, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2636. In 1968, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

2637. In 1968, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2638. In 1968, Defendant, Viking Chemical Company created PCE for Techalloy.

2639. In 1968, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

2640. In 1968, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2641. In 1968, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

2642. In 1968, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2643. In 1968, Defendant, Viking Chemical Company created TCA for Techalloy.

2644. In 1968, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

2645. In 1968, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2646. In 1968, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

2647. In 1968, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2648. In 1968, Defendant, Viking Chemical Company created DCA for Techalloy.

2649. In 1968, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

2650. In 1968, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2651. In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

2652. In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

2653. In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

2654. In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

2655. In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

2656. In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

2657. In 1968, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

2658. In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

2659. In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

2660. In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

2661. In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

2662. In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

2663.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

2664.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

2665.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

2666.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

2667.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

2668.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

2669.    In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

2670.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

2671.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

2672.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

2673.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

2674.  In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

2675.  In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

2676.  In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

2677.  In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

2678.   In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

2679.  In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

2680.  In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

2681.  In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

2682.  In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

2683.  In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

2684.  In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

2685.  In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

2686.  In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

2687.  In 1968, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

2688.  In 1969, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

2689.  In 1969, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2690.  In 1969, Defendant, Viking Chemical Company created TCE for Techalloy.

2691.  In 1969, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

2692.  In 1969, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2693.  In 1969, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

2694.  In 1969, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2695.  In 1969, Defendant, Viking Chemical Company created PCE for Techalloy.

2696.  In 1969, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

2697.  In 1969, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2698.  In 1969, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

2699.  In 1969, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2700.  In 1969, Defendant, Viking Chemical Company created TCA for Techalloy.

2701. In 1969, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

2702. In 1969, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2703. In 1969, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

2704. In 1969, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2705. In 1969, Defendant, Viking Chemical Company created DCA for Techalloy.

2706. In 1969, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

2707. In 1969, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2708. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

2709. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

2710. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

2711. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

2712. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

2713. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

2714. In 1969, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

2715. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

2716. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

2717. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

2718. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

2719. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

2720. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

2721. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

2722. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

2723. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

2724. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

2725.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

2726.   In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

2727.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

2728.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

2729.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

2730.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

2731.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

2732.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

2733.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

2734.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

2735. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

2736. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

2737. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

2738. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

2739. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

2740. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

2741. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

2742. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

2743. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

2744. In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

2745. In 1970, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

2746. In 1970, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2747. In 1970, Defendant, Viking Chemical Company created TCE for Techalloy.

2748. In 1970, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

2749. In 1970, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2750. In 1970, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

2751. In 1970, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2752. In 1970, Defendant, Viking Chemical Company created PCE for Techalloy.

2753. In 1970, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

2754. In 1970, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2755. In 1970, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

2756. In 1970, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2757. In 1970, Defendant, Viking Chemical Company created TCA for Techalloy.

2758. In 1970, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

2759. In 1970, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2760. In 1970, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

2761. In 1970, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2762. In 1970, Defendant, Viking Chemical Company created DCA for Techalloy.

2763. In 1970, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

2764. In 1970, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2765.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

2766.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

2767.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

2768.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

2769.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

2770.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

2771.  In 1970, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

2772.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

2773.   In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

2774.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

2775. In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

2776. In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

2777. In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

2778. In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

2779. In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

2780. In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

2781. In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

2782. In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

2783. In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

2784. In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

2785. In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

2786.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

2787.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

2788.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

2789.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

2790.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

2791.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

2792.   In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

2793.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

2794.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

2795.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

2796.  In 1969, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

2797.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

2798.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

2799.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

2800.  In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

2801.   In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

2802.  In 1971, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

2803.  In 1971, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2804.  In 1971, Defendant, Viking Chemical Company created TCE for Techalloy.

2805.  In 1971, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

2806.  In 1971, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2807.  In 1971, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

2808.  In 1971, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2809.  In 1971, Defendant, Viking Chemical Company created PCE for Techalloy.

2810.  In 1971, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

2811.  In 1971, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2812. In 1971, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

2813. In 1971, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2814. In 1971, Defendant, Viking Chemical Company created TCA for Techalloy.

2815. In 1971, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

2816. In 1971, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2817. In 1971, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

2818. In 1971, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2819. In 1971, Defendant, Viking Chemical Company created DCA for Techalloy.

2820. In 1971, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

2821. In 1971, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2822. In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

2823. In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

2824. In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

2825. In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

2826. In 1970, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

2827.  In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

2828.  In 1971, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

2829.  In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

2830.    In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

2831.  In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

2832.  In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

2833.  In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

2834.  In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

2835.  In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

2836.  In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

2837. In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

2838. In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

2839. In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

2840. In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

2841. In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

2842. In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

2843. In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

2844. In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

2845. In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

2846. In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

2847. In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

2848.  In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

2849.   In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

2850.  In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

2851.  In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

2852.  In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

2853.  In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

2854.  In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

2855.  In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

2856.  In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

2857.  In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

2858.    In 1971, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

2859.    In 1972, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

2860.    In 1972, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2861.    In 1972, Defendant, Viking Chemical Company created TCE for Techalloy.

2862.    In 1972, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

2863.    In 1972, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2864.    In 1972, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

2865.    In 1972, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2866.    In 1972, Defendant, Viking Chemical Company created PCE for Techalloy.

2867.    In 1972, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

2868.    In 1972, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2869.    In 1972, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

2870.    In 1972, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2871.    In 1972, Defendant, Viking Chemical Company created TCA for Techalloy.

2872.    In 1972, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

2873.    In 1972, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2874.    In 1972, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

2875.    In 1972, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2876.    In 1972, Defendant, Viking Chemical Company created DCA for Techalloy.

2877.   In 1972, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

2878.   In 1972, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2879.   In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

2880.   In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

2881.   In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

2882.   In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

2883.   In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

2884.   In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

2885.   In 1972, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

2886.   In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

2887.   In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

2888. In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

2889. In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

2890. In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

2891. In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

2892. In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

2893. In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

2894. In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

2895. In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

2896. In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

2897. In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

2898.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

2899.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

2900.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

2901.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

2902.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

2903.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

2904.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

2905.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

2906.   In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

2907.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

2908.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

2909.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

2910.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

2911.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

2912.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

2913.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

2914.  In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

2915.   In 1972, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

2916.  In 1973, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

2917.  In 1973, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2918.  In 1973, Defendant, Viking Chemical Company created TCE for Techalloy.

2919.  In 1973, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

2920.  In 1973, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2921.  In 1973, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

2922.  In 1973, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2923.   In 1973, Defendant, Viking Chemical Company created PCE for Techalloy.

2924.   In 1973, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

2925.   In 1973, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2926.   In 1973, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

2927.   In 1973, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2928.   In 1973, Defendant, Viking Chemical Company created TCA for Techalloy.

2929.   In 1973, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

2930.   In 1973, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2931.   In 1973, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

2932.   In 1973, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2933.   In 1973, Defendant, Viking Chemical Company created DCA for Techalloy.

2934.   In 1973, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

2935.   In 1973, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2936.   In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

2937.   In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

2938.   In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

2939. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

2940. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

2941. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

2942. In 1973, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

2943. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

2944. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

2945. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

2946. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

2947. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

2948. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

2949. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

2950. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

2951. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

2952. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

2953. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

2954. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

2955. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

2956. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

2957. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

2958. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

2959. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

2960. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

2961. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

2962. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

2963. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

2964. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

2965. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

2966. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

2967. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

2968. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

2969. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

2970. In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

2971.   In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

2972.   In 1973, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

2973.   In 1974, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

2974.   In 1974, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2975.   In 1974, Defendant, Viking Chemical Company created TCE for Techalloy.

2976.   In 1974, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

2977.   In 1974, Defendant, Viking Chemical Company distributed TCE to Techalloy.

2978.   In 1974, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

2979.   In 1974, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2980.   In 1974, Defendant, Viking Chemical Company created PCE for Techalloy.

2981.   In 1974, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

2982.   In 1974, Defendant, Viking Chemical Company distributed PCE to Techalloy.

2983.   In 1974, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

2984.   In 1974, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2985.   In 1974, Defendant, Viking Chemical Company created TCA for Techalloy.

2986.   In 1974, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

2987.   In 1974, Defendant, Viking Chemical Company distributed TCA to Techalloy.

2988.   In 1974, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

2989.   In 1974, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2990.   In 1974, Defendant, Viking Chemical Company created DCA for Techalloy.

2991.   In 1974, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

2992.   In 1974, Defendant, Viking Chemical Company distributed DCA to Techalloy.

2993.   In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

2994.   In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

2995.   In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

2996.   In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

2997.   In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

2998.   In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

2999.   In 1974, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

3000.   In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

3001.   In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

3002.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

3003.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

3004.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

3005.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

3006.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

3007.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

3008.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

3009.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

3010.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

3011.   In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

3012.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

3013.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

3014.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

3015.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

3016.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

3017.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

3018.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

3019.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

3020.   In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

3021.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

3022.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

3023.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

3024.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

3025.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

3026.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

3027.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

3028.  In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

3029.   In 1974, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

3030.  In 1975, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

3031.  In 1975, Defendant, Viking Chemical Company distributed TCE to Techalloy.

3032.  In 1975, Defendant, Viking Chemical Company created TCE for Techalloy.

3033.  In 1975, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

3034.  In 1975, Defendant, Viking Chemical Company distributed TCE to Techalloy.

3035.  In 1975, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

3036.  In 1975, Defendant, Viking Chemical Company distributed PCE to Techalloy.

3037.  In 1975, Defendant, Viking Chemical Company created PCE for Techalloy.

3038.  In 1975, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

3039.  In 1975, Defendant, Viking Chemical Company distributed PCE to Techalloy.

3040.  In 1975, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

3041.  In 1975, Defendant, Viking Chemical Company distributed TCA to Techalloy.

3042.  In 1975, Defendant, Viking Chemical Company created TCA for Techalloy.

3043.  In 1975, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

3044.  In 1975, Defendant, Viking Chemical Company distributed TCA to Techalloy.

3045.  In 1975, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

3046.  In 1975, Defendant, Viking Chemical Company distributed DCA to Techalloy.

3047.  In 1975, Defendant, Viking Chemical Company created DCA for Techalloy.

3048.  In 1975, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

3049.  In 1975, Defendant, Viking Chemical Company distributed DCA to Techalloy.

3050.  In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

3051.  In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

3052.  In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

3053.  In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

3054.  In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

3055.  In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

3056.  In 1975, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

3057.  In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

3058.   In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

3059.  In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

3060.  In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

3061.  In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

3062. In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

3063. In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

3064. In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

3065. In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

3066. In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

3067. In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

3068. In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

3069. In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

3070. In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

3071. In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

3072. In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

3073.  In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

3074.  In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

3075.  In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

3076.  In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

3077.   In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

3078.  In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

3079.  In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

3080.  In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

3081.  In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

3082.  In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

3083.  In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

3084. In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

3085. In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

3086. In 1975, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

3087. In 1976, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

3088. In 1976, Defendant, Viking Chemical Company distributed TCE to Techalloy.

3089. In 1976, Defendant, Viking Chemical Company created TCE for Techalloy.

3090. In 1976, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

3091. In 1976, Defendant, Viking Chemical Company distributed TCE to Techalloy.

3092. In 1976, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

3093. In 1976, Defendant, Viking Chemical Company distributed PCE to Techalloy.

3094. In 1976, Defendant, Viking Chemical Company created PCE for Techalloy.

3095. In 1976, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

3096. In 1976, Defendant, Viking Chemical Company distributed PCE to Techalloy.

3097. In 1976, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

3098. In 1976, Defendant, Viking Chemical Company distributed TCA to Techalloy.

3099. In 1976, Defendant, Viking Chemical Company created TCA for Techalloy.

3100. In 1976, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

3101. In 1976, Defendant, Viking Chemical Company distributed TCA to Techalloy.

3102. In 1976, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

3103. In 1976, Defendant, Viking Chemical Company distributed DCA to Techalloy.

3104. In 1976, Defendant, Viking Chemical Company created DCA for Techalloy.

3105. In 1976, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

3106. In 1976, Defendant, Viking Chemical Company distributed DCA to Techalloy.

3107. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

3108. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

3109. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

3110. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

3111. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

3112. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

3113. In 1976, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

3114.   In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

3115.    In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

3116.   In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

3117.   In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

3118.   In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

3119.   In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

3120.   In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

3121.   In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

3122.   In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

3123.   In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

3124.  In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

3125.   In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

3126.  In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

3127.  In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

3128.  In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

3129.  In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

3130.  In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

3131.  In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

3132.  In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

3133.  In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

3134. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

3135. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

3136. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

3137. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

3138. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

3139. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

3140. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

3141. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

3142. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

3143. In 1976, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

3144. In 1977, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

3145. In 1977, Defendant, Viking Chemical Company distributed TCE to Techalloy.

3146.   In 1977, Defendant, Viking Chemical Company created TCE for Techalloy.

3147.   In 1977, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

3148.   In 1977, Defendant, Viking Chemical Company distributed TCE to Techalloy.

3149.   In 1977, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

3150.   In 1977, Defendant, Viking Chemical Company distributed PCE to Techalloy.

3151.   In 1977, Defendant, Viking Chemical Company created PCE for Techalloy.

3152.   In 1977, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

3153.   In 1977, Defendant, Viking Chemical Company distributed PCE to Techalloy.

3154.   In 1977, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

3155.   In 1977, Defendant, Viking Chemical Company distributed TCA to Techalloy.

3156.   In 1977, Defendant, Viking Chemical Company created TCA for Techalloy.

3157.   In 1977, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

3158.   In 1977, Defendant, Viking Chemical Company distributed TCA to Techalloy.

3159.   In 1977, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

3160.   In 1977, Defendant, Viking Chemical Company distributed DCA to Techalloy.

3161.   In 1977, Defendant, Viking Chemical Company created DCA for Techalloy.

3162.   In 1977, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

3163.   In 1977, Defendant, Viking Chemical Company distributed DCA to Techalloy.

3164.   In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

3165.   In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

3166.   In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

3167.   In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

3168.   In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

3169.   In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

3170.   In 1977, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

3171.   In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

3172.   In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

3173.   In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

3174.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

3175.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

3176.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

3177.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

3178.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

3179.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

3180.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

3181.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

3182.   In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

3183.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

3184.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

3185.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

3186.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

3187.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

3188.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

3189.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

3190.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

3191.   In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

3192.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

3193.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

3194.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

3195.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

3196.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

3197.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

3198.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

3199.  In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

3200.   In 1977, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

3201.  In 1978, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

3202.  In 1978, Defendant, Viking Chemical Company distributed TCE to Techalloy.

3203.  In 1978, Defendant, Viking Chemical Company created TCE for Techalloy.

3204.  In 1978, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

3205.  In 1978, Defendant, Viking Chemical Company distributed TCE to Techalloy.

3206.  In 1978, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

3207.  In 1978, Defendant, Viking Chemical Company distributed PCE to Techalloy.

3208.  In 1978, Defendant, Viking Chemical Company created PCE for Techalloy.

3209.  In 1978, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

3210.  In 1978, Defendant, Viking Chemical Company distributed PCE to Techalloy.

3211. In 1978, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

3212. In 1978, Defendant, Viking Chemical Company distributed TCA to Techalloy.

3213. In 1978, Defendant, Viking Chemical Company created TCA for Techalloy.

3214. In 1978, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

3215. In 1978, Defendant, Viking Chemical Company distributed TCA to Techalloy.

3216. In 1978, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

3217. In 1978, Defendant, Viking Chemical Company distributed DCA to Techalloy.

3218. In 1978, Defendant, Viking Chemical Company created DCA for Techalloy.

3219. In 1978, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

3220. In 1978, Defendant, Viking Chemical Company distributed DCA to Techalloy.

3221. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

3222. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

3223. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

3224. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

3225. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

3226. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

3227. In 1978, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

3228. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

3229. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

3230. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

3231. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

3232. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

3233. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

3234. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

3235. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

3236.  In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

3237.  In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

3238.  In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

3239.   In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

3240.  In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

3241.  In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

3242.  In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

3243.  In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

3244.  In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

3245.  In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

3246.  In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

3247. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

3248. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

3249. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

3250. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

3251. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

3252. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

3253. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

3254. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

3255. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

3256. In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

3257.   In 1978, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

3258.   In 1979, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

3259.   In 1979, Defendant, Viking Chemical Company distributed TCE to Techalloy.

3260.   In 1979, Defendant, Viking Chemical Company created TCE for Techalloy.

3261.   In 1979, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

3262.   In 1979, Defendant, Viking Chemical Company distributed TCE to Techalloy.

3263.   In 1979, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

3264.   In 1979, Defendant, Viking Chemical Company distributed PCE to Techalloy.

3265.   In 1979, Defendant, Viking Chemical Company created PCE for Techalloy.

3266.   In 1979, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

3267.   In 1979, Defendant, Viking Chemical Company distributed PCE to Techalloy.

3268.   In 1979, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

3269.   In 1979, Defendant, Viking Chemical Company distributed TCA to Techalloy.

3270.   In 1979, Defendant, Viking Chemical Company created TCA for Techalloy.

3271.   In 1979, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

3272.   In 1979, Defendant, Viking Chemical Company distributed TCA to Techalloy.

3273.   In 1979, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

3274.   In 1979, Defendant, Viking Chemical Company distributed DCA to Techalloy.

3275.   In 1979, Defendant, Viking Chemical Company created DCA for Techalloy.

3276. In 1979, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

3277. In 1979, Defendant, Viking Chemical Company distributed DCA to Techalloy.

3278. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

3279. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

3280. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

3281. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

3282. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

3283. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

3284. In 1979, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

3285. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

3286. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

3287. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

3288. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

3289. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

3290. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

3291. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

3292. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

3293. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

3294. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

3295. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

3296. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

3297. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

3298. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

3299. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

3300. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

3301. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

3302. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

3303. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

3304. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

3305. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

3306. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

3307. In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

3308.   In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

3309.   In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

3310.   In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

3311.   In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

3312.   In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

3313.   In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

3314.    In 1979, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

3315.   In 1980, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

3316.   In 1980, Defendant, Viking Chemical Company distributed TCE to Techalloy.

3317.   In 1980, Defendant, Viking Chemical Company created TCE for Techalloy.

3318.   In 1980, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

3319.   In 1980, Defendant, Viking Chemical Company distributed TCE to Techalloy.

3320.   In 1980, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

3321.   In 1980, Defendant, Viking Chemical Company distributed PCE to Techalloy.

3322.   In 1980, Defendant, Viking Chemical Company created PCE for Techalloy.

3323.   In 1980, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

3324.   In 1980, Defendant, Viking Chemical Company distributed PCE to Techalloy.

3325.   In 1980, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

3326.   In 1980, Defendant, Viking Chemical Company distributed TCA to Techalloy.

3327.   In 1980, Defendant, Viking Chemical Company created TCA for Techalloy.

3328.   In 1980, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

3329.   In 1980, Defendant, Viking Chemical Company distributed TCA to Techalloy.

3330.   In 1980, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

3331.   In 1980, Defendant, Viking Chemical Company distributed DCA to Techalloy.

3332.   In 1980, Defendant, Viking Chemical Company created DCA for Techalloy.

3333.   In 1980, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

3334.   In 1980, Defendant, Viking Chemical Company distributed DCA to Techalloy.

3335.   In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

3336.   In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

3337.   In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

3338.  In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

3339.  In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

3340.  In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

3341.  In 1980, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

3342.  In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

3343.   In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

3344.  In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

3345.  In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

3346.  In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

3347.  In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

3348. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

3349. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

3350. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

3351. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

3352. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

3353. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

3354. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

3355. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

3356. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

3357. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

3358. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

3359. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

3360. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

3361. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

3362. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

3363. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

3364. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

3365. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

3366. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

3367. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

3368. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

3369. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

3370. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

3371. In 1980, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

3372. In 1981, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

3373. In 1981, Defendant, Viking Chemical Company distributed TCE to Techalloy.

3374. In 1981, Defendant, Viking Chemical Company created TCE for Techalloy.

3375. In 1981, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

3376. In 1981, Defendant, Viking Chemical Company distributed TCE to Techalloy.

3377. In 1981, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

3378. In 1981, Defendant, Viking Chemical Company distributed PCE to Techalloy.

3379. In 1981, Defendant, Viking Chemical Company created PCE for Techalloy.

3380. In 1981, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

3381. In 1981, Defendant, Viking Chemical Company distributed PCE to Techalloy.

3382. In 1981, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

3383. In 1981, Defendant, Viking Chemical Company distributed TCA to Techalloy.

3384. In 1981, Defendant, Viking Chemical Company created TCA for Techalloy.

3385. In 1981, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

3386. In 1981, Defendant, Viking Chemical Company distributed TCA to Techalloy.

3387. In 1981, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

3388. In 1981, Defendant, Viking Chemical Company distributed DCA to Techalloy.

3389. In 1981, Defendant, Viking Chemical Company created DCA for Techalloy.

3390. In 1981, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

3391. In 1981, Defendant, Viking Chemical Company distributed DCA to Techalloy.

3392. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

3393. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

3394. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

3395. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

3396. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

3397. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

3398. In 1981, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

3399. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

3400. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

3401. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

3402. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

3403. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

3404. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

3405. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

3406. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

3407. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

3408. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

3409. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

3410.   In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

3411.   In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

3412.   In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

3413.   In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

3414.   In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

3415.   In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

3416.   In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

3417.   In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

3418.   In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

3419.   In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

3420.   In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

3421. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

3422. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

3423. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

3424. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

3425. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

3426. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

3427. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

3428. In 1981, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

3429. In 1982, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

3430. In 1982, Defendant, Viking Chemical Company distributed TCE to Techalloy.

3431. In 1982, Defendant, Viking Chemical Company created TCE for Techalloy.

3432. In 1982, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

3433. In 1982, Defendant, Viking Chemical Company distributed TCE to Techalloy.

3434.   In 1982, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

3435.   In 1982, Defendant, Viking Chemical Company distributed PCE to Techalloy.

3436.   In 1982, Defendant, Viking Chemical Company created PCE for Techalloy.

3437.   In 1982, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

3438.   In 1982, Defendant, Viking Chemical Company distributed PCE to Techalloy.

3439.   In 1982, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

3440.   In 1982, Defendant, Viking Chemical Company distributed TCA to Techalloy.

3441.   In 1982, Defendant, Viking Chemical Company created TCA for Techalloy.

3442.   In 1982, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

3443.   In 1982, Defendant, Viking Chemical Company distributed TCA to Techalloy.

3444.   In 1982, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

3445.   In 1982, Defendant, Viking Chemical Company distributed DCA to Techalloy.

3446.   In 1982, Defendant, Viking Chemical Company created DCA for Techalloy.

3447.   In 1982, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

3448.   In 1982, Defendant, Viking Chemical Company distributed DCA to Techalloy.

3449.   In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

3450.   In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

3451. In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

3452. In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

3453. In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

3454. In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

3455. In 1982, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

3456. In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

3457. In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

3458. In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

3459. In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

3460. In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

3461.  In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

3462.  In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

3463.  In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

3464.  In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

3465.  In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

3466.  In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

3467.   In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

3468.  In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

3469.  In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

3470.  In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

3471.  In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

3472.  In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

3473.  In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

3474.  In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

3475.  In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

3476.  In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

3477.  In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

3478.  In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

3479.  In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

3480.  In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

3481.  In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

3482.  In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

3483. In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

3484. In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

3485. In 1982, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

3486. In 1983, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

3487. In 1983, Defendant, Viking Chemical Company distributed TCE to Techalloy.

3488. In 1983, Defendant, Viking Chemical Company created TCE for Techalloy.

3489. In 1983, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

3490. In 1983, Defendant, Viking Chemical Company distributed TCE to Techalloy.

3491. In 1983, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

3492. In 1983, Defendant, Viking Chemical Company distributed PCE to Techalloy.

3493. In 1983, Defendant, Viking Chemical Company created PCE for Techalloy.

3494. In 1983, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

3495. In 1983, Defendant, Viking Chemical Company distributed PCE to Techalloy.

3496. In 1983, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

3497. In 1983, Defendant, Viking Chemical Company distributed TCA to Techalloy.

3498. In 1983, Defendant, Viking Chemical Company created TCA for Techalloy.

3499.  In 1983, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

3500.  In 1983, Defendant, Viking Chemical Company distributed TCA to Techalloy.

3501.  In 1983, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

3502.  In 1983, Defendant, Viking Chemical Company distributed DCA to Techalloy.

3503.  In 1983, Defendant, Viking Chemical Company created DCA for Techalloy.

3504.  In 1983, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

3505.  In 1983, Defendant, Viking Chemical Company distributed DCA to Techalloy.

3506.  In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

3507.  In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

3508.  In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

3509.  In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

3510.  In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

3511.  In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

3512.  In 1983, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

3513. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

3514. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

3515. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

3516. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

3517. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

3518. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

3519. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

3520. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

3521. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

3522. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

3523.  In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

3524.   In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

3525.  In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

3526.  In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

3527.  In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

3528.  In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

3529.  In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

3530.  In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

3531.  In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

3532.  In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

3533. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

3534. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

3535. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

3536. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

3537. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

3538. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

3539. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

3540. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

3541. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

3542. In 1983, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

3543. In 1984, Defendant, Viking Chemical Company manufactured TCE for Techalloy.

3544. In 1984, Defendant, Viking Chemical Company distributed TCE to Techalloy.

3545. In 1984, Defendant, Viking Chemical Company created TCE for Techalloy.

3546. In 1984, Defendant, Viking Chemical Company placed TCE into the stream of commerce.

3547. In 1984, Defendant, Viking Chemical Company distributed TCE to Techalloy.

3548. In 1984, Defendant, Viking Chemical Company manufactured PCE for Techalloy.

3549. In 1984, Defendant, Viking Chemical Company distributed PCE to Techalloy.

3550. In 1984, Defendant, Viking Chemical Company created PCE for Techalloy.

3551. In 1984, Defendant, Viking Chemical Company placed PCE into the stream of commerce.

3552. In 1984, Defendant, Viking Chemical Company distributed PCE to Techalloy.

3553. In 1984, Defendant, Viking Chemical Company manufactured TCA for Techalloy.

3554. In 1984, Defendant, Viking Chemical Company distributed TCA to Techalloy.

3555. In 1984, Defendant, Viking Chemical Company created TCA for Techalloy.

3556. In 1984, Defendant, Viking Chemical Company placed TCA into the stream of commerce.

3557. In 1984, Defendant, Viking Chemical Company distributed TCA to Techalloy.

3558. In 1984, Defendant, Viking Chemical Company manufactured DCA for Techalloy.

3559. In 1984, Defendant, Viking Chemical Company distributed DCA to Techalloy.

3560. In 1984, Defendant, Viking Chemical Company created DCA for Techalloy.

3561. In 1984, Defendant, Viking Chemical Company placed DCA into the stream of commerce.

3562. In 1984, Defendant, Viking Chemical Company distributed DCA to Techalloy.

3563. In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE was toxic.

3564. In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE was toxic.

3565. In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was carcinogenic.

3566. In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was carcinogenic.

3567. In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCE was not safe for humans.

3568. In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCE was not safe for humans.

3569. In 1984, Defendant Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly contained.

3570. In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly contained.

3571. In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCE could leach into the ground water, if not properly disposed of.

3572. In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCE could leach into the ground water, if not properly disposed of.

3573.   In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE was toxic.

3574.   In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE was toxic.

3575.   In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was carcinogenic.

3576.   In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was carcinogenic.

3577.   In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that PCE was not safe for humans.

3578.   In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that PCE was not safe for humans.

3579.   In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly contained.

3580.   In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that PCE could leach into the ground water, if not properly contained.

3581.    In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that PCE could leach into the ground water, if not properly disposed of.

3582.   In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA was toxic.

3583.   In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA was toxic.

3584.  In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was carcinogenic.

3585.  In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was carcinogenic.

3586.  In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that TCA was not safe for humans.

3587.  In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that TCA was not safe for humans.

3588.  In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly contained.

3589.  In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that TCA could leach into the ground water, if not properly contained.

3590.   In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that TCA could leach into the ground water, if not properly disposed of.

3591.  In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE was toxic.

3592.  In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE was toxic.

3593.  In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was carcinogenic.

3594.  In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was carcinogenic.

3595.  In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents knew that DCE was not safe for humans.

3596.  In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents should have known that DCE was not safe for humans.

3597.  In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly contained.

3598.  In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, should have known that DCE could leach into the ground water, if not properly contained.

3599.   In 1984, Defendant, Viking Chemical Company, by and through its principals and/or agents, knew that DCE could leach into the ground water, if not properly disposed of.

3600.  At all relevant times, it was the duty of the Defendant to exercise a reasonable standard of care for Linda Peredna, including, but not limited to, the following circumstances:

   a.  To warn the consumers of TCE, including Techalloy, of the health hazards of TCE;

   b.  To warn the consumers of TCE, including Techalloy, of the proper disposal practices of TCE;

   c.  To warn the consumers of TCE, including Techalloy, of the cancers TCE is linked to;

   d.  To warn the consumers of TCE, including Techalloy, that TCE is a carcinogen while transmitted in the air, soil, and water;

   e.  To warn the consumers of TCE, including Techalloy, that they needed to warn the Village of Union of their use of TCE before starting to use the carcinogen;

   f.  To warn the consumers of TCE, including Techalloy, that they needed to warn the neighboring residents, schools, operators of the public well water in the Village of Union, and other government entities that Techalloy would be using TCE;

   g.  To ensure that the consumers of TCE, including Techalloy, had a proper, safe and appropriate practice in place to dispose of TCE;

h. To ensure that the consumers of TCE, including Techalloy, were offered services to properly and safely dispose of TCE if they were unaware how to do so;

3601. The Defendant committed one or more of the following acts and/or omissions:

a. Failed to warn Techalloy that TCE was a carcinogen;

b. Failed to warn Techalloy that TCE exposure posed health hazards;

c. Failed to warn Techalloy that TCE exposure is linked to cancer, including non-hodgkins lymphoma;

d. Failed to warn Techalloy to give notice to the Village of Union, Evergreen Elementary, and the Peredna residence they would be using TCE;

e. Failed to warn Techalloy that TCE has cancer causing effects that are admitted through the soil;

f. Failed to warn Techalloy that TCE has cancer causing effects that are admitted through the air;

g. Failed to warn Techalloy that TCE has cancer causing effects that are admitted through groundwater;

h. Failed to ensure that Techalloy was properly disposing of TCE;

i. Failed to implement a system with its consumer, Techalloy, that it was properly disposing of TCE;

j. Failed to offer a proper and safe disposal practice of TCE;

k. Failed to advise Techalloy of the proper and safe disposal practice of TCE;

l. Failed to advise Techalloy of the risks of improper disposal of TCE;

m. Failed to advise Techalloy of the risks of TCE emission;

n. Failed to provide Techalloy with the means and methods to properly dispose of TCE;

o. Prioritized profits or safety by selling Techalloy TCE for a decade without ensuring Techalloy had a safe disposal practice;

p. Failed to warn the Village of Union that a consumer purchased TCE in their town; and/or

q. Failed to warn the Peredna residence that a neighboring manufacturing plant purchased their TCE;

r. Continued to sell TCE and other VOCs to Techalloy when they knew or should have known that Techalloy did not have safe and effective disposal systems.

3602. As a direct and proximate cause of the Defendant's foregoing negligent acts and omissions, carcinogens were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Peredna residence.

3603. As a direct and proximate cause of the Defendants' negligent acts and omissions, Linda Peredna's body was exposed to VOCs, including TCE, which were a proximate cause of her development of Autoimmune disease and thyroid cancer.

3604. That as a further direct and proximate result of the aforesaid injuries, Plaintiff Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XLIII – NEGLIGENCE
### Linda Peredna v. Weston Solutions, Inc.

3605. Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

3606.   That from 1986 to 1996, Techalloy retained Defendant, Weston Solutions, Inc., to remediate the air, water and soil of TCE, TCA, PCE, DCE, and DCA in the town of Union, Illinois.

3607.   Weston Solutions, Inc., had a duty to exercise ordinary care for the health, safety, and well-being of Linda Peredna and all those living and working in Union, Illinois.

3608.   At all times relevant, Defendant knew or should have known that TCE, TCA, PCE, DCE, and DCA emissions from Techalloy would have a toxic, poisonous and highly deleterious defect upon the health, safety, and well-being of Dana and persons exposed to it.

3609.   The Defendant committed one or more of the following acts and/or omissions:

   a.   Failed to timely test the Peredna home for TCE, TCA, PCE, DCE, and DCA;

   b.   Failed to alert and advise residents, including the Perednas, that VOCs, including TCE, TCA, PCA, DCE, and DCA had entered the ground water;

   c.   Failed to timely and properly warn residents, including the Perednas, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

   d.   Failed to timely and properly implement an effective remediation plan for the soil, ground water and vapors associated with TCE, TCA, PCE, DCE, and DCA;

   e.   Failed to timely and properly remediate the TCA, TCE, PCE, DCE, and DCA; and/or

   f.   Failed to timely and properly protect residents, including the Perednas, from the harmful effects of TCA, TCE, PCE, DCE, and DCA.

3610.   As a direct and proximate cause of the Defendant's foregoing acts and omissions, carcinogens were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Peredna residence.

3611.  As a direct and proximate cause of the Defendant's foregoing acts and omissions, chemicals remain in the environment, which subsequently migrate from the Defendant's properties into the air, soil, and water in inherent to the use and enjoyment of the Peredna Residence and Union Illinois, collectively.

3612.  As a direct and proximate cause of the Defendants' negligent acts and omissions, Linda Peredna's body was exposed to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which were a proximate cause in her development of Autoimmune disease and thyroid cancer.

3613.  As a direct and proximate cause of the Defendants' negligent acts and omissions, TCE, TCE, PCE, DCE, and DCA remain in the environment which expose Linda Peredna and residents of Union, Illinois to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which can result in serious and permanent injuries to health.

3614.  That as a further direct and proximate result of the aforesaid injuries, Plaintiff Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XLIV – NEGLIGENCE
### Linda Peredna v. Matrix Environmental

3615.  Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

3616.   That from 2000 through 2008, Techalloy retained Defendant, Matrix Environmental, Inc., to remediate the air, water and soil of TCE, TCA, PCE, DCE, and DCA in the town of Union, Illinois.

3617.   Matrix Environmental, Inc., had a duty to exercise ordinary care for the health, safety, and well-being of Linda Peredna and all those living and working in Union, Illinois.

3618.   At all times relevant, Defendant knew or should have known that TCE, TCA, PCE, DCE, and DCA emissions from Techalloy would have a toxic, poisonous and highly deleterious defect upon the health, safety, and well-being of Dana and persons exposed to it.

3619.   The Defendant committed one or more of the following acts and/or omissions:

    a.   Failed to timely test the Peredna home for TCE, TCA, PCE, DCE, and DCA;

    b.   Failed to alert and advise residents, including the Perednas, that VOCs, including TCE, TCA, PCA, DCE, and DCA had entered the ground water;

    c.   Failed to timely and properly warn residents, including the Perednas, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

    d.   Failed to timely and properly implement an effective remediation plan for the soil, ground water and vapors associated with TCE, TCA, PCE, DCE, and DCA;

    e.   Failed to timely and properly remediate the TCA, TCE, PCE, DCE, and DCA; and/or

    f.   Failed to timely and properly protect residents, including the Perednas, from the harmful effects of TCA, TCE, PCE, DCE, and DCA.

3620.   As a direct and proximate cause of the Defendant's foregoing acts and omissions, carcinogens were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Peredna residence.

3621.   As a direct and proximate cause of the Defendant's foregoing acts and omissions, chemicals remain in the environment, which subsequently migrate from the Defendant's properties

into the air, soil, and water in inherent to the use and enjoyment of the Peredna Residence and Union Illinois, collectively.

3622. As a direct and proximate cause of the Defendants' acts and omissions, Linda Peredna's body was exposed to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which were a proximate cause in her development of Autoimmune disease and thyroid cancer.

3623. As a direct and proximate cause of the Defendants' negligent acts and omissions, TCE, TCE, PCE, DCE, and DCA remain in the environment which expose Linda Peredna and residents of Union, Illinois to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which can result in serious and permanent injuries to health.

3624. That as a further direct and proximate result of the aforesaid injuries, Plaintiff Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XLV – NEGLIGENCE
### *Linda Peredna v. Autmnwood ESH Consultants, Inc.*

3625. Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

3626. That from 2008 through present, Central Wire and Techalloy retained Defendant, Autmnwood ESH Consultants, Inc., to remediate the air, water and soil of TCE, TCA, PCE, DCE, and DCA in the town of Union, Illinois.

3627.   Autmnwood ESH Consultants, Inc., had a duty to exercise ordinary care for the health, safety, and well-being of Linda Peredna and all those living and working in Union, Illinois.

3628.   At all times relevant, Defendant knew or should have known that TCE, TCA, PCE, DCE, and DCA emissions from Techalloy would have a toxic, poisonous and highly deleterious defect upon the health, safety, and well-being of Dana and persons exposed to it.

3629.   The Defendant committed one or more of the following acts and/or omissions:

a. Failed to timely test the Peredna home for TCE, TCA, PCE, DCE, and DCA;

b. Failed to alert and advise residents, including the Perednas, that VOCs, including TCE, TCA, PCA, DCE, and DCA had entered the ground water;

c. Failed to timely and properly warn residents, including the Perednas, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

d. Failed to timely and properly implement an effective remediation plan for the soil, ground water and vapors associated with TCE, TCA, PCE, DCE, and DCA;

e. Failed to timely and properly remediate the TCA, TCE, PCE, DCE, and DCA; and/or

f. Failed to timely and properly protect residents, including the Perednas, from the harmful effects of TCA, TCE, PCE, DCE, and DCA.

3630.   As a direct and proximate cause of the Defendant's foregoing acts and omissions, carcinogens were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Peredna residence.

3631.   As a direct and proximate cause of the Defendant's foregoing  acts and omissions, chemicals remain in the environment, which subsequently migrate from the Defendant's properties into the air, soil, and water in inherent to the use and enjoyment of the Peredna Residence and Union Illinois, collectively.

3632.   As a direct and proximate cause of the Defendants' negligent acts and omissions, Linda Peredna's body was exposed to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which were a proximate cause in her development of Autoimmune disease and thyroid cancer.

3633.   As a direct and proximate cause of the Defendants' negligent acts and omissions, TCE, TCE, PCE, DCE, and DCA remain in the environment which expose Linda Peredna and residents of Union, Illinois to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which can result in serious and permanent injuries to health.

3634.   That as a further direct and proximate result of the aforesaid injuries, Plaintiff Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XLVI – NEGLIGENCE
### *Linda Peredna v. Antea USA, Inc.*

3635.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

3636.   That from 1990 through 2000, Techalloy retained Defendant, InteGREYted, Inc., doing business as Antea USA, Inc., to remediate the air, water and soil of TCE, TCA, PCE, DCE, and DCA in the town of Union, Illinois.

3637.   Antea USA, Inc., had a duty to exercise ordinary care for the health, safety, and well-being of Linda Peredna and all those living and working in Union, Illinois.

3638.   At all times relevant, Defendant knew or should have known that TCE, TCA, PCE, DCE, and DCA emissions from Techalloy would have a toxic, poisonous and highly deleterious defect upon the health, safety, and well-being of Dana and persons exposed to it.

3639.   The Defendant committed one or more of the following acts and/or omissions:

   a.   Failed to timely test the Peredna home for TCE, TCA, PCE, DCE, and DCA;

   b.   Failed to alert and advise residents, including the Perednas, that VOCs, including TCE, TCA, PCA, DCE, and DCA had entered the ground water;

   c.   Failed to timely and properly warn residents, including the Perednas, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

   d.   Failed to timely and properly implement an effective remediation plan for the soil, ground water and vapors associated with TCE, TCA, PCE, DCE, and DCA;

   e.   Failed to timely and properly remediate the TCA, TCE, PCE, DCE, and DCA; and/or

   f.   Failed to timely and properly protect residents, including the Perednas, from the harmful effects of TCA, TCE, PCE, DCE, and DCA.

3640.   As a direct and proximate cause of the Defendant's foregoing acts and omissions, carcinogens were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Peredna residence.

3641.   As a direct and proximate cause of the Defendant's foregoing acts and omissions, carcinogens remain in the environment, which subsequently migrate from the Defendant's properties into the air, soil, and water in inherent to the use and enjoyment of the Peredna Residence and Union Illinois, collectively.

3642.   As a direct and proximate cause of the Defendants' negligent acts and omissions, Linda Peredna's body was exposed to TCE, TCE, PCE, DCE, and DCA at such lengths, and for

such amounts, which were a proximate cause in her development of Autoimmune disease and thyroid cancer.

3643.   As a direct and proximate cause of the Defendants' negligent acts and omissions, TCE, TCE, PCE, DCE, and DCA remain in the environment which expose Linda Peredna and residents of Union, Illinois to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which can result in serious and permanent injuries to health.

3644.   That as a further direct and proximate result of the aforesaid injuries, Plaintiff Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XLVII – NEGLIGENCE
### *Linda Peredna v. John W. Thorsen*

3645.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

3646.   That from 1981 through the present, Techalloy retained Defendant, John W. Thorsen, P.E., to remediate the air, water and soil of TCE, TCA, PCE, DCE, and DCA in the town of Union, Illinois.

3647.   At all times relevant John W. Thorsen had control of remediation efforts.

3648.   John W. Thorsen is a current principal of owner of Autmndwood ESH Consultants, Inc.

3649.   John W. Thorsen was the former Vice President of Weston Solutions, Inc.

3650.   John W. Thorsen was the former manager of Matrix Environmental, Inc.

3651.   John W. Thorsen had a duty to exercise ordinary care for the health, safety, and well-being of Linda Peredna and all those living and working in Union, Illinois.

3652.   At all times relevant, Defendant knew or should have known that TCE, TCA, PCE, DCE, and DCA emissions from Techalloy would have a toxic, poisonous and highly deleterious defect upon the health, safety, and well-being of Dana and persons exposed to it.

3653.   The Defendant committed one or more of the following acts and/or omissions:

   a.   Failed to timely test the Peredna home for TCE, TCA, PCE, DCE, and DCA;

   b.   Failed to alert and advise residents, including the Perednas, that VOCs, including TCE, TCA, PCA, DCE, and DCA had entered the ground water;

   c.   Failed to timely and properly warn residents, including the Perednas, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

   d.   Failed to timely and properly implement an effective remediation plan for the soil, ground water and vapors associated with TCE, TCA, PCE, DCE, and DCA;

   e.   Failed to timely and properly remediate the TCA, TCE, PCE, DCE, and DCA; and/or

   f.   Failed to timely and properly protect residents, including the Perednas, from the harmful effects of TCA, TCE, PCE, DCE, and DCA.

3654.   As a direct and proximate cause of the Defendant's foregoing acts and omissions, chemicals were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Peredna residence.

3655.   As a direct and proximate cause of the Defendant's foregoing acts and omissions, carcinogens remain in the environment, which subsequently migrate from the Defendant's properties into the air, soil, and water in inherent to the use and enjoyment of the Peredna Residence and Union Illinois, collectively.

3656.   As a direct and proximate cause of the Defendants' negligent acts and omissions, Linda Peredna's body was exposed to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which were a proximate cause in her development of Autoimmune disease and thyroid cancer.

3657.   As a direct and proximate cause of the Defendants' acts and omissions, TCE, TCE, PCE, DCE, and DCA remain in the environment which expose Linda Peredna and residents of Union, Illinois to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which can result in serious and permanent injuries to health.

3658.   That as a further direct and proximate result of the aforesaid injuries, Plaintiff Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XLVIII – NEGLIGENCE
### *Linda Peredna v. Phibro-Tech, Inc.*

3659.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

3660.   At all relevant times, it was the duty of the Defendant to exercise ordinary care in the operation of their plant for the safety of Ms. Peredna and residents of the town of Union

3661.   The Defendant committed one or more of the following acts and/or omissions:

a.   Failed to timely test the Peredna home for TCE, TCA, PCE, DCE, and DCA;

b. Failed to alert and advise residents, including the Perednas, that VOCs, including TCE, TCA, PCA, DCE, and DCA had entered the ground water;

c. Failed to timely and properly warn residents, including the Perednas, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

d. Failed to timely and properly implement an effective remediation plan for the soil, ground water and vapors associated with TCE, TCA, PCE, DCE, and DCA;

e. Failed to timely and properly remediate the TCA, TCE, PCE, DCE, and DCA; and/or

f. Failed to timely and properly protect residents, including the Perednas, from the harmful effects of TCA, TCE, PCE, DCE, and DCA.

3662.   As a direct and proximate cause of the Defendant's foregoing negligent acts and omissions, chemicals were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Peredna residence.

3663.   As a direct and proximate cause of the Defendants' negligent acts and omissions, Linda Peredna's body was exposed to at such lengths, and for such amounts, which were a proximate cause in her development of Autoimmune disease and thyroid cancer.

3664.   That as a further direct and proximate result of the aforesaid injuries, Plaintiff Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT XLIX – PREMISES LIABILITY
### *Linda Peredna v. Phibro-Tech, Inc.*

3665.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

3666.   At all times stated herein, it was the duty of the Defendant, Phibro-Tech, as owner, occupier and/or manager of the land located at 17415 Jefferson Street in Union, Illinois, by and through its agents, employees and/or servants, to exercise ordinary care so that the premises were in a reasonably safe condition so as not to cause injury to individuals, including Plaintiff Linda Peredna.

3667.   Defendant utilized  volatile organic compounds which migrated beyond their factories into the environment and onto Plaintiff's property.

3668.   At all times relevant, Plaintiff Linda Peredna, resided in Union, Illinois.

3669.   On and before 1993, and at all times relevant herein, Phibro-Tech owned the land at 17415 Jefferson Street in Union, Illinois.

3670.   On and before 1993, and at all times relevant herein, Phibro-Tech maintained the land at 17415 Jefferson Street in Union, Illinois.

3671.   On and before 1993, and at all times relevant herein, Phibro-Tech inspected the land at 17415 Jefferson Street in Union, Illinois.

3672.   On and before 1993, and at all times relevant herein, Phibro-Tech controlled the land at 17415 Jefferson Street in Union, Illinois.

3673.   On and before 1993, and at all times relevant herein, Phibro-Tech, should have known of the dangerous conditions emitting from their land;

3674.   On and before 1993, and at all times relevant herein, Phibro-Tech, should have known of the cancer-causing agents emitting from their land;

3675.   The Defendants failed to see that their that property was reasonably safe in one or more of the following regards:

      a.   Allowed a dangerous condition of the emission of volatile organic compounds from their property into the town of Union, Illinois to continue;

      b.   Allowed a dangerous condition of the emission of VOCs, including TCE and PCE into Plaintiff's air space and water supply;

      c.   Knew or should have known of a dangerous condition caused by the emissions of TCE and PCE into Plaintiff's air space and water supply and allowed it to continue;

      d.   Created a dangerous condition on the land by failing to take appropriate measures to eliminate the emission of volatile organic compounds, clean them up, or warn of their presence;

      e.   Failed to properly inspect the premises to identify these safety hazards; and/or

      f.   Allowed the ongoing pollution of Plaintiff's air space and water to continue for years.

3676.   As a direct and proximate cause of the Defendants' negligent acts and omissions, Linda Peredna's body was exposed to VOCs at such lengths, and for such amounts, which were the proximate cause in her development of Autoimmune disease and thyroid cancer.

3677.   That as a further direct and proximate result of the aforesaid injuries, Plaintiff Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT L – CIVIL BATTERY
### *Linda Peredna v. Phibro-Tech, Inc.*

3678.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

3679.   At all relevant times, Defendant knew that VOCs, including TCE and PCE emitting from the Defendant would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons drinking, ingesting, or exposed to it.

3680.   Notwithstanding this knowledge, Defendant caused and/or set in motion events that caused VOCs, including TCE and PCE to come in contact with Plaintiff.

3681.   Plaintiff's contact with VOCs was offensive and harmful.

3682.   Defendant intended to emit VOCs into environment despite its knowledge that it would contact people who lived or worked near the Defendant, specifically Linda Peredna.

3683.   Plaintiff, Linda Peredna did not consent to contact with VOCs emitted from the Defendant.

3684.   As a direct and proximate result of Defendant's emission of VOCs, Plaintiff was forced into contact with VOCs without consent.

3685.   As a direct and proximate result thereof, Plaintiffs ingested and was exposed to dangerous amounts of VOCs and developed cancer or have otherwise sustained severe personal injuries, and have been caused to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and loss of normal life.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

<u>**COUNT LI – PUBLIC NUISANCE**</u>
***Linda Peredna v. Phibro-Tech, Inc.***

3686.  Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

3687.  The general public has a common right to breathe in clean air without dangerous levels of carcinogens such at VOCs. The Illinois Constitution guarantees these rights to its citizens.

3688.  Article XI of the Illinois Constitution of 1970, Environment, Section 1, Public Policy – Legislative Responsibility, provides that:

> The public policy of the State and the duty of each person is to provide and maintain a healthful environment for the benefit of this and future generations. The General Assembly shall provide by law for the implementation and enforcement of this public policy.

Article XI of the Illinois Constitution of 1970, Environment, Section 2, Rights of Individuals, provides that:

> Each person has the right to a healthful environment. Each person may enforce this right against any party, governmental or private, through appropriate legal proceedings subject to reasonable limitation and regulation as the General Assembly may provide by law.

3689.  Defendant's use and emission of VOCs substantially and unreasonably infringed upon and/ or transgresses this public right. In particular, the activities of Defendant caused those who lived and worked in the area surrounding, Linda Peredna, to inhale high levels of VOCs on a routine and constant basis, and further, to be exposed to air causing a substantially elevated risk of cancer.

3690.  Defendant's use and emission of VOCs is especially inappropriate given the area in which it is located; namely, within a populated residential area.

3691.  As a direct and proximate result of Defendant's use and emission of VOCs, Plaintiff ingested and was exposed to dangerous amounts of VOCs and developed serious diseases or conditions or have otherwise sustained severe personal injuries, and have been caused

to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and loss of normal life.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT LII – NEGLIGENCE
### Linda Peredna v. C P Chemicals, Inc. f/k/a Southern California Chemical Company, Inc.

3692.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

3693.   At all relevant times, it was the duty of defendant to exercise ordinary care for Linda Peredna, and the residents of Union, Illinois.

3694.   The Defendant committed one or more of the following acts and/or omissions:

a.   Careless and improperly allowing and causing hazardous substances, including TCE and PCE to routinely and frequently be released onto the soil of the Defendant's facilities;

b.   Carelessly allowing, and improperly causing, hazardous substances including ultrahazardous VOCs to routinely be released beyond their permissive environment;

c.   Failing to establish a procedure for the use of VOC, specifically TCE and PCE at the facilities that did not result in the release of TCE and PCE into the environment;

d.   Failing to test the Peredna home for ultrahazardous VOC contamination;

e.   Failing to alert Linda Peredna to the possibility of ultrahazardous VOC exposure;

f.   Failing to alert Linda Peredna of the cancer risk VOC exposure can cause;

g.   Failing to properly test surrounding air, soil, and water, which ultimately led to Peredna's ultrahazardous VOC exposure, which otherwise would have been preventable;

h.   Failing to exercise reasonable care and caution in operating and maintaining the facilities;

i. Failing to provide appropriate safe-guards and security measures to prevent, monitor and/ or remedy the release of ultrahazardous substances from being released into the environment;

j. Carelessly and improperly engaging in factory processes which led to the release of ultrahazardous VOCs into the environment, which migrated to the Peredna residence;

k. Failing to properly dispose of ultrahazardous VOC materials, which permitted the toxins to enter the environment and migrate to the Peredna residence;

l. Carelessly and improperly storing ultrahazardous VOCs without the proper safe-guards required to ensure the prevention of said chemicals from entering into the environment, whether that was discharge, spillage, release, or escape;

m. Carelessly and improperly storing ultrahazardous VOCs when the Defendants knew or should have known that such storage procedures would cause releases of the toxins into the environment;

n. Failing to warn Union residents, including Linda Peredna, of the life-threatening conditions created by the Defendant's releases of ultrahazardous VOC-containing substances, into the surrounding air, soil, water, and general environment; and/or

o. Failing to take reasonable action to either contain or clean up the ultrahazardous VOCs which were released by the Defendant into the environment.

3695. As a direct and proximate cause of the Defendant's foregoing negligent acts and omissions, chemicals were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Peredna residence.

3696. As a direct and proximate cause of the Defendants' negligent acts and omissions, Linda Peredna's body was exposed to VOCs at such lengths, and for such amounts, which were a proximate cause her development of Autoimmune disease and thyroid cancer.

3697. That as a further direct and proximate result of the aforesaid injuries, Plaintiff Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability,

disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendants, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

**COUNT LIII – PREMISES LIABILITY**

*Linda Peredna v. C P Chemicals, Inc. f/k/a Southern California Chemical Company, Inc.*

3698.  Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

3699.  At all times stated herein, it was the duty of the Defendant, Southern California Chemical Company, as owner, occupier and/or manager of the land located at 17401 Jefferson Street in Union, Illinois, by and through its agents, employees and/or servants, to exercise ordinary care so that the premises were in a reasonably safe condition so as not to cause injury to individuals, including Plaintiff Linda Peredna.

3700.  Defendant utilized volatile organic compounds (VOCs) which migrated beyond their factories into the environment and onto Plaintiff's property.

3701.  At all times relevant, Plaintiff Linda Peredna, resided in Union, Illinois.

3702.  On and before 1984, and at all times relevant herein, Southern California Chemical Company, Inc. owned the land at 17401 Jefferson Street in Union, Illinois.

3703.  On and before 1984, and at all times relevant herein, Southern California Chemical Company, Inc. maintained the land at 17401 Jefferson Street in Union, Illinois.

3704.  On and before 1984, and at all times relevant herein, Southern California Chemical Company, Inc. inspected the land at 17401 Jefferson Street in Union, Illinois.

3705.   On and before 1984, and at all times relevant herein, Southern California Chemical Company, Inc. controlled the land at 17401 Jefferson Street in Union, Illinois.

3706.   On and before 1984, and at all times relevant herein, Southern California Chemical Company, Inc., should have known of the dangerous conditions emitting from their land;

3707.   On and before 1984, and at all times relevant herein, Southern California Chemical Company, Inc., should have known of the cancer-causing agents emitting from their land;

3708.   On July 31, 1987, Southern California Chemical Company, Inc. merged with Defendant, C P Chemicals, Inc.

3709.   On July 31, 1987, Defendant, C P Chemicals, Inc. purchased Southern California Chemical Company, Inc. assets.

3710.   The terms and conditions of the merger cease Southern California Chemical Company's existence and said corporation shall be merged into the surviving corporation - C P Chemicals, Inc.

3711.   At the time of the merger on July 31, 1987, C P Chemicals agreed to possess Southern California Chemical Company's liabilities.

3712.   At the time of the merger on July 31, 1987, C P Chemicals agreed to possess Southern California Chemical Company's interests.

3713.   At the time of the merger on July 31, 1987, C P Chemicals agreed to possess Southern California Chemical Company's contracts.

3714.   At the time of the merger on July 31, 1987, C P Chemicals agreed debts, liabilities, and duties of Southern California Chemical Company which attach to CP Chemicals, Inc., including debts, liabilities, and duties incurred.

3715.   On July 31, 1987, and at all times relevant herein, C P Chemicals, Inc. f/k/a SCCC owned the land at 17401 Jefferson Street in Union, Illinois.

3716.   On July 31, 1987, and at all times relevant herein, C P Chemicals, Inc. f/k/a SCCC maintained the land at 17401 Jefferson Street in Union, Illinois.

3717.   On July 31, 1987, and at all times relevant herein, C P Chemicals, Inc. f/k/a SCCC inspected the land at 17401 Jefferson Street in Union, Illinois.

3718.   On July 31, 1987, and at all times relevant herein, C P Chemicals, Inc. f/k/a SCCC controlled the land at 17401 Jefferson Street in Union, Illinois.

3719.   On July 31, 1987, and at all times relevant herein, C P Chemicals, Inc. f/k/a SCCC should have known of the dangerous conditions emitting from their land;

3720.   On July 31, 1987, and at all times relevant herein, C P Chemicals, Inc. f/k/a SCCC should have known of the cancer-causing agents emitting from their land;

3721.   The Defendants failed to see that their that property was reasonably safe in one or more of the following regards:

    a.   Allowed a dangerous condition of the emission of volatile organic compounds from their property into the town of Union, Illinois to continue;

    b.   Allowed a dangerous condition of the emission of VOCs, including TCE and PCE into Plaintiff's air space and water supply;

    c.   Knew or should have known of a dangerous condition caused by the emissions of TCE and PCE into Plaintiff's air space and water supply and allowed it to continue;

    d.   Created a dangerous condition on the land by failing to take appropriate measures to eliminate the emission of volatile organic compounds, clean them up, or warn of their presence;

    e.   Failed to properly inspect the premises to identify these safety hazards; and/or

    f.   Allowed the ongoing pollution of Plaintiff's air space and water to continue for years.

3722.   As a direct and proximate cause of the Defendants' negligent acts and omissions, Linda Peredna's body was exposed to VOCs at such lengths, and for such amounts, which were a proximate cause in her development of Autoimmune disease and thyroid cancer.

3723.   That as a further direct and proximate result of the aforesaid injuries, Plaintiff Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT LIV – CIVIL BATTERY
### Linda Peredna v. C P Chemicals, Inc. f/k/a Southern California Chemical Company, Inc.

3724.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

3725.   At all relevant times, Defendant knew that VOCs, including TCE and PCE emitting from the Defendant would have a toxic, poisonous, and highly deleterious effect upon the health, safety, and well-being of persons drinking, ingesting, or exposed to it.

3726.   Notwithstanding this knowledge, Defendant caused and/or set in motion events that caused VOCs, including TCE and PCE to come in contact with Plaintiff.

3727.   Plaintiff's contact with VOCs was offensive and harmful.

3728.   Defendant intended to emit VOCs into environment despite its knowledge that it would contact people who lived or worked near the Defendant, specifically Linda Peredna.

3729.   Plaintiff, Linda Peredna did not consent to contact with VOCs emitted from the Defendant.

3730.   As a direct and proximate result of Defendant's emission of VOCs, Plaintiff was forced into contact with VOCs without consent.

3731.   As a direct and proximate result thereof, Plaintiffs ingested and was exposed to dangerous amounts of VOCs and developed cancer or have otherwise sustained severe personal injuries, and have been caused to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and loss of normal life.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT LV – PUBLIC NUISANCE
### *Linda Peredna v. C P Chemicals, Inc. f/k/a Southern California Chemical Company, Inc.*

3732.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 1 through 1906, above as fully stated herein.

3733.   The general public has a common right to breathe in clean air without dangerous levels of carcinogens such at VOCs. The Illinois Constitution guarantees these rights to its citizens.

3734.   Article XI of the Illinois Constitution of 1970, Environment, Section 1, Public Policy – Legislative Responsibility, provides that:

> The public policy of the State and the duty of each person is to provide and maintain a healthful environment for the benefit of this and future generations. The General Assembly shall provide by law for the implementation and enforcement of this public policy.

Article XI of the Illinois Constitution of 1970, Environment, Section 2, Rights of Individuals, provides that:

> Each person has the right to a healthful environment. Each person may enforce this right against any party, governmental or private, through appropriate legal proceedings subject to reasonable limitation and regulation as the General Assembly may provide by law.

3735.   Defendant's use and emission of VOCs substantially and unreasonably infringed upon and/ or transgresses this public right. In particular, the activities of Defendant caused those who lived and worked in the area surrounding, Linda Peredna, to inhale high levels of VOCs on a routine and constant basis, and further, to be exposed to air causing a substantially elevated risk of cancer.

3736.   Defendant's use and emission of VOCs is especially inappropriate given the area in which it is located; namely, within a populated residential area.

3737.   As a direct and proximate result of Defendant's use and emission of VOCs, Plaintiff ingested and was exposed to dangerous amounts of VOCs and developed serious diseases or conditions or have otherwise sustained severe personal injuries, and have been caused to incur and endure medical bills, lost wages, pain and suffering, mental anguish, disability, disfigurement, reduced life expectancy, and loss of normal life.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT LVI – NEGLIGENCE
### Linda Peredna v. Nortek Global HVAC, LLC

3738.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 103; 107 through 122; above as fully stated herein.

3739.   On and before 1988, Aubrey Manufacturing leached TCE into the ground water under its plant located at 6709 South Main Street in Union, Illinois.

3740.   On and before 1988, Aubrey Manufacturing leached DCE into the ground water under its plant located at 6709 South Main Street in Union, Illinois.

3741. On and before 1988, Aubrey Manufacturing leached DCA into the ground water under its plant located at 6709 South Main Street in Union, Illinois.

3742. As of August 27, 1988, Aubrey Manufacturing leached TCE into the Rail Road Creek in Union, Illinois.

3743. As of August 27, 1988, Aubrey Manufacturing leached DCE into the Rail Road Creek in Union, Illinois.

3744. As of August 27, 1988, Aubrey Manufacturing leached DCA into the Rail Road Creek in Union, Illinois.

3745. Upon information and belief, on or around 1998, Nortek Global HVAC, LLC, acquired an ownership interest in the land at 6709 South Main Street in Union, Illinois

3746. At all times relevant, it was the duty of the Defendant, Nortek Global HVAC, LLC, LLC, owed a duty of ordinary care to Linda Peredna.

3747. The Defendant committed one or more of the following acts and/or omissions:

    a. Failed to test the Peredna home for TCE, TCA, PCE, DCE, and DCA;

    b. Failed to alert and advise residents, including the Perednas, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

    c. Failed to timely and properly warn residents, including the Perednas, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

    d. Failed to timely and properly remediate the TCA, TCE, PCE, DCE, and DCA; and/or

    e. Failed to timely and properly protect residents, including the Perednas, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

3748. As a direct and proximate cause of the Defendant's foregoing negligent acts and omissions, chemicals were improperly released into the environment, subsequently migrating from

the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Peredna residence.

3749.   As a direct and proximate cause of the Defendant's foregoing acts and omissions, chemicals remain in the environment, which subsequently migrate from the Defendant's properties into the air, soil, and water in inherent to the use and enjoyment of the Peredna Residence and Union Illinois, collectively.

3750.   As a direct and proximate cause of the Defendants' negligent acts and omissions, Linda Peredna's body was exposed to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which were a proximate cause in her development of Autoimmune disease and thyroid cancer.

3751.   As a direct and proximate cause of the Defendants' negligent acts and omissions, TCE, TCE, PCE, DCE, and DCA remain in the environment which expose Linda Peredna and residents of Union, Illinois to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which can result in serious and permanent injuries to health.

3752.   That as a further direct and proximate result of the aforesaid injuries, Plaintiff Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

**COUNT LVII – NEGLIGENCE**
*Linda Peredna v. Broan-NuTone, LLC*

3753.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 104; 107 through 123; above as fully stated herein.

3754.   On and before 1988, Aubrey Manufacturing leached TCE into the ground water under its plant located at 6709 South Main Street in Union, Illinois.

3755.   On and before 1988, Aubrey Manufacturing leached DCE into the ground water under its plant located at 6709 South Main Street in Union, Illinois.

3756.   On and before 1988, Aubrey Manufacturing leached DCA into the ground water under its plant located at 6709 South Main Street in Union, Illinois.

3757.   As of August 27, 1988, Aubrey Manufacturing leached TCE into the Rail Road Creek in Union, Illinois.

3758.   As of August 27, 1988, Aubrey Manufacturing leached DCE into the Rail Road Creek in Union, Illinois.

3759.   As of August 27, 1988, Aubrey Manufacturing leached DCA into the Rail Road Creek in Union, Illinois.

3760.   Upon information and belief, on or around 2000, Broan-NuTone, LLC, acquired an ownership interest in the land at 6709 South Main Street in Union, Illinois.

3761.   At all times relevant, it was the duty of the Defendant, Broan-NuTone, LLC, owed a duty of ordinary care to Linda Peredna.

3762.   The Defendant committed one or more of the following acts and/or omissions:

   a.   Failed to test the Peredna home for TCE, TCA, PCE, DCE, and DCA;

   b.   Failed to alert and advise residents, including the Perednas, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

   c.   Failed to timely and properly warn residents, including the Perednas, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

d. Failed to timely and properly remediate the TCA, TCE, PCE, DCE, and DCA; and/or

e. Failed to timely and properly protect residents, including the Perednas, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

3763. As a direct and proximate cause of the Defendant's foregoing negligent acts and omissions, chemicals were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Peredna residence.

3764. As a direct and proximate cause of the Defendant's foregoing acts and omissions, chemicals remain in the environment, which subsequently migrate from the Defendant's properties into the air, soil, and water in inherent to the use and enjoyment of the Peredna Residence and Union Illinois, collectively.

3765. As a direct and proximate cause of the Defendants' negligent acts and omissions, Linda Peredna's body was exposed to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which were a proximate cause in her development of Autoimmune disease and thyroid cancer.

3766. As a direct and proximate cause of the Defendants' negligent acts and omissions, TCE, TCE, PCE, DCE, and DCA remain in the environment which expose Linda Peredna and residents of Union, Illinois to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which can result in serious and permanent injuries to health.

3767. That as a further direct and proximate result of the aforesaid injuries, Plaintiff Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

## COUNT LVIII – NEGLIGENCE
### *Linda Peredna v. Rangaire Manufacturing Company, LP*

3768.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 105; 107 through 122; above as fully stated herein.

3769.   On and before 1988, Aubrey Manufacturing leached TCE into the ground water under its plant located at 6709 South Main Street in Union, Illinois.

3770.   On and before 1988, Aubrey Manufacturing leached DCE into the ground water under its plant located at 6709 South Main Street in Union, Illinois.

3771.   On and before 1988, Aubrey Manufacturing leached DCA into the ground water under its plant located at 6709 South Main Street in Union, Illinois.

3772.   As of August 27, 1988, Aubrey Manufacturing leached TCE into the Rail Road Creek in Union, Illinois.

3773.   As of August 27, 1988, Aubrey Manufacturing leached DCE into the Rail Road Creek in Union, Illinois.

3774.   As of August 27, 1988, Aubrey Manufacturing leached DCA into the Rail Road Creek in Union, Illinois.

3775.   Upon information and belief, on or around 2000, Rangaire Manufacturing Company, LP, acquired an ownership interest in the land at 6709 South Main Street in Union, Illinois.

3776.   At all times relevant, it was the duty of the Defendant, Rangaire Manufacturing Company, LP, owed a duty of ordinary care to Linda Peredna.

3777.   The Defendant committed one or more of the following acts and/or omissions:

   a.   Failed to test the Peredna home for TCE, TCA, PCE, DCE, and DCA;

   b.   Failed to alert and advise residents, including the Perednas, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

   c.   Failed to timely and properly warn residents, including the Perednas, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

   d.   Failed to timely and properly remediate the TCA, TCE, PCE, DCE, and DCA; and/or

   e.   Failed to timely and properly protect residents, including the Perednas, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

3778.   As a direct and proximate cause of the Defendant's foregoing negligent acts and omissions, chemicals were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Peredna residence.

3779.   As a direct and proximate cause of the Defendant's foregoing acts and omissions, chemicals remain in the environment, which subsequently migrate from the Defendant's properties into the air, soil, and water in inherent to the use and enjoyment of the Peredna Residence and Union Illinois, collectively.

3780.   As a direct and proximate cause of the Defendants' negligent acts and omissions, Linda Peredna's body was exposed to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which were a proximate cause in her development of Autoimmune disease and thyroid cancer.

3781.   As a direct and proximate cause of the Defendants' negligent acts and omissions, TCE, TCE, PCE, DCE, and DCA remain in the environment which expose Linda Peredna and

residents of Union, Illinois to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which can result in serious and permanent injuries to health.

3782.   That as a further direct and proximate result of the aforesaid injuries, Plaintiff Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

### COUNT LIX – NEGLIGENCE
*Linda Peredna v. Melrose Industries PLC*

3783.   Plaintiff, Linda Peredna re-alleges and incorporates paragraphs 106 through 122; above as fully stated herein.

3784.   On and before 1988, Aubrey Manufacturing leached TCE into the ground water under its plant located at 6709 South Main Street in Union, Illinois.

3785.   On and before 1988, Aubrey Manufacturing leached DCE into the ground water under its plant located at 6709 South Main Street in Union, Illinois.

3786.   On and before 1988, Aubrey Manufacturing leached DCA into the ground water under its plant located at 6709 South Main Street in Union, Illinois.

3787.   As of August 27, 1988, Aubrey Manufacturing leached TCE into the Rail Road Creek in Union, Illinois.

3788.   As of August 27, 1988, Aubrey Manufacturing leached DCE into the Rail Road Creek in Union, Illinois.

3789.   As of August 27, 1988, Aubrey Manufacturing leached DCA into the Rail Road Creek in Union, Illinois.

3790.   Upon information and belief, on or around 2000, Melrose Industries PLC, acquired an ownership interest in the land at 6709 South Main Street in Union, Illinois.

3791.   At all times relevant, it was the duty of the Defendant, Melrose Industries PLC, owed a duty of ordinary care to Linda Peredna.

3792.   The Defendant committed one or more of the following acts and/or omissions:

   a.   Failed to test the Peredna home for TCE, TCA, PCE, DCE, and DCA;

   b.   Failed to alert and advise residents, including the Perednas, that TCE, TCA, PCA, DCE, and DCA had entered the ground water;

   c.   Failed to timely and properly warn residents, including the Perednas, of the hazards associated with TCE, TCA, PCE, DCE, and DCA;

   d.   Failed to timely and properly remediate the TCA, TCE, PCE, DCE, and DCA; and/or

   e.   Failed to timely and properly protect residents, including the Perednas, of the harmful effects of TCA, TCE, PCE, DCE, and DCA.

3793.   As a direct and proximate cause of the Defendant's foregoing negligent acts and omissions, chemicals were improperly released into the environment, subsequently migrating from the Defendant's properties into the air, soil, and water inherent to the use and enjoyment of the Peredna residence.

3794.   As a direct and proximate cause of the Defendant's foregoing acts and omissions, chemicals remain in the environment, which subsequently migrate from the Defendant's properties into the air, soil, and water in inherent to the use and enjoyment of the Peredna Residence and Union Illinois, collectively.

3795.   As a direct and proximate cause of the Defendants' negligent acts and omissions, Linda Peredna's body was exposed to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which were a proximate cause in her development of Autoimmune disease and thyroid cancer.

3796.   As a direct and proximate cause of the Defendants' negligent acts and omissions, TCE, TCE, PCE, DCE, and DCA remain in the environment which expose Linda Peredna and residents of Union, Illinois to TCE, TCE, PCE, DCE, and DCA at such lengths, and for such amounts, which can result in serious and permanent injuries to health.

3797.   That as a further direct and proximate result of the aforesaid injuries, Plaintiff Linda Peredna, has experienced physical pain, mental suffering, emotional distress, disability, disfigurement, loss of a normal life, lost wages, and has incurred legal obligations for medical and hospital bills, all of which injuries and conditions are permanent in nature.

WHEREFORE, it is respectfully requested that judgment be entered in favor of the Plaintiff Linda Peredna, against the Defendant, in an amount necessary to fully and fairly compensate Ms. Peredna for her losses, which substantially exceed the minimum jurisdictional amount.

Respectfully Submitted,
ROMANUCCI & BLANDIN, LLC

By: /s/   Stephan D. Blandin _____
Attorney for Plaintiff

Stephan D. Blandin
Michael R. Grieco
Elise M. Blandin
**ROMANUCCI & BLANDIN**
321 N. Clark St. Ste. 900,
Chicago IL 60654
Email: mgrieco@rblaw.net
*Telephone*: 312-458-1000 / *facsimile*: 312-458-1004
ARDC No. 6328501

# PHIBRO-TECH, INC.'S NOTICE OF REMOVAL

# EXHIBIT B

5643 KKR PA007

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| LINDA PEREDNA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| vs. | ) | |
| | ) | |
| TECHALLOY COMPANY, INC., | ) | |
| CENTRAL WIRE, INC., CENTRAL WIRE | ) | |
| INDUSTRIES, LTD., CWI HOLDING, | ) | |
| INC., LINCOLN ELECTRIC HOLDINGS, | ) | |
| INC., USI HOLDING, INC., | ) | |
| ARCELORMITTAL INTERNATIONAL | ) | |
| AMERICA, LLC, ARCELORMITTAL | ) | |
| USA FOUNDATION, INC., CLEVELAND- | ) | |
| CLIFFS STEEL, LLC, GERRY ROUP, | ) | |
| HENRY LOPES, RICHARD PERLICK, | ) | |
| RICHARD GUSTAFSON, MIKE | ) | |
| GRUNTHANER, DAVID PLECNER, | ) | |
| VICTOR POLARD, CARL REED, | ) | |
| TERRY TAMINAUSKSAS, TOM | ) | |
| HANEWALD, THIERY CREMAILH, | ) | |
| GUNNAR K. GILBERG, JEAN-CLAUDE | ) | |
| COUASNON, JACK ZUHARICH, | ) | |
| VIKING CHEMICAL COMPANY, | ) | |
| WESTON SOLUTIONS, INC., MATRIX | ) | |
| ENVIRONMENTAL, INCORPORATED, | ) | |
| AUTUMNWOOD ESH CONSULTANTS, | ) | |
| LLC, ANTEA USA, INC., JOHN W. | ) | |
| THORSEN, PHIBRO-TECH, INC., | ) | |
| C P CHEMICALS, INC. f/k/a Southern | ) | |
| California Chemical Company, Inc., | ) | |
| NORTEK GLOBAL HVAC, LLC, | ) | |
| BROAN-NUTONE, LLC, RANGAIRE | ) | |
| MANUFACTURING COMPANY, LP, | ) | |
| and MELROSE INDUSTRIES PLC., | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF KINGSHUK K. ROY

KINGSHUK K. ROY, being first duly sworn on oath, deposes and states as follows:

1.      I am an attorney for defendant PHIBRO-TECH, INC., in the aforementioned matter.

2.      I have been practicing law in the Chicago area since 2003 and have been involved in many toxic tort lawsuits throughout my career.

3.      Although defendant contests liability and damages in this matter, I have a good faith belief, based on my experience in handing personal injury actions and from reviewing the Plaintiff's complaint, that the amount in controversy exceeds $75,000, exclusive of costs and interest.

FURTHER AFFIANT SAYETH NOT.


/s/  Kingshuk K. Roy
KINGSHUK K. ROY

PHIBRO-TECH, INC.'S NOTICE OF REMOVAL

# EXHIBIT C

Case: 3:21-cv-50303 Document #: 1-1 Filed: 07/30/21 Page 352 of 352 PageID #:371

Katherine M. Keefe

Clerk of the Circuit Court • 22nd Judicial Circuit

# Public Case Access

◄ Go to Search Page  **Case Information**

## 21LA000167  PEREDNA, LINDA VS TECHALLOY CO INC, ET AL

TYPE  **LAW > $50,000 - TORT - OVER $50,000.00**

FILED  **06/24/2021**

STATUS  **OPEN - 06/24/2021**

---

Court Events  Documents  Parties  Charges / Sentences  Summons  Judgments

Financial Summary

| Filed | Type | Description |
|---|---|---|
| 06/24/2021 | AFF | AFFIDAVIT |
| 06/24/2021 | COAL | COMPLAINT - LAW |
| 06/24/2021 | DEMJ | DEMAND - JURY |